IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC.<br>12898 PONTELL PLACE<br>WESTFIELD, INDIANA  46074<br><br>  Plaintiff<br><br>v.<br><br>MVM, INC.<br>1593 SPRING HILL ROAD<br>Suite 700<br>Vienna, VA 22182<br>Serve:  Joseph Morway<br>   1593 Spring Hill Road<br>   Suite 700<br>   Vienna, VA 22182<br><br>  Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff, 3D Global Solutions, Inc. (hereinafter referred to as "Plaintiff" or "Global"), by and through its attorney, Athan T. Tsimpedes, complains of Defendant MVM, Inc. (hereinafter referred to as "Defendant" or "MVM") and in support, states the following:

## NATURE OF THE CASE

Defendant MVM contracted with Plaintiff to recruit security personnel pursuant to an agreement which provided compensation to Plaintiff upon deployment of each foreign national security recruit from Peru.  Plaintiff expended thousand of man hours to develop and produce proprietary and confidential data for each foreign national recruit requiring U.S. government approval to fulfill the contract between the parties.  Defendant

interviewed, qualified and accepted each and every foreign recruit provided by Plaintiff

and deployed the foreign national recruits to Kabul Afghanistan and has refused to

compensate Plaintiff.  Defendant MVM wrongfully converted the confidential and

proprietary information created by Plaintiff for each deployed foreign national for its own

benefit and wrongfully breached its contract with Plaintiff in bad faith.

## PARTIES

1.      Plaintiff 3D Global Solutions Inc. is incorporated in the State of Indiana with

its principal offices at 12898 Pontell Place, Westfield, Indiana 46074.  Global provides

recruits to security contractors for the United States Government throughout the World.

Michael Dodd is the CEO and sole shareholder of 3D Global Solutions, Inc.

2.      Defendant MVM, Inc. is a California corporation with offices at 1593 Spring Hill

Road, Vienna, VA 22182.  Defendant MVM is a large government contractor that

provides security, translation, and related services to the Government of the United States

in the District of Columbia and throughout the world.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this matter pursuant to 28 USC §1332.

4.      The amount in controversy in this matter exceeds $75,000.00 exclusive of

interests and costs.

5.      This venue is appropriate in this matter pursuant to 28 USC §1391 et seq.

## BACKGROUND FACTS

6.      Defendant MVM obtained a primary/general contract with the United States

Government to provide a large security force in Kabul Afghanistan.  As a result,

Defendant MVM sought to fulfill its recruits by agreement with several security

recruiting firms, including Global.  Global was to provide third country nationals

(TCN's) as security personnel in support of MVM's primary contract.  (Attached as

Exhibit 1).  In this case, all TCN's were recruited from Peru.

7.      MVM requested recruits from Global on an ongoing basis through Task

Orders dated from September 2004 through November 2004.  (See attached Exhibit 2).

Each task Order being completed by Global required payment from MVM within 30

days. (Id.)

8.      Defendant agreed to compensate Plaintiff based on a fee schedule that

totaled compensation for 292 TCN's  (See attached Fee Schedule- Exhibit 3, and Task

Orders -Exhibit 2 ). The fee schedule breaks down the fees for each TCN as follows: (1)

Recruiting Candidates- $300.00, (2) Contractual Requirements- $70.00 and (3)

Deployment Readiness- $330.00.  Additionally, MVM was to compensate Global

$360.00 on a yearly basis for family support services for each TCN.

9.      MVM described the functions to be performed by Global for compensation

pursuant to the fee schedule.  (See Exhibit 1- Exhibit A).

10.     In reliance upon Defendant MVM's agreement and representations, Global

diverted its resources to fulfill its obligations under the agreement by focusing resources

and efforts in Peru, including but not limited to recruitment campaigns and interviews for

TCN's.

11.      Global exhausted thousands of man hours to collect and procure data for each

TCN in Peru that was confidential and proprietary in nature. (See attached as Exhibit 6).

Global provided the proprietary information into "administrative packages" for each and

every TCN that included physician physicals, verifying qualifications, background,

3

security/military background, criminal background.  Each TCN's administrative package required approval from the U.S. Government prior to any TCN being accepted by MVM for deployment to Kabul, Afghanistan.

12.     Plaintiff qualified each and every TCN as required to pursuant to Section B, of The Agreement. (See Exhibit 1).  Defendant MVM, through its agents, interviewed and qualified each and every TCN provided by Global prior to deployment.  Global produced a total of 292 TCN's to MVM, however only 230 were deployed by MVM to Kabul, Afghanistan.

13.     Defendant MVM failed to pay the compensation provided for in the Agreement within 30 days of the invoice for the deployed TCN's and Plaintiff Global demanded compensation thereafter.

15.     After numerous delays, Defendant MVM, wrongfully and intentionally, breached its agreement to provide compensation to Global for the 292 TCN's. (See attached as Exhibit 4)

16.     As a pretext for its wrongful conduct, Defendant MVM, alleged that Global was the party in default of the agreement by producing TCN's that did not have the proper level of English proficiency. (Id).

17.     Additionally, MVM through its agents, wrongfully and intentionally converted the confidential and proprietary information of Global's administrative packages for each TCN and used that information to sell, assign, transfer the administrative packages as their own recruits to a third party in which MVM wrongfully realized a financial benefit.

18.     Upon information and belief, MVM, wrongful conduct is further

demonstrated because it sold, assigned, or transferred many if not all TCN's and their administrative packages created by Global to a third party for compensation.

19.  Defendant MVM converted all the administrative packages containing the

proprietary information of each and every TCN recruit provided by Global by wrongfully selling, assigning or transferring the administrative packages created and developed by Global for compensation to third parties.

