## AGREEMENT FOR RECRUITING SERVICES

THIS AGREEMENT FOR SERVICES ("Agreement") by and between MVM, Inc., a California corporation with offices at 1593 Spring Hill Road, Vienna, Virginia 22182 ("MVM") and 3D Global Solutions Inc. a Indiana corporation with offices at 12898 Pontell Place, Westfield, Indiana 46074 ("3D") is dated as of September 26, 2005.

WHEREAS, 3D has competence, capability and experience relating to recruiting of security personnel; and

WHEREAS, 3D is prepared to make such competence, capability and experience available to MVM by recruiting third party nationals ("TCNs") as security personnel in support of the MVM contract with the US Department of State (the "DOS"); and

WHEREAS, MVM desires to use 3D to provide such recruiting services;

THEREFORE, the parties agree to the following the terms and conditions in connection with the provision of such recruiting services by 3D:

A.     **SCOPE OF SERVICES.**

3D shall recruit, provide specified pre-deployment services and provide specified post-deployment support services to MVM. The personnel supplied by 3D will become employees of MVM and will perform as security personnel in support of MVM's contract with the DOS Embassy Security Force, Kabul, Afghanistan (the "Services").

The services to be provided by 3D are described in Exhibit D.

MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time. The form of such Task Order is set forth in Exhibit A hereto. The terms and conditions of employment 3D shall offer such TCNs will be provided to 3D with each Task Order.

B.     **QUALIFICATIONS OF TCNs.**

1.     Each TCN (i) shall be in good general health without physical or mental disabilities, either temporary or long lasting, that would interfere with the performance of his assigned duties including standing for prolonged periods of time in performance of guard duty, (ii) shall be free from communicable disease, (iii) shall have binocular vision correctable to 20/30 Snellen and shall not be colorblind (iv) shall be capable of hearing ordinary conversation. 3D shall provide evidence of physical fitness of each TCN by a certification from a licensed physician within such TCNs country of origin, based on a physical examination conducted prior to the TCN's assignment.

2.     Each TCN shall be free of all Schedule I–V drugs which are covered in the Federal Drug Testing Program, as detected in such TCNs urine or saliva sample, unless such drug is validly prescribed for such TCN by a licensed physician. 3D shall provide evidence of testing for such drugs, which testing shall be conducted in such TCNs country of origin and in accordance with the US Department of Health and Human Services Mandatory Guidelines for Federal Workplace Drug Testing Programs. These Guidelines can be



reviewed at www.health.org/workplace. MVM will supply a list of drugs for which tests will be conducted.

3.  Each TCN shall receive all DOS recommended inoculations for Afghanistan. 3D shall provide evidence that each TCN has received all recommended inoculations for Afghanistan. MVM will supply a list of required inoculations to 3D.

4.  3D shall provide evidence of criminal and pre-employment background checks for each TCN conducted in the TCN's country of origin, in form and substance satisfactory to MVM.

5.  In addition to the qualifications set forth in this Paragraph B, each TCN shall meet the qualifications of the position for which he is applying, which qualifications and positions are set forth in Exhibit B herein.

6.  In addition to the qualifications set forth in this Paragraph B, no TCN (i) shall have been convicted of any felony or any misdemeanor involving moral turpitude during the five year period prior to the date of employment application, (ii) shall have been declared by any court of competent jurisdiction incompetent by reason of a mental condition or defect or (iii) shall suffer from habitual drunkenness or narcotics addiction or dependence as evidenced by the drug testing procedure in Paragraph B2, above, or information developed in the vetting process.

7.  3D shall certify to MVM that each TCN meets each of the qualifications set forth in this Paragraph B.

C.  **PROCEDURE.**

1.  3D shall provide to MVM an application package for employment, and an application package for Medium Risk Public Trust Certification, completed by each TCN as well as the certifications and evidence of various tests and background checks required by Paragraph B of this Agreement, in English and in the format required by MVM (the "Employment Package").

