IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC.,<br><br>    *Plaintiff,*<br><br>    v.<br><br>MVM, INC.,<br>1593 Spring Hill Road<br>Suite 700<br>Vienna, Virginia 22182<br><br>    *Defendant.* | Case No. 1:06cv00722 (GK) |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant MVM, Inc. ("MVM"), by its counsel and pursuant to Rules 7 and 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56, files this Memorandum of Points and Authorities in Support of Defendant's Motion for Partial Summary Judgment.

**INTRODUCTION**

Pursuant to a contract dated October 12, 2005 ("October 12, 2005 Contract"), Plaintiff 3D Global Solutions ("3D") provided third-country security guards to Iraq. MVM has paid, Inc. all amounts due and owing under the October 12, 2005 Contract. 3D's services to Iraq are not the services in dispute in this lawsuit.

In dispute in this lawsuit, as articulated in 3D's Complaint, are the services for providing security guards for the U.S. Embassy in Kabul, Afghanistan, which is the subject of a separate contract dated September 26, 2005 ("September 26, 2005 Contract" attached as Exhibit 1). 3D, however, is suing MVM for breach of the October 12, 2005 Contract, and not the September 26, 2005 Contract.

A party cannot be sued on a contract when it has been fully paid, yet that is what 3D has done. Moreover, counsel alerted 3D to the fact that the Iraq contract (attached as Exhibit 1 to the Complaint) was not the contract that applies, and in fact supplied the correct contract to 3D's counsel. Despite a promise from 3D's counsel of a prompt response, none has ever been provided nor did 3D take any corrective action, whether it be a nonsuit under Rule 41, an amended complaint, or a simple substitution of the proper contract. Accordingly, 3D cannot maintain a contract claim under the September 26, 2005 for services paid for and provided October 12, 2005 Contract.

## STATEMENT OF UNDISPUTED FACTS

A.   **The Contracts Between the Parties**

On July 7, 2005, the U.S. Department of State ("State Department") notified MVM that it had awarded MVM a contract for the provision of security guards (*i.e.*, "third country nationals," or "TCNs") to the U.S. embassy in Kabul, Afghanistan ("Afghanistan Contract"). (Affidavit of Robert Rubin ("Rubin Aff."), attached as Exhibit 2, ¶ 2.) On September 26, 2005, MVM contracted with 3D to help MVM meet its guard staffing obligations under the Afghanistan Contract. (*Id.*) Under the September 26, 2005 Contract, 3D promised to supply MVM with "security personnel in support of an MVM contract with the US Department of State," and, in particular, "the DOS Embassy Security Force [in] Kabul, Afghanistan." (*Id.*) The September 26, 2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time." (September 26, 2005 Contract, at § A.)

MVM issued a total of two (2) task orders to 3D under the September 26, 2005 Contract. (Rubin Aff. ¶ 3.) Those task orders, dated September 26, 2005 (for 65 TCN Guards) and October 4, 2005 (for 145 TCN Guards and 20 TCN Senior Guards), are attached to the Complaint in Exhibit 2. (*Id.*; *see also* Compl. Ex. 2)

On October 1, 2005, MVM entered into a separate and distinct contract with a completely different federal agency: the Joint Contracting Command in Iraq. (Rubin Aff. ¶ 4.) Under that contract ("Iraq Contract"), which did not cover the same services as the Afghanistan Contract, MVM agreed to provide security guard services at Ar Rustamayiah Military Academy in Iraq. (*Id.*) To help MVM fulfill its obligations under the Iraq Contract, MVM entered into another contract with 3D on October 12, 2005. (*Id.*) Under the October 12, 2005 contract ("October 12, 2005 Contract," attached to the Complaint as Ex. 1), 3D promised to provide TCNs to help MVM meet its guard staffing obligations as determined by task orders placed by MVM with 3D. (*Id.*) MVM placed only one such task order – for Iraq. (*Id.*) The October 12, 2005 Contract, does not apply to the Afghanistan project – the September 26, 2005 Contract remained in place to cover those obligations. (*Id.*) Like the September 26, 2005 Contract, the October 12, 2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time." (October 12, 2005 Contract, at § A.)

