IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> MVM, INC., <br> 1593 Spring Hill Road <br> Suite 700 <br> Vienna, Virginia 22182 <br><br> *Defendant*. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:06cv00722 (GK) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant MVM, Inc. ("MVM"), by counsel and pursuant to Rules 7 and 12(b)(6) of the Federal Rules of Civil Procedure and Rule LCvR 7(a) of the Rules of the United States District Court for the District of Columbia, files this Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.

**INTRODUCTION**

In 2005, the United States Department of State ("State Department") contracted with MVM, whereby MVM would provide security guard services for the U.S. Embassy in Kabul, Afghanistan. (Compl. ¶ 6.) MVM in turn contracted with Plaintiff 3D Global Solutions, Inc. ("3D") for help in fulfilling its obligations under that government contract. (*Id.*) In particular, MVM's contract with 3D ("September 26, 2005 Contract") obligated 3D to find, recruit, and send to Kabul security guards ("third country nationals" or "TCNs") that spoke English at the proficiency levels required by the State Department. (*Id.*) 3D never satisfied this fundamental contractual obligation. (*See* Compl. ¶ 16.)

Through task orders, 3D found, recruited, and deployed 230 TCNs to Afghanistan. (Compl. ¶ 12.) The overwhelming majority of the TCNs did not speak English at the required level. (*See* Compl. ¶ 16, Ex. 4 ("MVM retained ALTA, an independent, internationally known language testing company, to test [the TCNs' capability]. The test results clearly indicated that the vast majority of TCNs did not have the English language capability required by MVM's contract with 3D.") As a direct result, the State Department terminated its contract with MVM, causing a multimillion dollar loss for MVM. (*See* Compl. at Ex. 4.)

Despite making factual allegations concerning the September 26, 2005 Contract, 3D is nonetheless suing MVM on separate and distinct contract for the provision of security guards to Iraq – but not to Afghanistan ("October 12, 2005 Contract"). The October 12, 2005 Contract is therefore not the basis for 3D's factual claims. Even though counsel has alerted 3D's counsel to this deficiency, 3D has chosen not to amend its Complaint nor take any other corrective action. Accordingly, MVM separately seeks summary judgment on 3D's breach of contract claim in Count One of the Complaint since the October 12, 2005 Contract does not cover the provision of security guards to Kabul.

A further deficiency in the 3D Complaint is the attempt to transform this relatively straightforward contract dispute into a series of tort claims that, in any event, fail to state valid causes of action against MVM. The fatal deficiencies in these claims are the subject of this Motion to Dismiss. First, the laws of Virginia – the body of law applicable to these claims – do not recognize claims for "detrimental reliance," "concealment or non-disclosure," "negligent interference with a business advantage," or "constructive conversion." (Compl. Counts Two, Five, Six, and Eight.)

Second, the fraud allegations in Counts Three and Four do not satisfy the requirements of

Virginia and Federal Rule 9(b); the Complaint does not identify *any* act or statement or material omission that gives rise to a claim for either actual or constructive fraud.

Third, 3D's claim for intentional interference with a business advantage (Count Six) is only permissible if (1) 3D identifies the existing or prospective 3D contract or business expectancy that MVM alleged interfered with; and (2) 3D alleges MVM knew about this 3D contract or expectancy, and then knowingly and impermissibly interfered with it to 3D's detriment. 3D fails to satisfy either of these relatively straightforward pleading requirements.

Fourth, Virginia law bars the claim for unjust enrichment (Count Seven) when a contract exists that expressly governs all rights and obligations between the parties. Here, it is undisputed that such a contract exists. Accordingly, its existence bars the 3D unjust enrichment claim.

## ARGUMENT

### I.  STANDARD OF REVIEW

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A motion to dismiss tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* Fed. R. Civ. P. 12(b)(6). The factual allegations of the complaint must be presumed true and construed in favor of the plaintiff. *Shear v. Nat'l Rifle Ass'n of America*, 606 F.2d 1251, 1253 (D.C. Cir.1979).

## II.   VIRGINIA LAW GOVERNS THIS CASE

In a diversity action, a federal court must apply the choice-of-law principles of the state or jurisdiction in which it sits to determine governing substantive law. *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1394 (D.C. Cir. 1995); *Bledsoe v. Crowley*, 849 F.2d 639, 641 (D.C. Cir. 1988). Ordinarily, "[t]he law of the forum is presumed to apply unless it is demonstrated that a foreign jurisdiction has a greater interest in the controversy than does the District." *Doe v. Roe*, 841 F. Supp. 444, 446 (D.D.C. 1994).

