IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06cv00722 (GK) |
| ) | |
| MVM, INC., ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT MVM'S REPLY TO PLAINTIFF 3D GLOBAL SOLUTION'S OPPOSITION TO MOTION TO DISMISS**

Defendant MVM, Inc. ("MVM"), by counsel and pursuant to Local Rule 7, files this Reply ("Reply") in response to Plaintiff's Opposition to Defendant's Motion to Dismiss ("3D's Opposition").

**ARGUMENT**

**I.   VIRGINIA LAW GOVERNS THIS CASE.**

3D does not dispute the choice of law analysis the Court must employ to determine whether the laws of Virginia govern 3D's tort claims.[1] (*See* 3D's Opposition at 3.) 3D, however, wrongly suggests that the outcome of the choice of law analysis leads to the application of the laws of the District of Columbia. (*Id.*)

Notably, 3D does not address the many facts *in its own Complaint* that support MVM's argument that Virginia law applies in this case. (*See* 3D's Opposition at 2-5.) Specifically, 3D

---

[1] Despite 3D's comment that "Defendant correctly states the standard for the choice of law analysis in the District of Columbia," 3D wrongly cites *Virginia* case law for the proposition that "the place of injury supplies the governing law in tort actions." (*See* 3D's Opposition at 3.) When there is a true conflict between the choice of law applicable in the District of Columbia and the law which is applicable in Virginia, the District employs a governmental interest analysis, while Virginia applies the *lex loci delicti* approach. *See Raflo v. United States*, 157 F. Supp. 2d 1, 8 (D.D.C. 2001).

1

fails to discuss why the District of Columbia has the "most significant relationship" to this litigation, despite the fact that it alleges that (1) 3D is an Indiana corporation with no office in the District (Compl. ¶ 1); (2) MVM is based in Vienna, Virginia (Compl. ¶ 2); (3) that MVM's point of contact for the deliverables under the 3D-MVM contract is in Virginia (Compl. Ex. 1 at ¶ B6); (4) that all notices be sent to MVM in Virginia (*Id.* at ¶ I); (5) that Virginia law governs the 3D-MVM contract (*Id.* at ¶ J), (6) that MVM received and delivered correspondence and invoices regarding the contract at its Virginia office (Compl. Exs. 2, 4, and 5); and (7) that the non-disclosure agreement attached to the Complaint is also governed by Virginia law (Compl. Ex. 6 at ¶ 9). 3D's failure to controvert any of these facts is, at best, an implied concession that Virginia law applies.

Instead of directly discussing the many facts supporting MVM's argument that Virginia law applies, 3D, through an affidavit from 3D President Michael Dodd, presents two factual arguments to support its claim that D.C. law applies. Neither of these factual arguments appear in (or can be reasonably inferred from) the Complaint. (*See generally* Compl.) First, 3D asserts that MVM converted (and benefited from the conversion of) 3D's administrative packages in the District of Columbia. (3D's Opposition at 4; Dodd Aff. ¶¶ 5, 8.) Second, 3D alleges that the 3D-MVM contract "was based on the prime contract between MVM and the Federal Government located in the District of Columbia." (3D's Opposition at 4.)

Neither of these factual arguments support 3D's conclusion that D.C. law applies. First, and as noted above, MVM operates in Virginia. (*See* Compl. ¶ 1; Ex. 1.) MVM's conduct, therefore, originates in Virginia and any benefit is gained in Virginia. Virginia is the focal point of MVM's conduct at issue in this case. Second, the contract between MVM and the U.S. Government is not relevant not at issue in this lawsuit. The allegations in the Complaint are

based upon a contract between 3D and MVM (*see* Compl. ¶¶ 6-7), and other alleged tortious conduct.

In short, 3D did not contest MVM's broad showing that Virginia law applies, and it failed to provide any real facts as to why D.C. law applies instead. Accordingly, his Court should apply Virginia law in this case.

## II.    COUNTS TWO THROUGH EIGHT OF THE COMPLAINT FAIL TO STATE A CLAIM.

### A.    Count Eight of the Complaint Should Be Dismissed Because Virginia and D.C. Law Do Not Recognize a Claim for Conversion of Intangible Property.

In its Opposition, 3D claims that MVM "argues that Virginia law does not recognize a cause of action for conversion." (3D's Opposition at 6.) On the contrary, MVM stated in its Motion to Dismiss that "Virginia recognizes a cause of action . . . for conversion." (MVM's Motion to Dismiss at 13.)

The problem with this conversion claim is that 3D alleges conversion of *information* in these packages, rather than conversion of tangible property. (*See* 3D's Opposition at 6; MVM's Motion to Dismiss at 13.) Specifically, 3D alleges the conversion of information "that included physician physicals, verifying qualifications, background, security/military background, [and] criminal background." (Compl. ¶ 11.) In Virginia, however, only tangible property is capable of wrongful conversion. *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305-306 (1994). Significantly, District of Columbia law also does not recognize a claim for conversion of intangible property. *See Equity Group, Ltd. v. PaineWebber Inc.*, 48 F.3d 1285, 1286 (D.C. Cir. 1995) (declining to extend tort of conversion to encompass intangible information "customarily merged in, or identified with some document").

