# EXHIBIT 4

03/08/2006  17:57   7037903155                        MVM LEGAL                              PAGE  02



March 8, 2006

<u>VIA FACSIMILE AND CERTIFIED MAIL</u>
Mr. Mike Dodd
Chief Executive Officer
3D Global Solutions, Inc.
12898 Pontell Place
Westfield, Indiana 46074

Dear Mike:

I refer to your letter of February 22, 2006. I, too, would prefer to settle our differences rather than resort to the court system. However, in order to do so, you must accept that it was your responsibility to provide Third Country Nationals (TCNs) for MVM's project in Kabul with a Level 2 or Level 3 English language capability and that you did not do so.

In your letter, you stated that an MVM representative "accepted" the TCNs that you proffered. It was not the role of MVM's representative to determine the level of English language capability of the TCNs whether MVM's representative interviewed the Peruvian TCN's or not. That responsibility was clearly 3D's and at no time was 3D relieved of that obligation by amendment of our contract or otherwise.

You also stated in your letter that you had offered a "full replacement guarantee" of any TCN that did not meet the requirements of our contract. 3D's "full replacement guarantee" was of little practical value since nearly all of the 3D's TCN's were unqualified. Replacement was not an option that the DOS made available to MVM and is not one that can be imposed on MVM by 3D. Because the TCNs did not meet the required language capability standard, they were not acceptable to the DOS and our contract with DOS was terminated.

When the DOS issued a cure letter to MVM alleging that most of the TCNs did not have the required English language capability, MVM retained ALTA, an independent, internationally known language testing company, to test that capability. The test results clearly indicated that the vast majority of TCNs did not have the English language capability required by MVM's contract with 3D. Nonetheless, MVM proposed a remedial plan to the DOS to increase the English language capability of the TCNs and retained people trained to teach English as a Second Language to work with the TCNs. MVM's proposed remedial plan was rejected by the DOS.

MVM, Inc.
1593 Spring Hill Road · Ste. 700 · Vienna · VA · 22182
Telephone (703)790-3138 · Fax (703)790-9546 · VA Lic. # 11-1259

As a result of 3D's failures, MVM suffered grievous damage financially and to its reputation. We incurred significant cost in attempting to determine the extent of the problem caused by 3D and to remedy it. In the end, we were required to return over 200 Peruvians to Peru on very short notice and at a high cost to MVM. I personally spent a number of weeks in Kabul including the entire 2005 Holiday Season.

3D's breach of the contract with MVM resulted in direct damages to MVM in the range of $5 to $6 million. However, in order to move forward to conclude a settlement of this matter, we are prepared to discuss payment by 3D to MVM of the following amounts:

| Description | Amount |
|---|---|
| Cost of transporting Peruvians to Kabul | $665,470.00 |
| Cost of transporting Peruvians from Kabul | 498,640.00 |
| Cost of ALTA on-site language testing | 12,200.00 |
| Cost of ESL People (travel and labor) | 111,489.00 |
| Cost of USIS | 431,941.00 |
| Total | $1,718,941.00 |

We are prepared to discuss with you how you would propose to settle the amounts 3D owes to MVM as a result of its material breach of our contract. Should 3D agree to pay these amount owed, MVM is prepared to enter into a Settlement Agreement with appropriate covenants and releases. If we cannot reach an agreement, MVM will be forced to consider taking whatever action is necessary to recovery the damages it has suffered.

Very truly yours,

Dario O. Marquez, Jr.
President and CEO