IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:06cv00722 (GK) |
| ) | |
| MVM, INC., ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT MVM INC.'S ANSWER AND COUNTERCLAIM

Defendant MVM, Inc. ("MVM"), by counsel and pursuant to this Court's July 19, 2006 Order, files this Answer and Counterclaim ("Answer") to the Complaint ("Complaint") filed by Plaintiff 3D Global Solutions, Inc. ("3D") in this lawsuit.

### ANSWER

For its Answer, MVM states as follows:

### Parties

1. MVM admits that 3D is incorporated in Indiana, and has its principal offices at 12898 Pontell Place, Westfield, Indiana 46074. MVM does not have sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint, and therefore it denies such allegations.

2. MVM admits that it is incorporated under the laws of California. MVM admits that it maintains offices located at 1593 Spring Hill Road, Vienna, Virginia 22182. MVM admits that it holds contracts with the United States Government ("United States"), and that some of

those contracts are for the provision of security guards to locations around the world. MVM denies the remaining allegations of Paragraph 2 of the Complaint.

### Jurisdiction and Venue

3. The allegation in Paragraph 3 of the Complaint is a legal conclusion to which no response is warranted.

4. The allegation in Paragraph 4 of the Complaint is a legal conclusion to which no response is warranted.

5. The allegation in Paragraph 5 of the Complaint is a legal conclusion to which no response is warranted.

### Background Facts

6. MVM admits that it entered into a contract with the United States to provide security guards for the U.S. Embassy in Kabul, Afghanistan. MVM admits that it entered into a contract with 3D dated September 26, 2005 ("Contract") to assist in performing MVM's contract with the United States for security guards to Kabul, Afghanistan. MVM denies that the contract attached to the Complaint as Exhibit 1 is the contract that governs the agreement between MVM and 3D for the security guards for Kabul, Afghanistan. MVM is without sufficient information to form a belief of the remaining allegations in Paragraph 6 of the Complaint, except to admit that 3D did recruit third county nationals ("TCNs") from Peru as security guards for the Kabul embassy, otherwise the remaining allegations of Paragraph 6 are denied.

7. MVM admits that it placed two task orders, effective September 29 and October 4, 2005, against the Contract. MVM denies that the task order dated October 12, 2005 and attached to the Complaint in Exhibit 2 is for the provision of security guards to Kabul,

Afghanistan. MVM states that the documents attached to the Complaint as Exhibit 2 speak for themselves. MVM denies the remaining allegations in Paragraph 7 of the Complaint.

8. MVM denies that the fee schedule attached in Exhibit 3 applies to the TCNs sent to Kabul, Afghanistan because the fee schedule is applicable only to the TCNs sent to Iraq under the October 12, 2005 contract. MVM states that the documents referred to in Paragraph 8 speak for themselves, and denies any remaining allegations in Paragraph 8 of the Complaint.

9. MVM denies that the documents referred to in Paragraph 9 govern the provision of TCNs sent to Kabul, Afghanistan. MVM states that the documents referred to in Paragraph 9 speak for themselves, and denies any remaining allegations in Paragraph 9 of the Complaint.

10. MVM denies that the October 12, 2005 agreement or the October 12, 2005 task order governs the provision of guards to Kabul, Afghanistan. MVM does not have sufficient information to form a belief as to the remaining allegations in Paragraph 10 of the Complaint, and therefore it denies such allegations.

11. MVM states that the document referred to in Paragraph 11 speaks for itself. MVM denies that the data 3D allegedly collected on each TCN was confidential and proprietary in nature. MVM admits that 3D provided MVM with certain basic types of information on each TCN but denies the remaining allegations in Paragraph 11 of the Complaint.

12. MVM denies that the October 12, 2005 contract governs the provision of TCNs to Kabul, Afghanistan. MVM states that the document referred to in Paragraph 12 speaks for itself. MVM does admit that 3D deployed 230 TCNs to Kabul, Afghanistan, but denies the remaining allegations in Paragraph 12 of the Complaint.

13. MVM denies the allegations of Paragraph 13 of the Complaint.

14. There is no Paragraph 14 in the Complaint, and therefore no response is required.

15. MVM denies the allegations in Paragraph 15 of the Complaint.

16. MVM admits that 3D defaulted under the Contract because 3D did not provide TCNs that had the contractually-required level of English proficiency to serve as security guards at the Kabul embassy. MVM denies the remaining allegations of Paragraph 16 of the Complaint.