## COUNT ONE
### Breach of Contract

20.  Plaintiff realleges paragraphs 1 through 19 of the Complaint as set forth in full.

21.  Defendants have failed to fulfill obligations owed to Plaintiff as stated in the contract.

22.  Defendant is in breach of said contract.

23.  Plaintiff has suffered damages as a result of said breach.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS ($316,000.00) with interests and costs.

## COUNT TWO
### Detrimental Reliance

24   Plaintiff realleges paragraphs 1 through 23 of this Complaint as set forth in full.

25.  Defendant MVM made promises to Plaintiff pursuant to an agreement.

26.  Defendant MVM reasonably expected his promise would induce action or forbearance by the Plaintiff.

27.  Defendant's promise induced actual and reasonable action or forbearance by the Plaintiff.

28.     Plaintiff detrimentally relied upon Defendant MVM's promise resulting in

damages.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for

damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS

($316,000.00) with interests and costs.

## COUNT THREE
### Intentional/Negligent Misrepresentation

29.     Plaintiff realleges paragraphs 1 through 28 of this Complaint as set forth in full.

30.     Defendant MVM's negligent assertions or false statements were made while

owing a duty of care to the Plaintiff.

31.     Defendant intended that Plaintiff to act or rely upon the negligent assertions or

false statements.

32.     Defendant knew or should have known that the Plaintiff would probably rely

upon the negligent assertions or false statements which, if erroneous would cause damage

to Plaintiff.

33.     Plaintiff justifiably relied upon the Defendant statements and assertions.

34.     As a result of Defendant's negligence, Plaintiff incurred damages.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for

damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS

($316,000.00) with interests and costs.

## COUNT FOUR
### Constructive Fraud

35.     Plaintiff realleges paragraphs 1 through 34 of this Complaint as set forth in full.

36.     Defendant owed a legal or equitable duty arising out of a relationship of trust or confidence with Plaintiff.

37.     Defendant breached his duty to Plaintiff.

38.     Defendant's conduct deceived or violated Plaintiff's confidence.

39.     As a result of Defendant's breach of duty, Plaintiff suffered damages.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for compensatory damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS ($316,000.00) with interests and costs and punitive damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) with interests and costs.

**COUNT FIVE**
**Concealment or Non-Disclosure**

40.     Plaintiff realleges paragraphs 1 through 39 of this Complaint as set forth in full.

41.     Defendant MVM  had a duty to disclose material facts to the Plaintiff.

42.     Defendant failed to disclose material facts to Plaintiff.

43      Defendant intended to deceive Plaintiff by failing to disclose material facts.

44.     The Plaintiff acted in justifiable reliance upon the concealment of material facts by Defendant.

45.     As a result of the concealment by Defendant, the Plaintiff suffered damages.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for compensatory damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS ($316,000.00) with interests and costs and punitive damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) with interests and costs.

## COUNT SIX
### Negligent or Intentional Interference with Business Advantage

46.     Plaintiff incorporates by reference paragraphs 1 through 45 of the Complaint as set forth in full.

47.     Negligent or intentional willful acts of defendant towards plaintiff.

48.     Defendant's conduct was calculated to cause damage to plaintiff in a loss of business.

49.     Defendant's conduct was committed with the unlawful or improper purpose to cause such damage, without justification, and actual damage resulting.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for compensatory damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS ($316,000.00) with interests and costs and punitive damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) with interests and costs.


## COUNT SEVEN
### Unjust Enrichment

50.     Plaintiff realleges paragraphs 1 through 49 of the Complaint as set forth in full.

51.     A benefit has been conferred upon Defendant by the Plaintiff.

52.     Defendant had knowledge of the benefit.

53.     Defendant retained or accepted the benefit under such circumstances as to make it inequitable for the dependant to retain the benefit without payment of its values or the return of the money that was properly withheld.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for compensatory damages plus expenses and costs, and for such other and further relief as one nature of his cause may require

## COUNT EIGHT
**Constructive Conversion**

54.     Plaintiff realleges paragraphs 1 through 53 of the Complaint as set forth in full.

55.     Defendant properly obtained possession of Plaintiff's administrative Packages developed, created and produced by Plaintiff for each and every TCN recruit deployed.

56.     Plaintiff was not informed nor authorized any such use of its proprietary confidential administrative packages ("property") by Defendant.

57.     Defendant intentionally concealed such use of Plaintiff's property for which it wrongfully benefited.

58.     Defendant MVM intentionally used Plaintiff's property in an unauthorized or illegal manner and benefited.

WHEREFORE, Plaintiff Global demands judgment against Defendant MVM for compensatory damages in the amount of THREE HUNDRED SIXTEEN THOUSAND DOLLARS ($316,000.00) with interests and costs and punitive damages in the amount of TWO MILLION DOLLARS ($2,000,000.00) with interests and costs.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

<u>VERIFICATION</u>

By signing below, I swear under penalty of perjury that the foregoing statements

contained in this Complaint are true and correct and based on my personal knowledge.

Michael Dodd
CEO – 3D Global Solutions, Inc.

Respectfully submitted,                     Dated:

Law Offices of Athan T. Tsimpedes
Athan T. Tsimpedes, Esq.
Bar. No. 452341
1420 New York Avenue, NW
7th Floor
Washington, DC 20005
202- 638-2100 ph
202-449-3499 fx
atsimpedes@comcast.net

*Attorney for 3D Global Solutions, Inc.*

JURY DEMAND

Plaintiff demands a trial by jury on all issues.

VERIFICATION

By signing below, I swear under penalty of perjury that the foregoing statements

contained in this Complaint are true and correct and based on my personal knowledge.

Michael Dodd
CEO – 3D Global Solutions, Inc.