MVM shall review each Employment Package and shall submit to the DOS Employment Packages for TCNs that MVM determines meet the requirements contained in this Agreement. Upon approval by the DOS of an Employment Package, MVM will offer employment to such TCN conditioned on the satisfactory completion in English of the forms listed in Exhibit C hereto and the final approval by the DOS. The decision to hire a TCN recruited by 3D shall be made solely by MVM following the approval of such TCN by the DOS.

2.  MVM agrees to reimburse 3D for the cost of obtaining a passport for any qualified TCN candidate who does not have a passport and is unable to pay for one in advance of employment. The Employee Agreement that MVM will sign with each employee will state that MVM will recover this cost from the employee's initial pay check.

D.  **FEE FOR SERVICES**

1.  On the condition that 3D fully and faithfully performs the Services, MVM shall pay 3D fees in the amounts and types shown in Exhibit B. 

For pre-deployment services:

2

- MVM will pay the specified per person fee for each fully qualified TCN who receives a final employment offer from MVM and deploys to Kabul, Afghanistan.

- 3D will invoice once deployment has occurred

For post-deployment services:

- MVM will pay the specified monthly fee for each TCN supplied by 3D who is deployed to Kabul in a given calendar month. For administrative convenience, if a TCN is on duty in Kabul for 15 days or less in a given calendar month, this will not count toward the fee calculation. If a TCN is on duty in Kabul for 16 days or more in a given calendar month, this will count toward the fee calculation.

- 3D will invoice monthly.

2. MVM shall pay all approved invoices within thirty days of receipt.

**E.    INDEPENDENT CONTRACTOR.**

3D is retained as an independent contractor solely to provide the Services and the Recruitment Consultant. No agency is created by the terms of this Agreement and 3D shall not hold itself out to others to be an agent of MVM. 3D shall not have the power to execute any document or agreement on behalf of MVM or to otherwise bind MVM in any respect.

**F.    TERM OF AGREEMENT.**

The term of this Agreement shall commence on the date hereof and shall continue until terminated. Either party may terminate this Agreement immediately by written notice to the other party in the event of a material breach of this Agreement by such other party. ~~MVM may terminate this Agreement immediately by written notice to 3D in the event MVM's contract with the DOS is terminated.~~ Either party may terminate this Agreement by providing thirty days written notice to the other party.

**G.    NON-EXCLUSIVE ARRANGEMENT.**

During the term of this Agreement, 3D shall not accept assignments from other clients if such assignments would interfere with the performance by 3D of the Services required hereby.

**H.    CONFIDENTIAL BUSINESS INFORMATION.**

3D agrees that it will hold in confidence all information provided to 3D by MVM (including the terms of this Agreement) concerning MVM's business including, but not limited to, MVM's contracts, personnel and operations (the "Confidential Business Information"). 3D agrees not to disclose such Confidential Business Information to any person without MVM's consent. 3D agrees that it will not use any Confidential Business Information for any reason other than for the performance of the Services. 3D's obligation under this Paragraph H shall survive for three years after the termination of this Agreement.

**I.    NOTICES.**

Any notices required or permitted to be given hereunder shall be given in writing and delivered to a party in person or at such party's address (or facsimile number) stated below

3

*MPD*

or to such other address (or facsimile number) as such party shall advise the other party in writing, and will be deemed received when tendered in person or when sent by facsimile or by certified mail:

MVM, Inc.
1593 Spring Hill Road
Vienna, Virginia 22182
Attention: Clyde Slick
Facsimile: (703) 827-0780

3D Global Solutions, Inc.
12898 Pontell Place
Westfield, Indiana 46074
Attn: Mike Dodd

J.    MISCELLANEOUS.

This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its conflicts laws.

The exhibits to this Agreement are incorporated herein by this reference.

This Agreement supersedes all prior arrangements and understandings between the parties in respect of the subject matter hereof and constitutes the entire agreement between the parties in respect of such subject matter.

This Agreement may be executed in counterparts, each executed counterpart constituting an original but all together constituting only one Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

MVM, INC.

Signed: _____

Name: ROBERT L. RUBIN

Title: Senior Vice President

3D GLOBAL SOLUTIONS INC.