MVM issued a total of one (1) task order to 3D under the October 12, 2005 Contract. (Rubin Aff. ¶ 5.) That task order, dated October 12, 2005 (for 8 Senior Guard II and 74 Guards), is attached to the Complaint as the third task order in Exhibit 2. (*Id.*) Thus, MVM ordered from 3D a total of 82 TCNs for use in performing the Iraq Contract. (*Id.*) 3D delivered the 82 TCNs

to Iraq, and MVM paid 3D in full for those 82 TCNs. (*Id.*) Thus, MVM has paid 3D for the TCNs provided in Iraq pursuant to the October 12, 2005 Contract. (*Id.*) 3D does not allege these facts. (*See generally*, Compl. ¶¶ 1-36.)

On December 2, 2005, the State Department notified MVM that the TCNs that 3D sent to Kabul did not meet the requirement of the Afghanistan Contract to speak English with a certain level of proficiency. (Rubin Aff. ¶ 6.) Less than three weeks later, on December 21, 2005, DOS terminated the Afghanistan Contract because of that deficiency. (*Id.*) As a result, MVM lost the Afghanistan Contract and no less than $2 million in out-of-pocket damages. (*Id.*)

### B.   The 3D Breach of Contract Claim

3D alleges a breach of contract in Count One of its Complaint, and states that the contract attached as Exhibit 1 – the October 12, 2005 Contract – is the contract MVM allegedly breached. (Compl. ¶ 20-23.) The October 12, 2005 Contract is for the provision of TCNs to Iraq and other locations as designated by MVM through its tasks orders, but it does not apply to the provision of TCNs to Afghanistan because MVM issued no task orders for Afghanistan under the October 12, 2005 Contract. (Rubin Aff. ¶ 7.)

In its factual allegations, however, 3D consistently refers to the allegedly breached contract as one for the provision of TCNs for deployment to Kabul, Afghanistan. (*See e.g.*, Compl. at 2 (" [3D Global] . . . deployed the foreign national recruits to Kabul[,] Afghanistan"); ¶¶ 6 ("MVM obtained a . . . contract with the United States Government to provide a large security force in Kabul[,] Afghanistan" and "sought to fulfill its recruits by agreement with . . . [3D Global]"), 11 (". . . to any TCN being accepted by MVM for deployment to Kabul,

4

Afghanistan"), 12 ("only 230 [TCNs] were deployed by MVM to Kabul, Afghanistan")). Specifically, 3D alleges that MVM breached the contract by failing to pay 3D in accordance with the Kabul, Afghanistan agreement. (*See* Compl. ¶¶ 7-8.)

### C.   3D's Opportunity to Cure the Complaint's Defect

After receiving the Complaint, counsel for MVM contacted counsel for 3D to inform him that he attached the wrong contract to the Complaint. (*See* Exhibit 3.) Counsel for MVM then forwarded the correct contract (*i.e.*, September 26, 2006 Contract) to counsel for 3D so that 3D could dismiss its suit pursuant to Fed. R. Civ. P. 41 or amend the Complaint pursuant to Fed. R. Civ. P. 15. (*Id.*) MVM did so to avoid time and costs of an unnecessary filing – as 3D's counsel was so informed.

On June 5, 2006, 3D's counsel informed MVM's counsel that he would "make a decision by tomorrow [June 6]" on what corrective action, if any, 3D would take, and that he would contact MVM's counsel when he did. (*See* Exhibit 4.) 3D's counsel has never done so despite a subsequent e-mail, letter, and telephone call from counsel. (*See* Exhibit 5.)