The District of Columbia employs a modified "governmental interest analysis," under which the court must evaluate the governmental policies underlying the applicable laws and then determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case. *Long v. Sears Roebuck & Co., et al.*, 877 F. Supp. 8, 10 (D.D.C. 1995); *Doe v. Roe*, 841 F. Supp. at 446. The state with the "most significant relationship" should be the state whose policy would be advanced by the application of the law. *In re Air Crash Disaster at Washington, D.C.*, 559 F. Supp. 333, 342 (D.D.C. 1983).

Four factors guide a District of Columbia federal court in its choice-of-law decisions relating to tortious conduct: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004); *ABB Daimler-Benz Transp. (North America), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 88 (D.D.C. 1998) (Kessler, J.); *In re Air Crash Disaster*, 559 F. Supp. at 342; *Doe v. Roe*, 841 F. Supp. at 446; *Long*, F. Supp. at 11; *see also* Restatement (Second) of Conflict of

Laws § 145. Application of these factors to this case shows that the laws of the District of Columbia are not applicable.

Virginia has the most significant relationship to this litigation. MVM is a large federal government contractor that is headquartered in Vienna, Virginia. (Compl. ¶ 2.) The contract attached to the Complaint shows that the MVM point of contact for 3D's deliverables is located in Virginia (Ex. 1 at ¶ B6.), and requires all notices to MVM to be sent to its Vienna, Virginia offices (Id. at ¶ I.). The contract expressly states that is "shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia." (Id. at ¶ J.) At least one of the task orders attached to the Complaint shows that it was faxed from MVM's Virginia number. (Ex. 2.) The correspondence from MVM's President and CEO, Dario O. Marquez, Jr., from MVM originated at its Virginia office (Ex. 4.), and 3D delivered all of its invoices to MVM's Vienna, Virginia address (Ex. 5.). Finally, the non-disclosure agreement attached to the Complaint provides that it is governed by Virginia law, and that the parties consent to non-exclusive jurisdiction of the U.S. District Court for the Eastern District of Virginia and "any Commonwealth court sitting within such Eastern District of Virginia." (Ex. 6 at ¶ 9.)

Based on these alleged facts, all of which are found in 3D's Complaint and attached Exhibits, Virginia is clearly the center of the business relationship between MVM and 3D. Furthermore, though 3D is based in Indiana (see Compl. ¶ 1.), any alleged wrongdoing on the part of MVM must emanate from Virginia. Under these circumstances, there is no basis for invoking the laws of Indiana or District of Columbia. Accordingly, this Court should apply Virginia law to all causes of action alleged in the Complaint.

## III. COUNTS TWO THROUGH EIGHT OF THE COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Each of Counts Two, Three, Four, Five, Six, Seven, and Eight fails to state a claim upon which relief can be granted. Four of those claims (detrimental reliance, concealment or non-disclosure, unjust enrichment, and constructive conversion) should be dismissed because they assert causes of action that Virginia law does not recognize. Another three of those claims (intentional/negligent misrepresentation, constructive fraud, and negligent or intentional interference with business advantage) should be dismissed because the Complaint fails to allege one or more elements necessary to state such a claim.

### A. Virginia Law Does Not Recognize a Claim for Detrimental Reliance or Promissory Estoppel.

Count Two of 3D's Complaint asserts a cause of action for "Detrimental Reliance" (Compl. ¶¶ 24-28.), but there is no cause of action in Virginia entitled "detrimental reliance." *See generally*, B. Roche, *Virginia Torts Case Finder* (4th ed. 1999); K. Sinclair *et al*, *Virginia Civil Procedure* (4th ed. 2003).

Instead, the substantive allegations set forth in Count Two suggest a claim of promissory estoppel. *Compare Andrews Large & Whidden, Inc. v. Capman & Wood, Inc.*, 37 Va. Cir. 251, 1995 WL 1055982 at *1 (Richmond Va. Cir. Ct. 1995) (*citing Stone Printing & Mfg. Co. v. Dogan*, 234 Va. 163, 165 (1987) ("the elements of a promissory estoppel claim are (1) a promise; (2) a reasonable and foreseeable reliance on the promise; (3) resulting detrimental actions or forbearance by the promisee; and (4) an injustice avoidable only by enforcement of the promise").