3D does not rebut MVM's argument that 3D alleges conversion of information. (*See* 3D's Opposition at 6-7.) For these reasons, this Court should dismiss with prejudice 3D's claim that MVM converted "proprietary information."

**B.    This Court Should Dismiss the Tortious Interference Claim Because the October 12, 2005 Contract Directly Contradicts 3D's New Allegations of a Relationship Between It and the TCNs.**

As noted in MVM's Motion to Dismiss, 3D does not allege a contract or business relationship with which MVM allegedly interferes in the Complaint. (*See* Compl. ¶¶ 46-49.) In its Opposition, 3D does not demonstrate how the Complaint complies with the Virginia law requirement that it specifically allege the contract or business expectancy that is the target of the impermissible interference. *See Chaves v. Johnson*, 230 Va. 112, 120 (1985).

Instead, 3D explains, citing Dodd's July 19, 2006 affidavit as support, that MVM interfered with a "relationship between the TCN's [*sic*] and 3D" by selling the administrative packages to a third party. (3D's Opposition at 8-9.) This conclusory allegation of interference with over 230 relationships is not sufficient. Each individual relationship must be specifically identified as well as the corresponding acts of interference. *See Chaves*, 230 Va. at 120. The failure to do so mandates dismissal of these claims in Count Six.

There is another independent basis to dismiss this count. Though 3D claims an employment relationship with these TCNs, the October 12, 2005 contract expressly provides that "[t]he TCNs supplied by 3D will, at MVM's option, be Independent Contractors ("ICs") or direct employees to MVM." (*See* Compl. Ex. 1, ¶ A.) These allegations cannot bolster the deficiencies in Count Six since the new factual allegations contradict 3D's own exhibits to its Complaint.

Federal case law in this District provides that this Court need not accept as true the

4

complaint's factual allegations insofar as they contradict exhibits to the complaint. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). The unambiguous language of the October 12, 2005 contract shows that the employment relationships of the TCNs are with MVM, and not 3D. This directly contradicts 3D's convenient new factual allegation that a contract or business relationship between it and the TCNs exist. (*See* 3D's Opposition at 8-9.) Because the October 12, 2005 contract, which is attached to 3D's Complaint, states that MVM – and not 3D – holds the employment relationship (if any) with the TCNs, 3D still has yet not identified a valid contract or business expectancy with which MVM has allegedly interfered. Consequently, 3D fails to state a claim for tortious interference in Count Six, and this Court should dismiss this claim with prejudice.

### C.   The Unjust Enrichment Claim Should Be Dismissed Because There Is an Express Contract That Governs the Rights That 3D Is Trying to Invoke.

In its Opposition, 3D says nothing to refute MVM's argument that 3D's unjust enrichment claim should be dismissed with prejudice as it relates to any "rights and obligations between [3D] and MVM with regards to the supply of TCNs" because such a claim cannot arise when an express contract exists. (MVM's Motion to Dismiss at 12.) Instead, 3D attempts to distinguish the rights and obligations associated with the administrative packages from those of the TCNs themselves. This false distinction is without merit.

The October 12, 2005 contract, even assuming that it is the applicable contract in this case, specifically covers the required contents and use of the administrative packages in Paragraphs B(6) and C(1). (*See* Compl. Ex. 1 at 2, 3.) Furthermore, the October 12, 2005 contract sets forth specific guidelines for the use of "confidential business information." (*See* Compl. Ex. 1, ¶ H.) Contrary to 3D's allegations, however, that contract only prohibits *3D* from

disclosing *MVM's* "confidential business information." (*Id.*) By contrast, the October 12, 2005 contract does not characterize any of 3D's information as proprietary or confidential – including any information in the administrative packages. (*Id.*) Neither does the non-disclosure agreement attached to the Complaint. (*See* Compl. Ex. 6.)

On the face of the pleadings, the October 12, 2005 contract covers the rights and obligations that 3D says supports its unjust enrichment claim it is now trying to plead. Accordingly, 3D cannot state a claim for unjust enrichment, and this Court should dismiss Count Seven of the Complaint with prejudice.

### D.    3D Fails to Allege Actual Fraud With the Required Specificity.

In response to MVM's challenge to 3D's fraud count in Count Three, 3D states only that "MVM . . . represented it would seek to resolve its differences with 3D, while at the same time it concealed the fact it had wrongfully taken 3D's 'administrative packages' for its own use and sold them to a third party," and that "MVM . . . would keep the proprietary property-administrative packages of 3D confidential." (3D's Opposition at 7-8.) 3D's only allegation of damages in its Opposition is that "MVM realized a financial gain by selling 3D's property to a third party for profit and to the harm of 3D" (*see* 3D's Opposition at 8). These conclusory allegations do not plead fraud with the specificity that Federal Rule of Civil Procedure 9(b) requires.