17. MVM denies the allegations in Paragraph 17 of the Complaint.

18. MVM denies the allegations in Paragraph 18 of the Complaint.

19. MVM denies the allegations in Paragraph 19 of the Complaint.

## COUNT ONE
### (Breach of Contract)

20. MVM restates its responses in Paragraphs 1 through 19 of this Answer as set forth in full.

21. MVM denies the allegations in Paragraph 21 of the Complaint.

22. MVM denies the allegations in Paragraph 22 of the Complaint.

23. MVM denies the allegations in Paragraph 23 of the Complaint.

## COUNT TWO
### (Detrimental Reliance)

24. MVM restates its responses in Paragraphs 1 through 23 of this Answer as set forth in full.

25. MVM denies the allegations in Paragraph 25 of the Complaint.

26. MVM denies the allegations in Paragraph 26 of the Complaint.

27. MVM denies the allegations in Paragraph 27 of the Complaint.

28. MVM denies the allegations in Paragraph 28 of the Complaint.

## COUNT THREE
### (Intentional/Negligent Misrepresentation)

29. MVM restates its responses in Paragraphs 1 through 28 of this Answer as set forth in full.

30. MVM denies the allegations in Paragraph 30 of the Complaint.

31. MVM denies the allegations in Paragraph 31 of the Complaint.

32. MVM denies the allegations in Paragraph 32 of the Complaint.

33. MVM denies the allegations in Paragraph 33 of the Complaint.

34. MVM denies the allegations in Paragraph 34 of the Complaint.

## COUNT FOUR
### (Constructive Fraud)

35. MVM restates its responses in Paragraphs 1 through 34 of this Answer as set forth in full.

36. MVM denies the allegations in Paragraph 36 of the Complaint.

37. MVM denies the allegations in Paragraph 37 of the Complaint.

38. MVM denies the allegations in Paragraph 38 of the Complaint.

39. MVM denies the allegations in Paragraph 39 of the Complaint.

## COUNT FIVE
### (Concealment or Non-Disclosure)

40. MVM restates its responses in Paragraphs 1 through 39 of this Answer as set forth in full.

41. MVM denies the allegations in Paragraph 41 of the Complaint.

42. MVM denies the allegations in Paragraph 42 of the Complaint.

43. MVM denies the allegations in Paragraph 43 of the Complaint.

44. MVM denies the allegations in Paragraph 44 of the Complaint.

45. MVM denies the allegations in Paragraph 45 of the Complaint.

## COUNT SIX
### (Negligent or Intentional Interference with Business Advantage)

46. MVM restates its responses in Paragraphs 1 through 45 of this Answer as set forth in full.

47. MVM denies the allegations in Paragraph 47 of the Complaint.

48. MVM denies the allegations in Paragraph 48 of the Complaint.

49. MVM denies the allegations in Paragraph 49 of the Complaint.

## COUNT SEVEN
### (Unjust Enrichment)

50. MVM restates its responses in Paragraphs 1 through 49 of this Answer as set forth in full.

51. MVM denies the allegations in Paragraph 51 of the Complaint.

52. MVM denies the allegations in Paragraph 52 of the Complaint.

53. MVM denies the allegations in Paragraph 53 of the Complaint.

## COUNT EIGHT
### (Constructive Conversion)

54. MVM restates its responses in Paragraphs 1 through 53 of this Answer as set forth in full.

55. MVM admits that MVM properly obtained possession of the packages containing the TCNs' information and data. MVM denies the remaining allegations in Paragraph 55 of the Complaint.

56. MVM denies the allegations in Paragraph 56 of the Complaint.

57. MVM denies the allegations in Paragraph 57 of the Complaint.

58. MVM denies the allegations in Paragraph 58 of the Complaint.

59.     MVM denies all remaining allegations not expressly admitted in this Answer.

## COUNTERCLAIM

For its Counterclaim, MVM states as follows:

### The Afghanistan Contract

1.      In July 2005, the U.S. Department of State awarded MVM a contract for the provision of security guards to the U.S. Embassy in Kabul, Afghanistan for $23.7 million.

2.      MVM and 3D entered into a contract dated September 26, 2005 ("Afghanistan Contract," attached as **Exhibit 1**.). Under the Afghanistan Contract, 3D agreed to supply MVM with third-party national security personnel ("TCNs") in support of MVM's contract with the U.S. Department of State.