Respectfully submitted,                     Dated:  4- / 4- 06

Law Offices of Athan T. Tsimpedes
Athan T. Tsimpedes, Esq.
Bar. No. 452341
1420 New York Avenue, NW
7th Floor
Washington, DC 20005
202- 638-2100 ph
202-449-3499 fx
atsimpedes@comcast.net

*Attorney for 3D Global Solutions, Inc.*

EXHIBIT    1

**AGREEMENT FOR RECRUITING SERVICES**

THIS AGREEMENT FOR SERVICES ("Agreement") by and between MVM, Inc., a California corporation with offices at 1593 Spring Hill Road, Vienna, Virginia 22182 ("MVM") and 3D Global Solutions, Inc. a Indiana corporation with offices at 12898 Pontell Place, Westfield, Indiana 46074 ("3D") is dated as of October 12, 2005.

WHEREAS, 3D has competence and experience relating to recruiting of security personnel; and

WHEREAS, 3D is prepared to make such competence, capability and experience available to MVM by recruiting third country nationals ("TCNs") as security personnel in support of an MVM Prime contract; and

WHEREAS, MVM desires to use 3D to provide such recruiting service:

THEREFORE, the parties agree to the following terms and conditions in connection with the provision of such recruiting services by 3D:

A. SCOPE OF SERVICES.
   3D shall recruit TCNs and provide specified pre-deployment services and specified post-deployment support services related thereto. The TCNs supplied by 3D will, at MVM's option, be Independent Contractors ("ICs") or direct employees to MVM and will perform as security personnel in support of MVM's Prime contract (the "Services").

   The Services to be provided by 3D are described in Exhibit A.

   MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time. The form of such Task Order is set forth in Exhibit B hereto. The terms and conditions of the IC Agreement or Employment Agreement 3D shall offer to such TCNs will be provided with each Task Order.

B. QUALIFICATIONS OF TCNs.
   1. Each TCN (i) shall not have chronic heart, lung or blood disorders; (ii) shall not have contagious infections (blood or respiratory); (iii) shall have vision correctable to 20/30 (binocular); (iv) shall not have color blindness; (v) shall not have loss of any limb; (vi) shall not have any medical condition that prevents a full range of body motion.
   2. Each TCN (i) shall have a record of employment history, (ii) shall have proof of honorable military service and/or proof of honorable police service as applicable; (iii) shall have certification of training and qualifications; (iv) shall have letters of recommendation.

3. Each TCN shall not have been convicted of any felony or any misdemeanor, domestic abuse convictions, and/or substance abuse charges.

4. Each TCN (i) shall be in good health and physical condition to perform his/her duties as required; (ii) able to run 1.5 miles; (iii) perform a bench press; (iv) perform a 180 lb. dummy drag; (v) perform a shuttle run and/or stair climb.

5. MVM reserves the right to reject any and all personnel who, in its sole opinion, are not able to work according to the personnel qualifications or within the conditions of the worksite, or who are not properly vetted, experienced, and prepared for duty.

6. Records:
   Original documents, forms, and certifications verifying the TCN's qualifications per this Paragraph B must be sent to MVM immediately upon their completion. The MVM Point of Contact ("POC") for receipt of such records is:

   > Sharon Revis
   > 1593 Spring Hill Rd., Suite 700
   > Vienna, VA 22205
   > (703) 245-9711
   > RevisS@mvminc.com

   3D will keep a copy of all documents in their recruitment files.

   The required records for each TCN, in addition to those created verifying such TCN's qualifications per Paragraph B hereof, must include the following:

   - Executed Independent Contractor Agreement or Employment Agreement between TCN and MVM; 3D will oversee the execution of said document before the individual is deployed. MVM will provide 3D with the relevant IC Agreement and/or Employment Offer.
   - Resume
   - Letters of Recommendation
   - Proof on honorable military and/or police service
   - Certification of training and qualifications
   - Completed emergency contact form
   - Blood type
   - Results of the Criminal Background check
   - Results of the Medical Exam
   - Results of the PT Test

7. In addition to the qualifications set forth in this Paragraph B, each TCN shall meet the qualifications of the position for which he/she is applying, which qualifications and positions are set forth in Exhibit C hereto.

8. 3D shall certify to MVM that each TCN meets each of the qualifications set forth in this Paragraph B.

C. **PROCEDURE.**
  1. 3D shall provide to MVM all documents verifying each TCN's qualifications and required in Paragraph B of this Agreement.
  2. 3D shall provide to MVM a signed IC Agreement or Employment Agreement for each TCN, executed pre-deployment, as required in Exhibit A.

D. **FEE FOR SERVICES.**
  1. On the condition that 3D fully and faithfully performs the Services, MVM shall pay 3D fees in the amounts and types shown in Exhibit D.
  For pre-deployment services:

  - MVM will pay the specified per person fee for each fully qualified TCN who signs an IC Agreement or Employment Agreement with MVM and deploys to the worksite.

  - 3D will invoice MVM once deployment has occurred.

  For post-deployment services:

  - MVM will pay the specified monthly fee for each TCN supplied by 3D who is deployed to the worksite in a given calendar month. For administrative convenience, if a TCN is on duty at the worksite for 15 days or less in a given calendar month, this will not count toward the fee calculation. If a TCN is on duty at the worksite for 16 days or more in a given calendar month, this will count toward the fee calculation.

  - 3D will invoice monthly

  2. MVM shall pay approved invoices within thirty days of receipt.

E. **INDEPENDENT CONTRACTOR.**
  3D is retained as an independent contractor solely to provide the Services. No agency is created by the terms of this Agreement and 3D shall not hold itself out to others to be an agent of MVM. 3D shall not have the power to execute any document or agreement on behalf of MVM or to otherwise bind MVM in any respect.

F. **TERM OF AGREEMENT**
  The term of this Agreement shall commence on the date hereof and shall continue until terminated. Either party may terminate this Agreement immediately by written notice to the other party in the event of a material breach of this Agreement by such other party. MVM may terminate this Agreement immediately by written notice to 3D in the event MVM's Prime contract is terminated. Either party may terminate this Agreement by providing thirty days written notice to the other party.