Signed: _____

Name: Michael F. Dodd

Title: President

4

**EXHIBIT A**

**SAMPLE TASK ORDER**

In accordance with the Agreement for Recruiting Services dated September _____, 2005 by and between MVM  and 3D, MVM hereby instructs 3D to recruit TCNs to fill the security personnel positions listed below:

<u>Number of TCNs</u>                                    <u>Type of Position to be Filled</u>

TCNs covered by this Task Order shall report to _____ no later than _____ for deployment to Kabul, Afghanistan.

All of the requirements in Section B of the Agreement for Recruiting Services must be met. A copy of the offer letter for these positions is attached.

5

**EXHIBIT B**

## TCN POSITIONS AND QUALIFICATIONS

### Guard:

- At least 21 years of age
- Fluent in English (Level 2)
- Minimum of 3 years of military, similar police, or local guard force experience
- A current passport from country of origin
- Able to obtain a valid, current local or international driver's license
- Acceptable personal, and if appropriate, military record
- Meet professional conduct, health, and appearance requirements
- Up-to-date inoculations for international travel in areas in which service will be performed

### Senior Guard:

- Fluent in English (Level 3)
- Minimum of 5 years of mid-level military, similar police, or local guard force supervisory experience 3 years of which were at the NCO or equivalent level
- Proficient in access control procedures of vehicles and pedestrians
- Knowledgeable of proper patrol procedures
- Skilled in operating two-way communication devices
- Experienced in physical security and access control matters

### Dispatcher/Guard:

- Fluent in English (Level 3)
- Minimum of 3 years of military, similar police, or local guard force experience
- An operating record without significant traffic violations or accidents during the preceding 5 years and during the period of performance of this contract
- Proficient in operating and monitoring of communications equipment
- Experience in dispatching
- Able to obtain license in Afghanistan for all vehicles required under this contract
- Familiar with physical security and access control matters
- Proficient in defensive driving techniques

**Language Proficiency Requirements**

Required Language Proficiency Levels (as outlined in the employment qualifications 4.g.) are defined as:

**Speaking Level 2 (Limited Working Proficiency)**

Able to satisfy routine social demands and limited work requirements.

- Can handle routine work-related interactions that are limited in scope
- In more complex and sophisticated work-related tasks, usage generally disturbs the native speaker
- Can handle with confidence, but not with facility, most normal high-frequency social conversational situations, including extensive but casual conversations about current events, as well as work, family, and autobiographical information
- The individual can comprehend most everyday conversations, but has some difficulty understanding native speakers in situations that require specialized or sophisticated knowledge
- The individual's utterances are minimally cohesive to articulate basic concepts
- Linguistic structure is usually not very elaborate and not thoroughly controlled; errors are frequent
- Vocabulary use is appropriate for high-frequency utterances, but unusual or imprecise elsewhere

**Speaking Level 3 (General Professional Proficiency)**

Able to speak the language with sufficient structural accuracy and vocabulary to participate effectively in most formal and informal conversations on practical, social, and professional topics.

- Nevertheless, the individual's limitations generally restrict the professional contexts of language use to matters of shared knowledge and/or international convention
- Discourse is cohesive
- The individual uses the language acceptably, but with some noticeable imperfections; yet, errors virtually never interfere with understanding and rarely disturb the native speaker
- The individual can effectively combine structure and vocabulary to convey his/her meaning accurately
- The individual speaks readily and fills pauses suitably
- In face-to-face conversation with natives speaking the standard dialect at a normal rate of speech, comprehension is quite complete
- Although cultural references, proverbs, and the implications of nuances and idiom may not be fully understood, the individual can easily repair the conversation
- Pronunciation may be obviously foreign
- Individual sounds are accurate; but stress, intonation, and pitch control may be faulty

7

**EXHIBIT C**

**APPLICANT EMPLOYMENT PACKAGE**

"Recruiter" gives candidates for Key Personnel positions hard-copies of MVM new-hire forms for completion:

- MVM-Kabul *Employment Package Checklist*
  - ➤ MVM Form 300-4, *Employment Application*
  - ➤ MVM Form 300-4F, *Employment Application (for non-US personnel)*
  - ➤ MVM Form 300-25, *Authority for Release of Information*
  - ➤ MVM Form 200-3, *Drug Free Workplace and Drug Testing Acknowledgement Statement*
  - ➤ MVM Form 300-24, *Consent for Use of Photographic Materials*
  - ➤ MVM Form 300-29, *Emergency Data Form*
  - ➤ MVM Form 500-5, *Direct Deposit Request*
  - ➤ MVM Form 500-14, *Notice Regarding Paycheck Deductions*
  - ➤ MVM Form 700-1, *Standards of Conduct and Appearance Standards*
  - ➤ List of MVM *Pay Periods and Pay Dates*
  - ➤ MVM Policy Statement, *Equal Employment Opportunity*
  - ➤ MVM Sexual Harassment Policy & Acknowledgement
  - ➤ MVM *E-mail Policy Acknowledgement Form*
  - ➤ MVM Memorandum, *Notice Regarding Official Use of Telephones*
  - ➤ MVM Policy Statement, *No Fraternization*
  - ➤ MVM Policy Statement, *Involvement in Unlawful Activity*
  - ➤ MVM Policy Statement, *Inquiries from Outside Organizations and Individuals*
- MVM *Employment Agreement* for specified (named) position

"Recruiter" simultaneously provides applicant with paperwork to initiate MRPT investigation process:

- MVM-Kabul *Security Package Checklist*
  - ➤ MVM letter, Subj: Instructions for MRPK Processing (w/2 attachments)
    - ○ *Guidelines for Completing Your Security Package* (with *Checklist*)
    - ○ *Instructions for Use of EPSQ 2.2 (Subject Version) for ESF-Kabul Applicants*
  - ➤ DoS *Checklist for <u>Moderate Risk Public Trust</u> ... Positions*
    - ○ Instructions to read before completing SF-85P
    - ○ DS-4002, *Disclosure and Authorization Pertaining to Consumer Reports*
    - ○ DS-7601, *Authorization to Conduct Criminal History Inquiry for Spouse or Cohabitant*
    - ○ *Foreign Relatives...* spreadsheet
    - ○ *Overseas Activities Contact Data Sheet*
    - ○ Gov't of Canada *Authority for Release of Information* (if needed)
  - ➤ DoS-furnished FD-258, *Applicant* fingerprint cards (2)
  - ➤ Blank SF-85P, *Questionnaire for Public Trust Positions*
  - ➤ Blank SF-85PS, *Supplemental Questionnaire for Selected Positions*

**EXHIBIT D**

**KABUL ESF**
**Recruiting and Support Functions to be performed by 3D**

### PRE - DEPLOYMENT:

| | | |
|---|---|---|
| 1 | Recruit Candidates | Recruit |
| | | Vet per RFP |
| | | Resume preparation per RFP |
| | | Clearance package preparation per RFP |
| | | Employment package preparation |
| | | |
| 2 | Contractual Requirements | Medical exam |
| | | Drug Test |
| | | Inoculations |
| | | |
| 3 | Deployment Readiness | Establish bank accounts |
| | | Get passport for candidate (if necessary) |
| | | Assist with necessary visas (as necessary) |
| | | All pre-deployment contact with employees |
| | | Orientation meetings (MVM will attend) |
| | | Assist with travel plans to Kabul as necessary |
| | | (MVM will make actual flight reservations) |
| | | Travel arrangements to airport |
| | | Supervise movement |
| | | Hold formation at airport |
| | | Supervision from Lima to Kabul (senior guards |
| | | assigned to supervise travel movement) |
| | | Assist/advise MVM on any matters related to smooth |
| | | deployment |

### POST - DEPLOYMENT

| | | |
|---|---|---|
| 4 | Family Support | "Hot Line" for guards and families |
| | after deployment | Peruvian attorney on staff |
| | | Access to Guard bank accounts |
| | | "walk in hours" at local office |
| | | Private email account |
| | | Internet kiosk available |
| | | Status emails to families |
| | | Dedicated website for guards |
| | | Facilitate sending of care packages |
| | | Host a monthly luncheon |
| | | Casualty notification |