MVM gave 3D every opportunity to correct the obvious error that 3D was suing MVM on a contract that applies to services in Iraq, and not Afghanistan, and for which 3D has been fully paid. 3D, however, failed to even respond to MVM despite counsel's repeated attempts to avoid an unnecessary MVM filing. This failure to respond, despite its promise, has forced MVM to expend its own – and this Court's – resources by filing this Motion for Partial Summary Judgment and obtaining the dismissal of 3D's claims on a contract under which MVM has already paid.

5

## ARGUMENT

I.  **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 mandates entry of summary judgment against a party who "upon motion ... fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Bailey v. Potter,* 2006 WL 1582410 at *2 (E.D. Va. 2006); see *Laningham v. U.S. Navy,* 813 F.2d 1236, 1242 (D.C. Cir.1987). Summary judgment is appropriate when the moving party can show by affidavits, depositions, admissions, answers to interrogatories, pleadings, or other evidence, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is particularly appropriate for disposing of contract claims. *See* Fed.R.Civ.P. 56(c); *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491 (1962); *Mazaleski v. Treusdell,* 562 F.2d 701, 717 (D.C. Cir.1977).

II.  **MVM IS ENTITLED TO PARTIAL SUMMARY JUDGMENT ON COUNT ONE (BREACH OF CONTRACT)**

MVM is entitled to partial summary judgment on Count One of the Complaint (Breach of Contract) because 3D is suing on the wrong contract.

In its Complaint, 3D alleges that MVM breached the October 12, 2005 Contract because MVM did not pay 3D in accordance with that contract. (Compl. ¶¶ 6, 7-8, 9, 12-13.) As outlined at pages 2 to 4 above, however, the October 12, 2005 Contract does not govern the rights and obligations between 3D and MVM for service guards provided in Afghanistan. (Rubin

Aff. ¶ 7.) Instead, the October 12, 2005 Contract controls the rights and obligations between 3D and MVM for guards to Iraq. (Rubin Aff. ¶ 7.) Furthermore, 3D does not allege that MVM failed to pay it for its provision of security guards to Iraq, the site of the one task order that MVM issued under the October 12, 2005 Contract. (Rubin Aff. ¶ 4.)

Simply stated, 3D is suing on a contract that does not apply to TCNs sent to Kabul.[1] In any event, MVM has paid 3D for the TCNs 3D sent to Iraq pursuant to the October 12, 2005 Contract. MVM has given 3D several opportunities to cure this omission. (*See* Exs. 3-5.) Counsel for MVM repeatedly notified 3D's counsel of this error, but 3D's counsel failed to correct it. (*Id.*) For these reasons, 3D fails to state a breach of contract claim against MVM under the October 12, 2005 contract and, therefore, that claim should be dismissed with prejudice. *See* Fed. R. Civ. P. 56(c).

## CONCLUSION

3D's breach of contract claim in Count One is based on a contract for services in Iraq – not Afghanistan – and on a contract under which 3D already has been paid. Therefore, this Court should grant Defendant's Motion for Partial Summary Judgment in favor of MVM and dismiss with prejudice the Count One claim for breach of the October 12, 2005 Contract.

**ORAL ARGUMENT REQUESTED**

Dated: June 19, 2006                                    Respectfully Submitted,

---

[1] The third task order in Exhibit 2 of the Complaint (dated October 12, 2005) suffers from the same defect as well. Because that task order is for TCNs to Iraq, and not to Afghanistan, it has nothing to do with the contract that 3D Global alleges MVM breached. (*See* Compl. ¶¶ 6, 11, 12.)

                                                    MVM, INC.

                                                    By Counsel

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA  22101-3892
Tel:  (703) 712-5000
Fax:  (703) 712-5050

By:  _____
        Sean F. Murphy, Esq.  (D.C. Bar No. 457599)
        Anand V. Ramana, Esq. (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2006, I served a true and correct copy of the foregoing document via first-class U.S. mail and electronic mail on:

> Athan T. Tsimpedes, Esq.
> Law Offices of Athan T. Tsimpedes
> 7th Floor
> 1420 New York Avenue, N.W.
> Washington, D.C. 20005

_____
Anand V. Ramana