These are exactly the allegations 3D makes in Count Two. 3D alleges that (1) "MVM

made promises pursuant to an agreement;" (2) "MVM reasonably expected his [sic] promise would induce action or forbearance by [3D];" (3) MVM's "promise induced actual and reasonable action or forbearance by [3D];" and (4) 3D "detrimentally relied upon [MVM's] promise resulting in damages." (Compl. ¶¶25-28.)

The Virginia Supreme Court expressly declined to recognize a cause of action for promissory estoppel in 1997. *See Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997); *W.J. Schafer Associates, Inc. v. Cordant, Inc.*, 254 Va. 514, 493 S.E.2d 512 (1997). Thus, Count Two asserts a cause of action that Virginia law clearly and expressly does not recognize, even when construing it in the light most favorable to 3D.

B.  **3D Does Not State a Claim For Either Intentional or Negligent Misrepresentation.**

Count Three of 3D's Complaint alleges a cause of action for "Intentional/Negligent Misrepresentation." (Compl. ¶¶ 29-34.) Specifically, 3D alleges that (1) "MVM's negligent assertions or false statements were made while owing a duty of care to [3D];" (2) [MVM] intended that [3D] to [sic] act or rely upon the negligent assertions or false statements;" (3) "[MVM] knew or should have known that [3D] would probably rely upon the negligent assertions of false statements which, if erroneous would cause damage to [3D];" (4) "[3D] justifiably relied upon [MVM] [sic] statements and assertions;" and (5) "[a]s a result of [MVM's] negligence, [3D] incurred damages." (*Id.*)

In Virginia, intentional misrepresentation is known as actual fraud, and negligent misrepresentation is known as constructive fraud. *See Goff v. J. Sargeant Reynolds Community College*, 2004 WL 2093444 at *2 (Va. Cir. Ct. 2004). 3D fails to state a claim for either.

### 1. Actual Fraud

3D has not validly pled a claim for actual fraud under Virginia law. In Virginia, a cause of action for actual fraud arises when there exists (1) a false representation (2) of a material fact, (3) knowingly or intentionally made (4) with the intent to mislead another person, (5) which that person relied upon (6) with the result that he was damaged by it. *Davis v. Marshall Homes*, 265 Va. 159 (2003).

3D has not pled an actual fraud claim for two substantive reasons. First, 3D fails to allege – or even identify – the material fact that MVM falsely represented. (*See* Compl. ¶¶ 29-34.) That alone is enough to warrant dismissal of this claim. *Lambert v. Downtown Garage, Inc.*, 262 Va. 707, 711, 553 S.E.2d 714, 716 (2001) ("a misrepresentation of fact is a necessary element of proof to [a] claim for common law fraud").

Second, 3D fails to allege that MVM knowingly or intentionally made the "false statement." (*Id.*) Instead, 3D merely alleges that MVM "intended that Plaintiff to [*sic*] act or rely upon the . . . false statements." (Compl. ¶ 31.) That allegation does not speak to the third element (intent to falsely represent a material fact). Furthermore, 3D's allegations indicate that MVM did *not* know or intend to make a false statement: "[d]efendant knew or should have known that the Plaintiff would probably rely upon the . . . false statements which, *if erroneous*[,] would cause damage to Plaintiff." (Compl. ¶ 32 (emphasis added).)

3D also fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake ... shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Zandford v. National Ass'n of Securities Dealers, Inc.*, 19 F. Supp.2d 4, 9 (D.D.C. 1998) (Kessler, J.). The "circumstances" that must be pled include the "'time, place and content of the false

misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud.'" *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir.1994) (*quoting United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir.1981) (citation omitted), *cert denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)); *see also Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C.Cir.1996); *Hite v. Leeds Weld Equity Partners, IV, LP*, 2006 WL 1017024 at *4 (D.D.C. 2006).

Here, 3D has not pled with particularity any of the circumstances that Rule 9(b) or its interpretive case law mandates. *See Zandford*, 19 F. Supp.2d at 9. The Complaint does not reference the time, place, or content of the allegedly "false statements," material facts allegedly misrepresented, or what MVM procured as a result of the actual fraud. (*See* Compl. ¶¶ 29-34.) In short, the specific allegations of actual fraud that 3D is required to make are absent. Accordingly, 3D fails to state a claim for actual fraud because of these deficiencies.