In pleading fraud, a plaintiff must specifically allege "the time, place, and content" of the misrepresentations, "the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005). Nowhere in the Complaint does 3D specifically allege when or where (or

who at MVM) made the alleged representation and/or concealment, nor does 3D specifically identify what exactly 3D lost as a consequence of the alleged fraud. (*See* Compl. ¶¶ 29-34.) In fact, 3D only states in the Complaint that "Defendant MVM's . . . false statements were made while owing a duty of care to the Plaintiff," and that "Plaintiff incurred damages." (Compl. ¶¶ 30, 34.) That deficiency results in dismissal of this claim. *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004).

3D attempts to cure this insufficiency by asserting new facts not in the Complaint, *e.g.*, that MVM "concealed" the fact that it sold the administrative packages to a third party. (*See* 3D's Opposition at 7-8.) 3D is, however, impermissibly adding factual allegations when it relies on Mr. Dodd's *post hoc* affidavit to make allegations not found in the Complaint. (*See* 3D's Opposition at 6-7.) Facts not alleged in the Complaint, nor found elsewhere in the record, cannot be considered by the Court in deciding a motion to dismiss. *See Zhu v. Gonzales*, 2006 WL 1274767 at *4 (D.D.C. 2006) ("In deciding a Rule 12(b)(6) motion, the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.")

In short, 3D fails to allege in the Complaint the specifics of the fraud required by the Federal Rules of Civil Procedure and its interpretive case law. *See* Fed. R. Civ. P. 9(b). The fraud claim in Count Three should be dismissed because of this deficiency.

### E. 3D Does Not Oppose MVM's Challenge to the Constructive Fraud Claim, Nor Does It Specifically Plead the Fraud.

In its brief, 3D only describes MVM's challenge to the negligent misrepresentation claim; it does not challenge or refute it. (*See* 3D Opposition at 8 n.4.) Under Local Rule 7(b), MVM prevails on this challenge due to 3D's lack of opposition. To the extent that this Court

7

determines that 3D has somehow responded to MVM's argument, 3D still fails to allege the specifics of the fraud as Rule 9(b) requires. *See supra* at II.B. Accordingly, this Court should dismiss the constructive fraud claim with prejudice.

      F.    **3D Does Not Oppose MVM's Challenge to the Concealment/Non-Disclosure Claim.**

Likewise, 3D merely references MVM's challenge to the concealment or non-disclosure claim, and fails to oppose MVM's argument for dismissal of this count. (*See* 3D's Opposition at 8 n.4.) 3D therefore accepts MVM's motion to dismiss this count as well, *see* Local Rule 7(b), and it, too, should be dismissed. *See supra* at II.B.

      G.    **The Detrimental Reliance/Promissory Estoppel Claim Fails Under Virginia and D.C. Law Because the Existence of A Legally Sufficient Contract Bars Such Claims.**

3D's sole assertion that it may allege promissory estoppel or detrimental reliance claims in Count Two, claims that Virginia does not permit, is that "the laws of the District of Columbia apply" and therefore "Defendant's motion to dismiss on this issue must be denied." (3D's Opposition at 9.) 3D, however, fails to provide any authority that a cause of action for detrimental reliance or promissory estoppel exists under District of Columbia law. (*See id.*)

Even assuming *arguendo* that District of Columbia law applies, a plaintiff cannot bring a cause of action for promissory estoppel in the District when a legally sufficient contract exists. *See Building Services v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95-96 (D.D.C. 2004). Neither party here disputes the existence of a legally sufficient contract exists in this case; the only possible dispute is which of two contracts apply. (*See* 3D's Opposition to MVM's Motion for Partial Summary Judgment at 2, ¶¶ 1-2.) Since both 3D and MVM acknowledge that a

legally sufficient contract exists, this claim is barred regardless of whether the laws of Virginia or the District apply. For this reason, this Court should dismiss this count with prejudice.

## CONCLUSION

For the reasons specifically stated above and in MVM's Motion to Dismiss, this Court should dismiss Counts Two through Eight.

Respectfully Submitted,

**MVM, INC.**

*By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA 22101-3892
Tel: (703) 712-5000
Fax: (703) 712-5050

_____
Sean F. Murphy (D.C. Bar No. 457599)
Anand V. Ramana (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of July, 2006, I served a true and correct copy of the foregoing pleading via first-class U.S. mail and electronic mail on:

> Athan T. Tsimpedes, Esq.
> Law Offices of Athan T. Tsimpedes
> 7th Floor
> 1420 New York Avenue, N.W.
> Washington, D.C. 20005
> atsimpedes@comcast.net
> *Counsel for 3D Global Solutions, Inc.*

_____
Anand V. Ramana

Active\3637422.1