3.      The Afghanistan Contract required 3D to provide TCNs and to certify that the TCNs spoke English at a specified proficiency level. MVM explained the English-speaking requirements in detail to 3D before 3D executed the Afghanistan Contract. The English-speaking requirements are clearly stated in detail in the Afghanistan Contract.

4.      The Afghanistan Contract permitted MVM to immediately terminate the Afghanistan Contract by written notice to 3D in the event that the U.S. Department of State terminated its contract with MVM for the provision of security guards to the U.S. Embassy in Kabul, Afghanistan.

5.      MVM issued two task orders to 3D under the Afghanistan Contract. The first task order (effective September 29, 2005) requested 65 TCN Guards for deployment to Kabul, Afghanistan, and the second task order (effective October 4, 2005) requested a total of 165 TCNs (comprised of 145 TCN Guards and 20 TCN Senior Guards) for deployment to Kabul,

Afghanistan. Thus, MVM requested a total of 230 TCNs for deployment to Kabul, Afghanistan under the Afghanistan Contract.

### 3D's Failure to Provide English-Speaking Guards to Kabul, Afghanistan

6. Pursuant to the Afghanistan Contract and the two task orders placed against the Afghanistan Contract, 3D recruited from Peru and deployed 230 TCNs to Kabul, Afghanistan.

7. On December 2, 2005, the U.S. Department of State informed MVM that the guards sent by 3D to Kabul did not meet the minimum language level requirements, despite the fact that 3D certified language proficiency for each TCN. An independent language-testing company determined that the TCNs failed to speak English at the proficiency levels required by the Afghanistan Contract.

### The Termination of the Afghanistan Contract

8. On December 21, 2005, the State Department terminated for default its contract with MVM because the TCNs could not speak English at the proficiency level required by the State Department, which was the same proficiency level required by MVM in the Afghanistan Contract.

9. On December 22, 2005, MVM ordered 3D to suspend its recruiting and pre-deployment efforts under the Afghanistan Contract.

10. On December 23, 2005, MVM terminated the Afghanistan Contract because 3D defaulted in its obligation to provide TCNs who were able to speak English at the level required by the Afghanistan Contract.

11. 3D's failure to provide TCNs who were able to speak English at the level required by the Afghanistan Contract directly caused the State Department to terminate MVM's contract for the provision of security personnel to the U.S. Embassy in Kabul, Afghanistan.

12. The State Department's termination of MVM's contract caused at least $2,000,000 in damages to MVM.

## COUNT ONE
### (Breach of September 26, 2005 Contract)

13. MVM restates its allegations in Paragraphs 1 through 12 of this Counterclaim as set forth in full.

14. MVM and 3D entered into a valid, enforceable contract dated September 26, 2005 (referred to in this Counterclaim as the "Afghanistan Contract")

15. The Afghanistan Contract covered 3D's deployment of TCNs to the U.S. Embassy in Kabul, Afghanistan.

16. The Afghanistan Contract required 3D to recruit and deploy TCNs with specific English proficiency levels. This requirement was a material term of the Afghanistan Contract.

17. 3D breached the Afghanistan Contract by failing to provide TCNs with the required English proficiency levels.

18. As a result of 3D's breach of the Afghanistan Contract, the State Department terminated its contract with MVM for the provision of security personnel to the U.S. Embassy in Kabul, Afghanistan.

19. MVM sustained at least $2,000,000 in damages as a result of the State Department's termination which was proximately and actually caused by 3D's breach of the Afghanistan Contract.

WHEREFORE, Defendant and Counterclaim Plaintiff MVM, Inc. demands judgment against Plaintiff and Counterclaim Defendant 3D Global Solutions, Inc. for damages in the amount of $2,000,000.00, plus interest and costs, and plus any other relief as justice so requires.

                                        Respectfully Submitted,

                                        **MVM, INC.**

                                        *By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA  22101-3892
Tel:  (703) 712-5000
Fax:  (703) 712-5050

*/s/ Sean F. Murphy*
Sean F. Murphy (D.C. Bar No. 457399)
Anand V. Ramana (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

    I hereby certify that on this 10th day of August, 2006, I served a true and correct copy of the foregoing pleading via first-class U.S. mail and electronic mail on:

> Athan T. Tsimpedes, Esq.
> Law Offices of Athan T. Tsimpedes
> 7th Floor
> 1420 New York Avenue, N.W.
> Washington, D.C. 20005
> atsimpedes@comcast.net
> *Counsel for 3D Global Solutions, Inc.*

_____
Anand V. Ramana

\4095934.2