G. **NON-EXCLUSIVE ARRANGEMENT**

During the term of this Agreement, 3D shall not accept assignments from other clients if such assignments would interfere with the performance by 3D of the Services required hereby.

H. CONFIDENTIAL BUSINESS INFORMATION
3D agrees that it will hold in confidence all information provided to 3D by MVM (including the terms of this Agreement) concerning MVM's business including, but not limited to, MVM's contracts, personnel and operations (the "Confidential Business Information"). 3D agrees not to disclose such Confidential Business Information to any person without MVM's consent. 3D agrees that it will not use any Confidential Business Information for any reason other than for the performance of the Services. 3D's obligation under this Paragraph H shall survive for three years after the termination of this Agreement.

I. NOTICES
Any notices required to be given hereunder shall be given in writing and delivered to a party in person or at such party's address (or facsimile number) stated below or to such other address (or facsimile number) as such party shall advise the other party in writing, and will be deemed received when tendered in person or when sent by facsimile or by certified mail:

MVM, Inc.
1593 Spring Hill Road
Vienna, VA 22182
Attention: Clyde Slick
Facsimile: (703) 827-0780

3D Global Solutions, Inc.
12898 Pontell Place
Westfield, Indiana 46074
Attention: Mike Dodd

J. MISCELLANEOUS
This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its conflicts laws.

The exhibits to this Agreement are incorporated herein by this reference.

This Agreement supersedes all prior arrangements and understandings between the parties in respect of the subject matter hereof and constitutes the entire agreement between the parties in respect of such subject matter.

This Agreement may be executed in counterparts, each executed counterpart constituting an original but all together only one Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

MVM, INC.
Signature: _____
Name: ROBERT L. RUBIN
Title: SVP

3D GLOBAL SOLUTIONS INC.
Signature: _____
Name: Mike Dodd
Title: CEO

EXHIBIT A

RECRUITING AND SUPPORT FUNCTIONS TO BE PERFOMED BY 3D

PRE-DEPLOYMENT:

1. Recruit Candidates

- Recruit
- Resume preparation per Prime Proposal and Contract
- Vet per Prime Proposal and Contract; at a minimum:
  **Resume Review** will include verification of employment history, proof of honorable military service and/or proof of honorable police service. Certification of training and qualifications, and letters of recommendation.
  **Background Checks** will include investigations conducted through the police agencies of the candidates' country of origin or INTERPOL to verify the candidate has no prior felony convictions, domestic abuse convictions, and/or substance abuse convictions. In the case of TCNs from Peru, 3D must perform these Background Checks through the Department of Counter-terrorism of Peru (DECOTE) and the Peruvian National Police records (Policia Nacional del Peru PNP).
  **Medical Exams** will be performed by a licensed physician in the TCN's country of origin. If any of the following conditions are discovered the candidate will be disqualified: chronic heart, lung or blood disorders; contagious infections (blood or respiratory); vision uncorrectable to 20/30 (binocular); color blindness; loss of any limb; and medical condition that prevents a full range of body motion. Blood type will be identified.
  **Physical Fitness Test** will establish that each candidate is in good physical condition and can perform the following strenuous activities: 1.5 mile run, bench press, 180 lb. dummy drag, shuttle run and/or stair climb.

2. Contractual Requirements

- Any additional requirements per Prime Contract as relate to the Services
- Provide all additional required vetting and personnel records to MVM per Prime Contract

3. Deployment Readiness

- Establish bank accounts for each TCN
- Ensure each candidate has a valid passport (if necessary)
- Assist with necessary visas (as necessary)
- All pre-deployment contact with TCN employees/ICs

- Obtain executed employment offer letter/IC Agreement for each TCN (MVM shall provide necessary documents to 3D)
- Send all required original records to MVM Records Point of Contact
- Orientation meetings (as requested, MVM will attend)
- Assist with travel plans to worksite as necessary
- Travel arrangements to airport
- Supervise movement
- Hold formation at airport
- Supervision from deployment site to worksite (Senior Guards assigned to supervise travel movement)
- Assist/advise MVM on any matters related to smooth deployment

POST-DEPLOYMENT:

4. Family Support After Deployment
- "Hot Line" for guards and families
- Attorney readily available from TCNs' country of origin
- Access to Guard bank accounts
- "Walk in hours" at local office
- Private e-mail account
- Internet kiosk available
- Status emails to families
- Dedicated website for guards
- Facilitate sending of care packages
- Host monthly luncheon
- Casualty notification

EXHIBIT B

SAMPLE TASK ORDER

In accordance with the Agreement for Recruiting Services dated _____ _____,
2005 by and between MVM and 3D, MVM hereby instructs 3D to recruit TCNs to fill
the security personnel positions listed Below:

Number of TCNs                          Type of Position to be Filled

Additional Qualifications per the Proposal and Prime Contract:

Additional Contractual Requirements per the Prime Contract:

TCNs covered by this Task Order shall report to _____ no later than _____ _____
for deployment to _____.

All of the requirements in Paragraph B of the Agreement for Recruiting Services
must be met. A copy of the employment offer letter or Independent Contractor
Agreement for these positions is attached.

**AGREED:**

**MVM, INC.**                           **3D GLOBAL SOLUTIONS INC.**

Signature:                              Signature:
Name:                                   Name:
Title:                                  Title:
Date:                                   Date:

EXHIBIT C

TCN POSITIONS AND QUALIFICATIONS

Senior Guard II

- Must have military and/or police and/or relevant security experience
- Must have some leadership experience in the military and/or police and/or security field

Guard

- Must have military and/or police and/or relevant security experience

EXHIBIT    2

**EXHIBIT A**

**TASK ORDER**

In accordance with the Agreement for Recruiting Services dated September 26, 2005 by and between MVM and 3D, MVM hereby instructs 3D to recruit TCNs to fill the security personnel positions listed below:

| Number of TCNs | Type of Position to be Filled |
| --- | --- |
| 65 | TCN Guard |

TCNs covered by this Task Order shall report to *Jorge Chavez International Airport, Lima, Peru* on or about *10 November 2005* for deployment to Kubul, Afghanistan.