9

# EXHIBIT E

## Fee Schedule

|  |  | Fee | Comments |
|---|---|---|---|
| **ONE TIME TASKS:** | | | |
| 1 | Recruit Candidates | $300 | |
| 2 | Contractual Requirements | $70 | |
| 3 | Deployment Readiness | $330 | |
| | **TOTAL RECRUITING FEE** | **$700** | |
| | | | |
| **ONGOING SUPPORT:** | | | |
| 4 | Family Support after deployment | $360 | $30 per month per person |
| | **TOTAL ANNUAL SUPPORT FEE** | **$360** | |

Notes:

"Recruiting fee"
    Covers all tasks shown up to and including deployment
    (see task categories 1,2, and 3)
    Fee is paid per deployed person

"Annual Support Fee"
    Covers ongoing support as described (see task category 4)
    Fee based on number of persons deployed in a given month

09/29/05  08:32 FAX 703 827 0780        MVM INC.                      @005

## EXHIBIT A

## TASK ORDER

In accordance with the Agreement for Recruiting Services dated September 26, 2005 by and between MVM and 3D, MVM hereby instructs 3D to recruit TCNs to fill the security personnel positions listed below:

Number of TCNs                          Type of Position to be Filled

65                                      TCN Guard

TCNs covered by this Task Order shall report to *Jorge Chavez International Airport, Lima, Peru* on or about *10 November 2005* for deployment to Kabul, Afghanistan.

All of the requirements in Section B of the Agreement for Recruiting Services must be met.

AGREED:

MVM, INC.

Signature: _____

Name: ROBERT L. RUBIN

Title: Senior Vice President

Date: 28 SEPT 05

3D GLOBAL SOLUTIONS INC.

Signature: _____

Name: Mike Dodd

Title: CEO

Date: 9/29/05

**EXHIBIT A**

**TASK ORDER**

**Task Order Number:  002**

In accordance with the Agreement for Recruiting Services dated September 26, 2005 by and between MVM  and 3D, MVM hereby instructs 3D to recruit TCNs to fill the security personnel positions listed below:

_Oct   4_

| Number of TCNs | Type of Position to be Filled |
|---|---|
| 145 | TCN Guard |
| 20 | TCN Senior Guard |

TCNs covered by this Task Order shall report to _Jorge Chavez International Airport, Lima, Peru_  on or about _10 November 2005_ for deployment to Kabul, Afghanistan.

All of the requirements in Section B of the Agreement for Recruiting Services must be met.

**AGREED:**

**MVM, INC.**

Signature: _____

Name: _ROBERT L. Ruben,_____

Title: _SVP_____

Date: _03 OCT 05_____

**3D GLOBAL SOLUTIONS INC.**

Signature: _____

Name: _Mike Dodd_____

Title: _CEO_____

Date: _10/4/05_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| 3D GLOBAL SOLUTIONS, INC., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:06cv00722 (GK) |
| | ) | |
| MVM, INC., | ) | |
| 1593 Spring Hill Road | ) | |
| Suite 700 | ) | |
| Vienna, Virginia 22182 | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**AFFIDAVIT OF ROBERT RUBIN IN SUPPORT OF DEFENDANT'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, Robert Rubin, state and declare as follows:

1.      I, Robert Rubin, am employed by MVM, Inc., ("MVM") as a Senior Vice President for Business Development.  I have personal knowledge of the matters about the matters that I herein testify.  I make this affidavit in support of MVM's Motion for Partial Summary Judgment in this litigation.

2.      On July 7, 2005, the U.S. Department of State ("State Department") notified MVM that it had awarded MVM a contract for the provision of security guards (*i.e.*, "third country nationals," or "TCNs") to the U.S. embassy in Kabul, Afghanistan ("Afghanistan Contract").  On September 26, 2005, MVM contracted with 3D Global Solutions, Inc. ("3D") to help MVM meet its guard staffing obligations under the Afghanistan Contract.  Under the September 26, 2005 contract ("September 26, 2005 Contract"), 3D promised to supply MVM with "security personnel in support of an MVM contract with the US Department of State," and, in particular, "the DOS Embassy Security Force [in] Kabul, Afghanistan."  The September 26,

1

2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time."