### 2. Constructive Fraud

3D also fails to properly plead a claim for constructive fraud in Count Three. Virginia courts recognize a cause of action for constructive fraud only when a party alleges (1) a false representation (2) of a material fact (3) innocently or negligently made, (4) which the party relied upon, and (5) the injured party was damaged as a result of his reliance upon the misrepresentation. *See State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 220, 618 S.E.2d 316, 321 (2005).

3D has not validly pled constructive fraud because, as noted above, 3D completely fails to allege the material fact that MVM allegedly falsely represented. (*See* Compl. ¶¶ 29-34.) In addition, and similar to its pleading deficiencies for actual fraud, 3D has not plead with particularity any of the circumstances that Rule 9(b) or its interpretive case law requires. *See*

*Zandford*, 19 F. Supp.2d at 9. There are no allusions to the time, place, or content of the allegedly "false statements," material facts allegedly misrepresented, or what MVM procured as a result of the fraud. (*See* Compl. ¶¶ 29-34.) These deficiencies also invalidate 3D's constructive fraud claim in Count Three.

### C. Count Four (Constructive Fraud) Is Duplicative of, and Has the Same Deficiencies As, Count Three.

Count Four of 3D's Complaint should be dismissed if for no other reason than it duplicates the constructive fraud claim in Count Three. (Compl. ¶¶ 35-39.)

Furthermore, 3D has not validly pled constructive fraud in Count Four because it fails to allege (or even identify) all five elements of the claim: (1) MVM false representation, (2) of a material fact, (3) innocently or negligently made, (4) upon which 3D relied (5) and was damaged as a result of that reliance. (*See* Compl. ¶¶ 35-39.) As such, 3D utterly fails to state a claim for constructive fraud under Virginia law in Count Four, and it does not comply with Rule 9(b). *See State Farm*, 270 Va. at 220, 618 S.E.2d at 321; *Zanford*, 19 F. Supp. 2d at 9. The missing allegations of the time, place, and content of the allegedly "false statements" misrepresented warrant dismissal of this fraud claim as well. (*See* Compl. ¶¶ 35-39.)

### D. Virginia Does Not Recognize a Cause of Action for Concealment or Non-Disclosure.

Count Five of 3D's Complaint alleges a cause of action for "Concealment or Non-Disclosure." (Compl. ¶¶ 40-45.) Counsel is unaware of and could not find any Virginia authority that recognizes "concealment or non-disclosure." To the extent that Count Five is an attempt to state some type of fraud claim, it not only duplicates Counts Three and Four, but it also contains the same substantive deficiencies that similarly mandate this Count's dismissal.

E.  **Virginia Law Does Not Recognize Negligent Interference with a Business Advantage, and 3D Fails to Identify any Contract or Business Expectancy**

Count Six is entitled "Negligent or Intentional Interference with Business Advantage." (Compl. ¶¶ 46-49.) For this Count, 3D alleges that (1) "[n]egligent or intentional willful [sic] acts of [MVM] towards [sic] [3D];" (2) "[MVM's] conduct was calculated to cause damage to [3D] in a loss of business;" and (3) "[MVM's] conduct was committed with the unlawful or improper purpose to cause such damage, without justification, and actual damage resulting [sic]." (Compl. ¶¶ 47-49.)

No cause of action for negligent interference with a business advantage exists in Virginia. *See McDonough v. Kellogg*, 295 F. Supp. 594, 598 (W.D. Va. 1969) ("It is generally recognized that negligent interference with performance of a contract does not create tort liability"). Accordingly, 3D's allegations of negligent interference do not state a claim under Virginia law.

Virginia does recognize a cause of action for intentional tortious interference. The elements this Virginia claim are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Chaves v. Johnson*, 230 Va. 112, 120 (1985).

In its Complaint, 3D fails to allege elements (1) and (2). Specifically, 3D does not identify a contract, business relationship, or prospective business relationship that is the target of the alleged interference. (*See* Compl. ¶¶ 47-49.) Moreover, 3D fails to allege that MVM knew of the unidentified contract or relationship. (*See* Compl. ¶¶ 47-49.) Absent these required allegations, this claim falls and it too should be dismissed. *See Chaves*, 230 Va. at 120.