All of the requirements in Section B of the Agreement for Recruiting Services must be met.

**AGREED:**

**MVM, INC.**

Signature: 

Name: ROBERT L. RUBIN

Title: Senior Vice President

Date: 28 SEPT 05

**3D GLOBAL SOLUTIONS INC.**

Signature: 

Name: Mike Dodd

Title: CEO

Date: 9/29/05

**EXHIBIT A**

**TASK ORDER**

**Task Order Number: 002**

In accordance with the Agreement for Recruiting Services dated ~~September 26~~, 2005 by and between MVM and 3D, MVM hereby instructs 3D to recruit TCNs to fill the security personnel positions listed below:

*(handwritten: Oct 4)*

| Number of TCNs | Type of Position to be Filled |
|---|---|
| 145 | TCN Guard |
| 20 | TCN Senior Guard |

TCNs covered by this Task Order shall report to *Jorge Chavez International Airport, Lima, Peru* on or about *10 November 2005* for deployment to Kabul, Afghanistan.

All of the requirements in Section B of the Agreement for Recruiting Services must be met.

**AGREED:**

**MVM, INC.**

Signature: _____

Name: ROBERT L Rubon,

Title: SVP

Date: 03 OCT 05

**3D GLOBAL SOLUTIONS INC.**

Signature: _____

Name: Mike Dodd

Title: CEO

Date: 10/4/05

EXHIBIT B

TASK ORDER No. 01

In accordance with the Agreement for Recruiting Services dated October 12, 2005 by
and between MVM and 3D, MVM hereby instructs 3D to recruit TCNs to fill the
security personnel positions listed Below:

| Number of TCNs | Type of Position to be Filled |
|----------------|-------------------------------|
| 8              | Senior Guard II               |
| 74             | Guard                         |

Additional Qualifications per the Proposal and Prime Contract:

10 % of the TCN personnel recruited by 3D must have a spoken ability in English to
a standard of State Department Level 2 or higher, as specified:

> Speaking Level 2 (Limited Working Proficiency)- Able to satisfy routine
> social demands and limited work requirements.
> - Can handle routine work-related interactions that are limited in scope
> - In more complex and sophisticated work-related tasks, usage generally
>   disturbs the native speaker
> - Can handle with confidence, but not with facility, most normal high-
>   frequency social conversational situations, including extensive but casual
>   conversations about current events, as well as work, family, and
>   autobiographical information
> - The individual can comprehend most everyday conversations, but has some
>   difficulty understanding native speakers in situations that require
>   specialized or sophisticated knowledge
> - The individual's utterances are minimally cohesive to articulate basic
>   concepts
> - Linguistic structure is usually not very elaborate and not thoroughly
>   controlled; errors are frequent
> - Vocabulary use is appropriate for high-frequency utterances, but unusual or
>   imprecise elsewhere

Additional Contractual Requirements per the Prime Contract:

3D must obtain from each TCN candidate:
> - Proof of driving capabilities
> - Statement of non-affiliation with the Baath Party

Original documentation shall be sent to the MVM Records POC according to Paragraph B of this Agreement for Recruiting Services.

TCNs covered by this Task Order shall begin reporting to *Jorge Chavez International Airport, Lima, Peru* on 11 October 2005 for deployment to *Ar Rustamayiah, Iraq*.

All of the requirements in Paragraph B of the Agreement for Recruiting Services must be met. It is understood, under this Task Order alone, that the PT Test, as required in Exhibit A, will be performed at the worksite. Each TCN supplied by 3D under this Task Order shall meet the qualifications as required in Paragraph B, Section 4 of the Agreement. If a TCN does not meet the qualifications of Paragraph B, Section 4 3D shall replace the TCN at 3D's expense.

A copy of the Independent Contractor Agreement for these positions will be provided by MVM, in both English and Spanish.

**AGREED:**

**MVM, INC.**

Signature:
Name:     ROBERT L. RUBIN
Title:     SVP
Date:     10/13/05

**3D GLOBAL SOLUTIONS INC.**

Signature:
Name:     M. R. Gold
Title:     CEO
Date:     10/13/05

EXHIBIT      3

# EXHIBIT D

## Fee Schedule

|  | Fee | Comments |
|---|---|---|
| **ONE TIME TASKS:** |  |  |
| 1. Recruit Candidates | $300 |  |
| 2. Contractual Requirements | $70 |  |
| 3. Deployment Readiness | $330 |  |
| **TOTAL RECRUTING FEE** | **$700** |  |
| **ONGOING SUPPORT:** |  |  |
| 4. Family Support After Deployment | $360 | $30 per month per person |
| **TOTAL ANNUAL SUPPORT FEE** | **$360** |  |

Notes:

" Recruiting Fee"
   Covers all Recruiting and Support Functions shown in Exhibit A to the
   Agreement for Recruiting Services dated October 12, 2005 up to and including
   deployment
   (See task categories 1, 2, and 3)
   Fee is paid per deployed person

"Annual Support Fee"
   Covers ongoing support as described (see task category 4)
   Fee based on number of persons deployed in a given month

EXHIBIT    4



SECURITY & STAFFING SERVICES

March 8, 2006

<u>VIA FACSIMILE AND CERTIFIED MAIL</u>
Mr. Mike Dodd
Chief Executive Officer
3D Global Solutions, Inc.
12898 Pontell Place
Westfield, Indiana 46074

Dear Mike:

I refer to your letter of February 22, 2006.  I, too, would prefer to settle our differences rather than resort to the court system.  However, in order to do so, you must accept that it was your responsibility to provide Third Country Nationals (TCNs) for MVM's project in Kabul with a Level 2 or Level 3 English language capability and that you did not do so.