3.    MVM issued a total of two (2) task orders to 3D under the September 26, 2005 Contract. Those task orders, dated September 26, 2005 (for 65 TCN Guards) and October 4, 2005 (for 145 TCN Guards and 20 TCN Senior Guards), are attached to the Complaint in Exhibit 2.

4.    On October 1, 2005, MVM entered into a separate and distinct contract with a completely different federal agency: the Joint Contracting Command in Iraq. Under that contract ("Iraq Contract"), which did not cover the same services as the Afghanistan Contract, MVM agreed to provide security guard services at Ar Rustamayiah Military Academy in Iraq. To help MVM fulfill its obligations under the Iraq Contract, MVM entered into another contract with 3D on October 12, 2005. Under the October 12, 2005 contract ("October 12, 2005 Contract," attached to the Complaint as Ex. 1), 3D promised to provide TCNs to help MVM meet its guard staffing obligations as determined by task orders placed by MVM with 3D. MVM placed only one such task order – for Iraq. The October 12, 2005 Contract, does not apply to nor govern the Afghanistan project – the September 26, 2005 Contract remained in place to cover those obligations. Like the September 26, 2005 Contract, the October 12, 2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time."

5.    MVM issued a total of one (1) task order to 3D under the October 12, 2005 Contract. That task order, dated October 12, 2005 (for 8 Senior Guard II and 74 Guards), is attached to the Complaint as the third task order in Exhibit 2. Thus, MVM ordered from 3D a

2

total of 82 TCNs for use in performing the Iraq Contract.  3D delivered the 82 TCNs to Iraq, and MVM paid 3D in full for those 82 TCNs.  Thus, MVM has paid 3D for the TCNs provided in Iraq pursuant to the October 12, 2005 Contract.

6.      On December 2, 2005, the State Department notified MVM that the TCNs that 3D sent to Kabul did not meet an important requirement of the Afghanistan Contract for the TCNs to speak English with contractually-set levels of proficiency.  Less than three weeks later, on December 21, 2005, DOS terminated the Afghanistan Contract because of that deficiency.  As a result, MVM lost the Afghanistan Contract and no less than $2 million in out-of-pocket damages.

7.      The October 12, 2005 Contract is for the provision of TCNs to Iraq and other locations, but it does not apply to the provision of TCNs to Afghanistan.

Further Affiant Sayeth Not.

Executed this 19th day of June, 2006.

                                        _____
                                        Robert Rubin
                                        Senior Vice President
                                        MVM, Inc.

State of Virginia
County of Fairfax, to wit:

    I, _Margie Cebrian_, Notary Public for the county aforesaid, do certify that Robert Rubin this day made oath before me in my county aforesaid.

    Given under my hand this the 19th day of June, 2006.

                                        _____
                                        Notary Public

McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
McLean, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

Sean F. Murphy
Direct: 703.712.5487

# McGUIREWOODS

sfmurphy@mcguirewoods.com
Direct Fax: 703.712.5243

May 31, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**
**(202) 449-3499**

Mr. Athan T. Tsimpedes, Esquire
Law Offices of Athan T. Tsimpedes
1420 New York Avenue, N.W., 7th Floor
Washington, D.C. 20005

> Re:  *3D Global Solutions, Inc. v. MVM, Inc.*, **Case No. 1:06CV00722, United States District Court for the District of Columbia**

Dear Mr. Tsimpedes:

Thank you for returning my call this afternoon. I am glad we were able to discuss this matter and in particular 3D's reliance on the wrong contract between the parties.

As I read the Complaint, all eight counts against my client, MVM, Inc., are based on a contract between 3D and MVM, whereby 3D would supply third country nationals to MVM for deployment to Kabul, Afghanistan, for use in performance of MVM's contract with the United States Government. 3D, however, did not attach the applicable contract to the Complaint but, rather, attached a contract, dated October 12, 2005, that does not cover this work; it covers unrelated work in Iraq and other countries. The third task order attached as a part of Exhibit 2 is similarly inapplicable. Pursuant to our conversation, I have attached to this letter the September 26, 2005 contract that does apply.