### F.  3D Cannot Maintain a Claim For Unjust Enrichment Because an Express Contract Governs the Obligations At Issue

Unjust enrichment is the claim in Count Seven. (Compl. ¶¶ 50-53.) In Virginia, a party cannot obtain unjust enrichment or *quantum meruit* relief from another if it entered into a contract that expressly delineates the obligations the two parties will have on the subject in question. *See, e.g., Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481, 96 S.E. 754, 760 (1918) ("It is only in the absence of an express or of an enforceable contract between parties that the law ... will, from circumstances, imply a contract between them"); *Vollmar v. CSX Transportation, Inc.*, 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("'There can be no recovery in *quantum meruit* where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms'") (quoting *In re Stevenson Assoc.*, 777 F.2d 415, 421-22 (8th Cir.1985)), *aff'd*, 898 F.2d 413 (4th Cir. 1990). *See also Acorn Structures, Inc. v. Swantz*, 846 F.2d 923, 926 (4th Cir. 1988).

Here, 3D alleges and attaches a written contract that it alleges expressly governs all rights and obligations between it and MVM with regards to the supply of TCNs. (Compl. ¶ 6.; Ex. 1.) Virginia law bars 3D from simultaneously alleging a claim for unjust enrichment/*quantum meruit* when an express written contract governs all rights and obligations of the parties. *Vollmar*, 705 F. Supp. at 1176. That substantive bar dictates a dismissal of 3D's Count Seven.

### G.  Virginia Law Does Not Recognize a Claim for Constructive Conversion.

Virginia law does not recognize 3D's claim entitled "constructive conversion." *See generally*, B. Roche, *Virginia Torts Case Finder* (4th ed. 1999); K. Sinclair *et al*, *Virginia Civil Procedure* (4th ed. 2003). Thus, to the extent that it alleges a claim for "constructive

conversion," 3D fails to state a claim.

All that Virginia recognizes is a cause of action simply for conversion. Conversion is the wrongful exercise or assumption of authority over another's goods, depriving the owner of its possession, or any act of dominion wrongfully exerted over property in denial of, or inconsistent with, the owner's rights. *Simmons v. Miller*, 261 Va. 561, 582, 544 S.E.2d 666, 679 (2001); See *Hartzell Fan, Inc. v. Waco, Inc.*, 256 Va. 294, 300, 505 S.E.2d 196, 201 (1998); *Bader v. Central Fidelity Bank*, 245 Va. 286, 289, 427 S.E.2d 184, 186 (1993).

3D's claim for conversion of information falls as well. The only "good" of which 3D alleges MVM converted is the *information* contained in the administrative packages, and not the packages themselves. (*See* Compl. ¶¶ 11 ("Global provided the proprietary information..."), 17 ("MVM, through its agents, wrongfully and intentionally converted the confidential and proprietary information...")). In Virginia, however, a cause of action for conversion applies only to tangible property; no claims are recognized for conversion of intangible property. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305-306, 440 S.E.2d 902, 906 (1994). The information contained in the administrative packages is not tangible property, so a cause of action for conversion cannot arise. *See id.* In other words, 3D fails to state a claim because it alleges conversion of intangible property, and that is enough to justify dismissal of Count Eight.

## CONCLUSION

Counts Two through Eight of 3D's Complaint should be dismissed because either these claims are not recognized in Virginia or because 3D has not alleged the elements necessary for each claim to survive. Accordingly, this Court should dismiss with prejudice Counts Two, Three, Four, Five, Six, Seven, and Eight of the 3D Complaint.

**ORAL ARGUMENT REQUESTED**

Dated: June 19, 2006                                  Respectfully Submitted,

                                                      MVM, INC.

                                                      By Counsel

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA  22101-3892
Tel:  (703) 712-5000
Fax:  (703) 712-5050

By: _____
      Sean F. Murphy, Esq. (D.C. Bar No. 457599)
      Anand V. Ramana, Esq. (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of June, 2006, I served a true and correct copy of the foregoing document via first-class U.S. mail and electronic mail on:

> Athan T. Tsimpedes, Esq.
> Law Offices of Athan T. Tsimpedes
> 7th Floor
> 1420 New York Avenue, N.W.
> Washington, D.C. 20005

_____
Anand V. Ramana