In your letter, you stated that an MVM representative "accepted" the TCNs that you proffered.  It was not the role of MVM's representative to determine the level of English language capability of the TCNs whether MVM's representative interviewed the Peruvian TCN's or not.  That responsibility was clearly 3D's and at no time was 3D relieved of that obligation by amendment of our contract or otherwise.

You also stated in your letter that you had offered a "full replacement guarantee" of any TCN that did not meet the requirements of our contract.  3D's "full replacement guarantee" was of little practical value since nearly all of the 3D's TCN's were unqualified.  Replacement was not an option that the DOS made available to MVM and is not one that can be imposed on MVM by 3D.  Because the TCNs did not meet the required language capability standard, they were not acceptable to the DOS and our contract with DOS was terminated.

When the DOS issued a cure letter to MVM alleging that most of the TCNs did not have the required English language capability, MVM retained ALTA, an independent, internationally known language testing company, to test that capability.  The test results clearly indicated that the vast majority of TCNs did not have the English language capability required by MVM's contract with 3D.  Nonetheless, MVM proposed a remedial plan to the DOS to increase the English language capability of the TCNs and retained people trained to teach English as a Second Language to work with the TCNs.  MVM's proposed remedial plan was rejected by the DOS.

As a result of 3D's failures, MVM suffered grievous damage financially and to its reputation. We incurred significant cost in attempting to determine the extent of the problem caused by 3D and to remedy it. In the end, we were required to return over 200 Peruvians to Peru on very short notice and at a high cost to MVM. I personally spent a number of weeks in Kabul including the entire 2005 Holiday Season.

3D's breach of the contract with MVM resulted in direct damages to MVM in the range of $5 to $6 million. However, in order to move forward to conclude a settlement of this matter, we are prepared to discuss payment by 3D to MVM of the following amounts:

| | |
|---|---:|
| Cost of transporting Peruvians to Kabul | $665,470.00 |
| Cost of transporting Peruvians from Kabul | 498,640.00 |
| Cost of ALTA on-site language testing | 12,200.00 |
| Cost of ESL People (travel and labor) | 111,489.00 |
| Cost of USIS | 431,941.00 |
| Total | $1,718,941.00 |

We are prepared to discuss with you how you would propose to settle the amounts 3D owes to MVM as a result of its material breach of our contract. Should 3D agree to pay these amount owed, MVM is prepared to enter into a Settlement Agreement with appropriate covenants and releases. If we cannot reach an agreement, MVM will be forced to consider taking whatever action is necessary to recovery the damages it has suffered.

Very truly yours,

Dario O. Marquez, Jr.
President and CEO

# EXHIBIT    5



**3D Global Solutions, Inc.**

# INVOICE

**3D Global Solutions**
12898 Pontell Place
Westfield, IN 47074
Phone/Fax 866.238.6761

**Bill To:**
MVM Inc

1593 Spring Hill Road Suite 700
Vienna Virginia22182
703-245-9730
Attn: Clyde Slick

| | |
|---|---|
| **DATE:** | Nov 15 2005 |
| **INVOICE #** | MVM 2005 114 |
| **FOR:** | *Kabul Family Services* |

| DESCRIPTION | AMOUNT |
|---|---|
| Kabul Family Services November / 71 Guards at $30 per Guard | $   2,130.00 |
| | |
| **TOTAL** | $    2,130.00 |

**Wiring instructions:**

Wells Fargo Bank
2662 Towne Center Drive
Foothill Ranch CA 92610
**Account info:**
3D Global Solutions Inc.
Acct # 6400988629
Routing # 121000248

**THANK YOU FOR YOUR BUSINESS!**



*3D Global Solutions, Inc.*

# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

317-866-238-6761

# Invoice

| Date | Invoice # |
|---|---|
| 10/25/2005 | 2005-112 |

| Bill To |
|---|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|---|---|
|  | EFT |

| Description | Amount |
|---|---|
| Courier Services from Lima Peru to Washington DC | 2,090.00 |

**ETF Info:**
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| | **Total** | $2,090.00 |
|---|---|---|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/1/2005 | 2005-113 |

| Bill To |
|---------|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|----------|-------|
|  | EFT |

| Description | Amount |
|-------------|--------|
| Family Services Iraq Guards (November) $30/man 80 men | 2,400.00 |

**ETF Info:**
Wells Fargo Bank
2662 Towne Center Drive
Foothill Ranch, CA  92610

**Account Name:**
3D Global Solutions Inc.
Account #6400988629
Rounting #121000248

| | **Total** | $2,400.00 |
|---|-----------|-----------|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074
1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/11/2005 | 2005-115 |

| Bill To |
|---------|

MVM, Inc.
ATTN:  PETER RICE
1593 Spring Hill Road Suite 700
Vienna, VA  22182

| P.O. No. | Terms |
|----------|-------|
|  | EFT |

| Description | Amount |
|-------------|--------|
| Kabul Guards | 80,500.00 |
| Recruiting Services (1 of 2) |  |
| Less 1/2 30% deposit received (invoice #2005-104) | -17,325.00 |

ETF Info:
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

Account Name:
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| Thank you for your business. | **Total** | $63,175.00 |
|------|------|------|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/17/2005 | 2005-116 |

| Bill To |
|---------|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|----------|-------|
|  | EFT |

| Description | Amount |
|-------------|--------|
| Kabul Guards | 73,500.00 |
| Recruiting Services (2 of 2) | |
| Less 1/2 30% deposit received (invoice #2005-104) | -17,325.00 |