As I suggested during the call, I request that 3D either dismiss its suit pursuant to Rule 41 or file an Amended Complaint under Rule 15 because the contract and task order sued upon are not the relevant contracts between the parties. I would appreciate if you let me know whether you plan to take either of these courses of action prior to this Friday, June 2, 2006.

Sincerely,

Sean F. Murphy

Enclosure



May 31, 2006
Page 2


bc:    Charles E. Gaba, Esq.
       Anand V. Ramana, Esq.

**From:** atsimpedes@comcast.net
**Sent:** Monday, June 05, 2006 12:36 PM
**To:** Murphy, Sean F.
**Cc:** Ramana, Anand V.
**Subject:** 3d global v. MVM

Sean,

per our conversation, let this serve as notice and consent for an additional two weeks for you to file an answer or other responsive pleading in this matter.

I am not sure whether I will file an amendement or errata, or nothing at all.  I will make a decision by tomorrow.  I still need some info from my client regarding the 05 contract.   I will contact you.

thanks,

Athan Tsimpedes
1420 New York Avenue, NW
7th Floor
Washington, DC 20005
202-638-2100



**From:**   Murphy, Sean F.
**Sent:**   Sunday, June 11, 2006 2:54 PM
**To:**     'atsimpedes@comcast.net'
**Cc:**     Ramana, Anand V.
**Subject:** RE: 3d global v. MVM

athan,

I have not hear further from you so I thought I would check back with you. Could you please let us know what, if anything, 3D intends to do on this contract issue so MVM can respond appropriately.

Thanks,

Sean

    -----Original Message-----
    **From:** atsimpedes@comcast.net [mailto:atsimpedes@comcast.net]
    **Sent:** Monday, June 05, 2006 12:36 PM
    **To:** Murphy, Sean F.
    **Cc:** Ramana, Anand V.
    **Subject:** 3d global v. MVM

    Sean,

    per our conversation, let this serve as notice and consent for an additional two weeks for you to file an answer or other responsive pleading in this matter.

    I am not sure whether I will file an amendement or errata, or nothing at all. I will make a decision by tomorrow. I still need some info from my client regarding the 05 contract. I will contact you.

    thanks,

    Athan Tsimpedes
    1420 New York Avenue, NW
    7th Floor
    Washington, DC 20005
    202-638-2100



McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
McLean, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

**McGuireWoods**

Sean F. Murphy
Direct: 703.712.5487

sfmurphy@mcguirewoods.com
Direct Fax: 703.712.5243

June 14, 2006

**VIA FACSIMILE AND FIRST CLASS MAIL**
**(202) 449-3499**

Mr. Athan T. Tsimpedes, Esquire
Law Offices of Athan T. Tsimpedes
1420 New York Avenue, N.W., 7th Floor
Washington, D.C. 20005

Re:    ***3D Global Solutions, Inc. v. MVM, Inc.***, Case No. 1:06CV00722, United
States District Court for the District of Columbia

Dear Athan:

On May 31, 2006, I spoke with you and wrote you concerning 3D's reliance in its
Complaint on the wrong contract and task orders between the parties. In our
conversation, and in your subsequent June 5 e-mail, you promised to let me know by
June 6 whether 3D would file an Amended Complaint, dismiss its Complaint or take no
action at all so that MVM could respond appropriately.

When I did not hear from you, I wrote you again in an e-mail dated June 11
asking you to respond as you had promised. As yet, I have not heard from you - and
now MVM must file its responsive pleadings this Monday, June 19 without knowing what
3D is going to do to correct its invocation of the wrong contract and task orders.

I would appreciate the courtesy of a response.

Very truly yours,

Sean F. Murphy

June 14, 2006
Page 2


bc:    Charles E. Gaba, Esq.
       Anand V. Ramana, Esq.