ETF Info:
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| Thank you for your business. | **Total** | $56,175.00 |
|---|---|---|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 12/1/2005 | 2005-117 |

| Bill To |
|---------|

MVM, Inc.
ATTN:  PETER RICE
1593 Spring Hill Road Suite 700
Vienna, VA  22182

| P.O. No. | Terms |
|----------|-------|
|  | Net 30 |

| Description | Amount |
|-------------|--------|
| Family Services Kabul Guards (December) $30/man 210 men | 6,300.00 |

**ETF Info:**
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| | **Total** | $6,300.00 |
|---|---|---|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

1-866-238-6761

# Invoice

| Date | Invoice # |
|---|---|
| 12/1/2005 | 2005-118 |

**Bill To**

MVM, Inc.
ATTN:  PETER RICE
1593 Spring Hill Road Suite 700
Vienna, VA  22182

| P.O. No. | Terms |
|---|---|
| | Net 30 |

| Description | Amount |
|---|---|
| Family Services Iraq Guards (December) $30/man 80 men | 2,400.00 |

**ETF Info:**
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| | **Total** | $2,400.00 |
|---|---|---|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074
1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/23/2005 | 2005-119 |

| Bill To |
|---------|

MVM, Inc.
ATTN:  PETER RICE
1593 Spring Hill Road Suite 700
Vienna, VA  22182

| P.O. No. | Terms |
|----------|-------|
|  | Due on receipt |

| Description | Amount |
|-------------|--------|
| Guide Services (2 men, 4 days) | 2,000.00 |

**ETF Info:**
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Rounting #121000248**

| | Total | $2,000.00 |
|--|-------|-----------|

**Make check payable to:  3D Global Solutions, Inc.**
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net



*3D Global Solutions, Inc.*

# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074
1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/28/2005 | 2005-120 |

| Bill To |
|---------|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|----------|-------|
|  | Due on receipt |

| Description | Amount |
|-------------|--------|
| Guide Services (1 man, 3 days) | 750.00 |

| ETF Info: |
|-----------|
| Wells Fargo Bank<br>2662 Towne Center Drive<br>Foothill Ranch, CA  92610<br><br>Account Name:<br>3D Global Solutions Inc.<br>Account #6400988629<br>Routing #121000248 |

| **Total** | $750.00 |
|-----------|---------|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net



# *3D Global Solutions, Inc.*

# INVOICE

**3D Global Solutions**
12898 Pontell Place
Westfield, IN 47074
Phone/Fax 866.238.6761

**Bill To:**
MVM Inc

1593 Spring Hill Road Suite 700
Vienna Virginia22182
703-245-9730
Attn: Clyde Slick

| | |
|---|---|
| **DATE:** | Nov 15 2005 |
| **INVOICE #** | MVM 2005 111 |
| **FOR:** | *Exit Taxes & Guide Services* |

| DESCRIPTION | AMOUNT |
|---|---|
| Exit taxes 71 Guards + Per Diem; 71 Guards at $65 (19%VAT Tax included) = | $  4,615.00 |
| Guide Services Qty (2) $250 per day, port to port 13 days | 6,500.00 |
| | |
| **TOTAL** | **$  11,115.00** |

**Wiring instructions:**
Wells Fargo Bank
2662 Towne Center Drive
Foothill Ranch CA 92610
**Account info:**
3D Global Solutions Inc.
Acct # 6400988629
Routing # 121000248

**THANK YOU FOR YOUR BUSINESS!**

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

317-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/24/2005 | 2005-110 |

**Bill To**

MVM, Inc.
ATTN:  PETER RICE
1593 Spring Hill Road Suite 700
Vienna, VA  22182

| P.O. No. | Terms |
|----------|-------|
|  | EFT |

| Description | Amount |
|-------------|--------|
| Passport Services (230 men) | 24,523.00 |

ETF Info:
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Routing #121000248**

| | **Total** | $24,523.00 |
|---|---|---|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

317-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 10/24/2005 | 2005-111 |

| Bill To |
|---------|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|----------|-------|
|  | EFT |

| Description | Amount |
|-------------|--------|
| Guide Services & exit tax money (230 men) | 19,250.00 |

**ETF Info:**
**Wells Fargo Bank**
**2662 Towne Center Drive**
**Foothill Ranch, CA  92610**

**Account Name:**
**3D Global Solutions Inc.**
**Account #6400988629**
**Routing #121000248**

| **Total** | $19,250.00 |
|-----------|------------|

Make check payable to:  3D Global Solutions, Inc.
If you have any questions concerning this invoice, contact Mike
Dodd at mike.dodd@3dglobalsolutions.net

*3D Global Solutions, Inc.*



# 3D Global Solutions, Inc.

12898 Pontell Place
Westfield, IN  47074

1-866-238-6761

# Invoice

| Date | Invoice # |
|------|-----------|
| 11/29/2005 | 2005-121 |

| Bill To |
|---------|
| MVM, Inc.<br>ATTN:  PETER RICE<br>1593 Spring Hill Road Suite 700<br>Vienna, VA  22182 |

| P.O. No. | Terms |
|----------|-------|
|  | Due on receipt |

| Description | Amount |
|-------------|--------|
| Guide Services (1 man, 4 days) | 1,000.00 |

| ETF Info: |
|-----------|
| **Wells Fargo Bank**<br>**2662 Towne Center Drive**<br>**Foothill Ranch, CA  92610**<br><br>**Account Name:**<br>**3D Global Solutions Inc.**<br>**Account #6400988629**<br>**Routing #121000248** |

| **Total** | $1,000.00 |
|-----------|-----------|

**Make check payable to:  3D Global Solutions, Inc.**
**If you have any questions concerning this invoice, contact Mike**
**Dodd at mike.dodd@3dglobalsolutions.net**

EXHIBIT    6

09/07/05  13:18 FAX 703 527 0780          MVM INC.                          ☒002

## RECIPROCAL NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (the "Agreement") is made this     day of September, 2005 by and between 3D Global Solutions, Inc., with offices at 12898 Pontell Place, Westfield, Indiana 46074 ("3D") and MVM, Inc. a California corporation with offices at 1593 Spring Hill Road, Vienna, Virginia 22182 ("MVM").

The parties wish to exchange Proprietary Information (as hereinafter defined) for the purpose of enabling the parties to respond to enter into a business relationship in support of MVM's DOS Embassy Security Force Contract in Kabul, Afghanistan (the "Contract") and for purposes related thereto (the "Purpose").

The parties hereto agree to the following terms and conditions concerning the disclosure of Proprietary Information.

1.     For the purposes of this Agreement, "Proprietary Information" means any financial, technical, business and operational information, including any intellectual property owned by or licensed to the disclosing party, relating to the disclosing party's business or products, which is disclosed by the disclosing party to the non-disclosing party in any form in connection with the Purpose; provided, that information disclosed in writing or in tangible form is marked "Proprietary" or the like and that information disclosed orally is stated to be proprietary at the time of disclosure, summarized in writing by the disclosing party and delivered to the non-disclosing party within 10 days of such oral disclosure.

       Proprietary Information does not include information that (a) is known to the non-disclosing party at the time of disclosure as evidenced by appropriate contemporaneous documentation, (b) is or becomes a matter of public knowledge through no fault of the non-disclosing party, (c) is lawfully obtained from a third party in lawful possession of such information which third party does not owe a duty of confidentiality to the disclosing party, (d) is independently developed by the non-disclosing party without use of or reliance on Proprietary Information or (e) is disclosed pursuant to any judicial or regulatory order binding on the non-disclosing party (and only to the extent of and for the purpose of compliance with such order) provided that the non-disclosing party gives the disclosing party reasonable notice of such order prior to disclosure so that the disclosing party has the opportunity to contest such disclosure or to seek a protective order in respect of such disclosure.

2.     Each party may use Proprietary Information only in connection with the above-stated Purpose.

3.     Neither party shall disclose Proprietary Information to a third party without the prior written consent of the disclosing party except that MVM may disclose Proprietary Information to the US Government in connection with the Contract. Each party may disclose Proprietary Information only to its employees and only on a "need to know" basis. Each party shall advise its employees that it has executed this Agreement with respect to Proprietary Information and instruct its

1331053.2

employees in the use and protection of such Proprietary Information. Each party shall protect
Proprietary Information by using the same degree of care, but no less than reasonable care, that it
uses to protect its own similar proprietary or confidential information, including protecting such
Proprietary Information from inadvertent disclosure. The parties agree that the non-disclosing
party shall be liable to the disclosing party for any breach by an employee of the non-disclosing
party's obligation to maintain the confidentiality of Proprietary Information.

4.      All Proprietary Information shall remain the property of the disclosing party. Except as
provided in Paragraph 2, the parties agree that no right or license, including but not limited to any
intellectual property right or license, is granted or implied as a result of any disclosure of
Proprietary Information. Any additional right, license or use by a party of Proprietary Information
shall require further agreement between the parties.

5.      Upon the termination of this Agreement each party shall return all Proprietary Information
in its possession or control to the disclosing party at the address first above written. A party may
require the destruction of Proprietary Information in lieu of its return. Any such destruction shall
be certified by an officer of the company destroying such Proprietary Information.

6.      Either party may terminate this Agreement, but only with respect to future disclosures and
not with respect to existing or prior disclosures, effective upon 30 days written notice to the other
party at the address first above written. The obligations of the parties hereunder with respect to
Proprietary Information disclosed during the term of this Agreement shall continue until such time
as such information may be disclosed as provided in a written consent of the disclosing party, or
until such information becomes public other than by a breach of this Agreement by the recipient of
such information..

7.      The parties agree that if either party breaches this Agreement, the non-breaching party will
suffer irreparable harm for which money damages may not be a sufficient remedy. Therefore, the
parties agree that the non-breaching party shall be entitled to equitable relief including but not
limited to injunctive relief and specific performance in addition to any other relief that may be
available to such non-breaching party.

8.      All Proprietary Information disclosed hereunder is provided "as is" and "with all faults".
The disclosing party disclaims all representations and warranties, expressed and implied, including
without limitation, fitness for a particular purpose, merchantability, and non-infringement in respect
of such Proprietary Information, except that the disclosing party represents and warrants that it has
a right to disclose the Proprietary Information. The disclosing party shall not be liable to the non-
disclosing party for any losses or damages arising out of the non-disclosing party's use or reliance
on any Proprietary Information disclosed hereunder.

9.      This Agreement may not be assigned or transferred by either party. This Agreement shall
be governed by and construed in accordance with the laws of the Commonwealth of Virginia
without regard to its conflicts laws. The parties consent to the non-exclusive jurisdiction of the
United States District Court for the Eastern District of Virginia and to the jurisdiction of any
Commonwealth court sitting within such Eastern District in respect of any dispute, claim or
controversy arising under this Agreement. The parties agree to waive any objections as to venue or

1311053.2

based on forum non conveniens. This Agreement constitutes the complete agreement between the parties and supersedes all prior agreements with respect to the subject matter hereof. Any modifications or amendments to this Agreement must be in writing and signed by both parties. This Agreement is binding on and shall inure to the benefit of each party's successors and permitted assigns.

In witness whereof, the parties have executed this Agreement as of the date first above written.

3D GLOBAL SOLUTIONS, INC.

By: _____

Name: _Michael Dodd_____

Title: _President / CEO_____

MVM, INC.

By: _____

Name: _ROBERT L. RUBIN_____

Title: _SENIOR VICE PRESIDENT____

1331053.2