IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., <br><br>*Plaintiff,* <br><br> v. <br><br> MVM, INC., <br><br> *Defendant.* | Case No. 1:06cv00722 (GK) <br> <u>Next Deadline:</u>  Plaintiff's Surreply to Mot. for Summ. J. (December 26, 2006) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant MVM, Inc. ("MVM"), by counsel and pursuant to this Court's December 4, 2006 Order, files this Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss.

## INTRODUCTION

In 2005, the United States Department of State ("State Department") contracted with MVM, whereby MVM would provide security guard services for the U.S. Embassy in Kabul, Afghanistan. (Am. Compl. ¶ 6.) MVM in turn contracted with Plaintiff 3D Global Solutions, Inc. ("3D") for help in fulfilling its obligations under that government contract. (*Id.*) In particular, MVM's contract with 3D ("September 26, 2005 Contract") obligated 3D to find, recruit, and send to Kabul, security guards ("third country nationals" or "TCNs") who spoke English at the proficiency levels required by the State Department. (*Id.*) 3D never satisfied this fundamental contractual obligation. (*See* Am. Compl. ¶ 16.)

Through task orders, 3D found, recruited, and deployed 230 TCNs to Afghanistan. (Am. Compl. ¶ 11.) The overwhelming majority of the TCNs did not speak English at the required

level. (*See* Am. Compl. ¶ 16, Ex. 4 ("MVM retained ALTA, an independent, internationally known language testing company, to test [the TCNs' capability]. The test results clearly indicated that the vast majority of TCNs did not have the English language capability required by MVM's contract with 3D.") As a direct result, the State Department terminated its contract with MVM, causing a multimillion dollar loss for MVM. (*See* Am. Compl. at Ex. 4.)

Despite making factual allegations in its Amended Complaint concerning the September 26, 2005 Contract, 3D has attached, and is suing MVM on, an unrelated contract for the provision of security guards to Iraq – but not to Afghanistan ("October 12, 2005 Contract"). The October 12, 2005 Contract is therefore not the basis for 3D's factual claims. Accordingly, MVM separately seeks summary judgment on 3D's breach of contract claim in Count One since the October 12, 2005 Contract does not cover the provision of security guards to Kabul.

A further deficiency in the 3D Amended Complaint is the attempt to transform this relatively straightforward contract dispute into a series of tort claims that, in any event, fail to state valid causes of action against MVM. It is the fatal deficiencies in these claims that are the subject of this Motion to Dismiss. First, the law of Virginia – the body of law applicable to these claims – does not recognize claims for "promissory estoppel," "concealment or non-disclosure," "negligent interference with a business advantage," or "conversion" of intangible property. (Am. Compl. Counts Two, Five, Six, and Eight.)

Second, the fraud allegations in Counts Three and Four do not satisfy the requirements of Virginia law and Federal Rule 9(b); the Amended Complaint does not identify *any* act or statement or material omission that gives rise to a claim for either actual or constructive fraud.

Third, 3D's claim for intentional interference with a business advantage (Count Six) is only permissible if 3D identifies specific, existing or prospective 3D business expectancies with

2

which MVM allegedly interfered. 3D fails to satisfy this relatively straightforward pleading requirement because it alleges only generalized possibilities of expectancies.

Fourth, Virginia law bars the claim for unjust enrichment (Count Seven) when a contract exists that expressly governs all rights and obligations between the parties. Here, it is undisputed that such a contract exists. Accordingly, its existence bars the 3D unjust enrichment claim.

## ARGUMENT

### I. STANDARD OF REVIEW

A district court should grant a motion to dismiss "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A motion to dismiss tests not whether the plaintiff will prevail on the merits, but instead whether the plaintiff has properly stated a claim. *See* Fed. R. Civ. P. 12(b)(6). The factual allegations of the complaint must be presumed true and construed in favor of the plaintiff. *Shear v. Nat'l Rifle Ass'n of America,* 606 F.2d 1251, 1253 (D.C. Cir.1979).

### II. VIRGINIA LAW GOVERNS THIS CASE; DISTRICT OF COLUMBIA LAW DOES NOT.

In a diversity action, a federal court must apply the choice-of-law principles of the state or jurisdiction in which it sits to determine governing substantive law. *Ekstrom v. Value Health, Inc.,* 68 F.3d 1391, 1394 (D.C. Cir. 1995); *Bledsoe v. Crowley,* 849 F.2d 639, 641 (D.C. Cir. 1988). Ordinarily, "[t]he law of the forum is presumed to apply unless it is demonstrated that a foreign jurisdiction has a greater interest in the controversy than does the District." *Doe v. Roe,* 841 F. Supp. 444, 446 (D.D.C. 1994).

The District of Columbia employs a modified "governmental interest analysis," under which the court must evaluate the governmental policies underlying the applicable laws and then

3

determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case. *Long v. Sears Roebuck & Co., et al.*, 877 F. Supp. 8, 10 (D.D.C. 1995); *Doe v. Roe*, 841 F. Supp. at 446. The state with the "most significant relationship" should be the state whose policy would be advanced by the application of the law. *In re Air Crash Disaster at Washington, D.C.*, 559 F. Supp. 333, 342 (D.D.C. 1983).

Four factors guide a District of Columbia federal court in its choice-of-law decisions relating to tortious conduct: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship between the parties is centered. *Jaffe v. Pallotta Teamworks*, 374 F.3d 1223, 1227 (D.C. Cir. 2004); *ABB Daimler-Benz Transp. (North America), Inc. v. Nat'l R.R. Passenger Corp.*, 14 F. Supp. 2d 75, 88 (D.D.C. 1998) (Kessler, J.); *In re Air Crash Disaster*, 559 F. Supp. at 342; *Doe v. Roe*, 841 F. Supp. at 446; *Long*, F. Supp. at 11; *see also* Restatement (Second) of Conflict of Laws § 145. Application of these factors to this case shows that the laws of Virginia apply, and that District of Columbia law is not applicable.

A.   **Virginia Law Applies**

Virginia has the most significant relationship to this litigation. MVM is a large federal government contractor headquartered in Vienna, Virginia. (Am. Compl. ¶ 2.) First, the contract attached to the Amended Complaint expressly states that is "shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia." (Ex. 1 at ¶ J.) The contract also indicates that the MVM point of contact for 3D's deliverables is located in Virginia (*Id.* at ¶ B6.). Furthermore, the contract requires that all notices to MVM to be sent to its Vienna, Virginia offices (*Id.* at ¶ I.). In addition, at least one of the task orders attached to the Amended

4

Complaint shows that it was faxed from MVM's Virginia number. (Ex. 2.) The correspondence from MVM's President and CEO, Dario O. Marquez, Jr., from MVM originated at its Virginia office (Ex. 4), and 3D delivered all of its invoices to MVM's Vienna, Virginia address (Ex. 5). Finally, the non-disclosure agreement attached to the Amended Complaint provides that it is governed by Virginia law, and that the parties consent to non-exclusive jurisdiction of the U.S. District Court for the Eastern District of Virginia and "any Commonwealth court sitting within such Eastern District of Virginia." (Ex. 6 at ¶ 9.)

It is clear from these alleged facts, all of which are found in 3D's Amended Complaint or included in the attached contract, that Virginia is clearly the center of the business relationship between MVM and 3D. Furthermore, though 3D is based in Indiana (*see* Am. Compl. ¶ 1.), any alleged wrongdoing on the part of MVM must emanate from Virginia. Under these circumstances, there is no basis for invoking the laws of Indiana. Accordingly, this Court should apply Virginia law to all causes of action alleged in the Amended Complaint.

**B.    District of Columbia Law Does Not Apply**

In its Opposition to MVM's first motion to dismiss filed on July 20, 2006 ("3D's Opposition"), 3D attempts to argue that the laws of the District of Columbia apply to the facts of this case. (3D's Opposition at 2-5.) 3D apparently does not dispute the choice of law analysis the Court must employ to determine whether the laws of Virginia govern 3D's tort claims.[1] (*See* 3D's Opposition at 3.) 3D, however, wrongly suggested that the outcome of the choice of law analysis leads to the application of the laws of the District of Columbia. (*Id.*)

---

[1]    Despite 3D's comment that "Defendant correctly states the standard for the choice of law analysis in the District of Columbia," 3D wrongly cites *Virginia* case law for the proposition that "the place of injury supplies the governing law in tort actions." (*See* 3D's Opposition at 3.) When there is a true conflict between the choice of law applicable in the District of Columbia and the law which is applicable in Virginia, the District employs a governmental interest analysis, while Virginia applies the *lex loci delicti* approach. *See Raflo v. United States*, 157 F. Supp. 2d 1, 8 (D.D.C. 2001).

5

Notably, 3D does not address the many facts *in its own Complaint and Amended Complaint* that support MVM's argument that Virginia law applies in this case. (*See* 3D's Opposition at 2-5.) Specifically, 3D failed to address why the District of Columbia has the "most significant relationship" to this litigation, despite the fact that it alleged that (1) 3D is an Indiana corporation with no office in the District (Compl. ¶ 1; Am. Compl. ¶ 1); (2) MVM is based in Vienna, Virginia (Compl. ¶ 2; Am. Compl. ¶ 2); (3) that MVM's point of contact for the deliverables under the 3D-MVM contract is in Virginia (Compl. Ex. 1 at ¶ B6; Am. Compl. Ex. 1 at ¶ B6); (4) that all notices be sent to MVM in Virginia (Compl. Ex. 1 at ¶ I; Am. Compl. Ex. 1 at ¶ I); (5) that Virginia law governs the 3D-MVM contract (Compl. Ex. 1 at ¶ J; Am. Compl. Ex. 1 at ¶ J), (6) that MVM received and delivered correspondence and invoices regarding the contract at its Virginia office (Compl. Exs. 2, 4, and 5; Am. Compl. Exs. 2, 4, and 5); and (7) that the non-disclosure agreement attached to the Complaint is also governed by Virginia law (Compl. Ex. 6 at ¶ 9; Am. Compl. Ex. 6 at ¶ 9). 3D's failure to controvert any of these facts is, at best, an implied concession that Virginia law applies.

Instead of directly discussing the many facts supporting MVM's argument that Virginia law applies, 3D, through an affidavit from 3D President Michael Dodd, presented two factual arguments to support its claim that D.C. law applies. Neither of these factual arguments appear in (or can be reasonably inferred from) the Complaint or the Amended Complaint. (*See generally* Compl.; Am. Compl.) First, 3D asserted that MVM converted (and benefited from the conversion of) 3D's administrative packages in the District of Columbia. (3D's Opposition at 4; Dodd Aff. ¶¶ 5, 8.) Second, 3D alleges that the 3D-MVM contract "was based on the prime contract between MVM and the Federal Government located in the District of Columbia." (3D's Opposition at 4.)

Neither of these factual arguments support 3D's conclusion that D.C. law applies. As noted above, MVM operates in Virginia. (*See* Compl. ¶ 1, Ex. 1; Am. Compl. ¶ 1, Ex. 1.) MVM's conduct, therefore, originates in Virginia and any benefit gained is in Virginia. Virginia is the focal point of MVM's conduct at issue in this case. Second, the contract between MVM and the U.S. Government is not relevant not at issue in this lawsuit. The allegations in the Amended Complaint are based upon a contract between 3D and MVM (*see* Compl. ¶¶ 6-7; Am. Compl. ¶¶ 6-7), and other alleged tortious conduct.

In short, 3D did not contest MVM's broad showing that Virginia law applies, and it failed to provide any facts supporting why D.C. law should apply instead. Accordingly, District of Columbia law does not apply, and this Court should apply Virginia law in this case.

### III.   COUNTS TWO THROUGH EIGHT OF THE AMENDED COMPLAINT FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Each of Counts Two, Three, Four, Five, Six, Seven, and Eight fails to state a claim upon which relief can be granted. Four of those claims (promissory estoppel, concealment or non-disclosure, unjust enrichment, and conversion) should be dismissed because they assert causes of action not recognized under Virginia law. Another three of those claims (intentional misrepresentation, constructive fraud, and negligent or intentional interference with business advantage) should be dismissed because the Amended Complaint fails to allege one or more elements necessary to state such a claim.

#### A.   Virginia Law Does Not Recognize a Claim for Promissory Estoppel.

Count Two of 3D's Amended Complaint asserts a cause of action for "Promissory Estoppel" (Am. Compl. ¶¶ 30-34.) The Virginia Supreme Court expressly declined to recognize a cause of action for promissory estoppel in 1997. *See Ward's Equipment, Inc. v. New Holland North America, Inc.*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997); *W.J. Schafer Associates,*

*Inc. v. Cordant, Inc.*, 254 Va. 514, 493 S.E.2d 512 (1997). Thus, even when construing it in the light most favorable to 3D, Count Two asserts a cause of action that Virginia law clearly and expressly does not recognize.

Even assuming *arguendo* that District of Columbia law applies, a plaintiff cannot bring a cause of action for promissory estoppel in the District when a legally sufficient contract exists. *See Building Services v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95-96 (D.D.C. 2004). Neither party disputes of a legally sufficient contract exists in this case; the only dispute involves which of two contracts apply. (*See* 3D's Opposition to MVM's Motion for Partial Summary Judgment at 2, ¶¶ 1-2.) Since both 3D and MVM acknowledge that a legally sufficient contract exists, this claim is barred regardless of whether the laws of Virginia or the District apply. For this reason, this Court should dismiss this count with prejudice.

**B.  3D Does Not State a Claim For Intentional Misrepresentation.**

Count Three of 3D's Amended Complaint alleges a cause of action for "Intentional Misrepresentation." (Am. Compl. ¶¶ 35-40.) In Virginia, intentional misrepresentation is known as fraud. *See Goff v. J. Sargeant Reynolds Community College*, 2004 WL 2093444 at *2 (Va. Cir. Ct. 2004). 3D has not validly pled a claim for fraud under Virginia law.

In Virginia, a cause of action for actual fraud arises when there exists (1) a false representation (2) of a material fact, (3) knowingly or intentionally made (4) with the intent to mislead another person, (5) which that person relied upon (6) with the result that he was damaged by it. *Davis v. Marshall Homes*, 265 Va. 159 (2003).

3D has not pled an actual fraud claim for two substantive reasons. First, 3D fails to allege – or even identify – the material fact that MVM falsely represented. (*See* Am. Compl. ¶¶ 35-40.) That alone is enough to warrant dismissal of this claim under Virginia law. *Lambert v.*

*Downtown Garage, Inc.*, 262 Va. 707, 711, 553 S.E.2d 714, 716 (2001) ("a misrepresentation of fact is a necessary element of proof to [a] claim for common law fraud").

Second, 3D fails to allege that MVM knowingly or intentionally made the "false statement." (*Id.*) Instead, 3D merely alleges that MVM "intended that Plaintiff to [*sic*] act or rely upon the . . . false statements." (Am. Compl. ¶ 37.) That allegation does not speak to the third element (intent to falsely represent a material fact). Furthermore, 3D's allegations indicate that MVM did *not* know that it was making, or intended to make, a false statement: "[d]efendant knew or should have known that the Plaintiff would probably rely upon the . . . false statements which, <u>if erroneous</u>[,] would cause damage to Plaintiff." (Am. Compl. ¶ 38 (emphasis added).)

3D also fails to comply with Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake ... shall be stated with particularity." Fed. R. Civ. P. 9(b); *see also Zandford v. National Ass'n of Securities Dealers, Inc.*, 19 F. Supp.2d 4, 9 (D.D.C. 1998) (Kessler, J.). The "circumstances" that must be pled include the "'time, place and content of the false misrepresentations, the fact misrepresented, and what was retained or given up as a consequence of the fraud.'" *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C. Cir.1994) (*quoting United States v. Cannon*, 642 F.2d 1373, 1385 (D.C. Cir.1981) (citation omitted), *cert denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)); *see also Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C.Cir.1996); *Hite v. Leeds Weld Equity Partners, IV, LP*, 2006 WL 1017024 at *4 (D.D.C. 2006).

Here, 3D has not pled with particularity any of the circumstances that Rule 9(b) or its interpretive case law mandates. *See Zandford*, 19 F. Supp.2d at 9. The Amended Complaint does not reference the time, place, or content of the allegedly "false statements," material facts

allegedly misrepresented, or what MVM procured as a result of the actual fraud. (*See* Am. Compl. ¶¶ 35-40.) In short, the specific allegations of actual fraud that 3D is required to make are absent. Accordingly, 3D fails to state a claim for actual fraud because of these deficiencies.

### C.  Count Four (Constructive Fraud) Has the Same Deficiencies As Count Three.

3D also fails to properly plead a claim for constructive fraud in Count Four. Virginia courts recognize a cause of action for constructive fraud only when a party alleges (1) a false representation (2) of a material fact (3) innocently or negligently made, (4) which the party relied upon, and (5) the injured party was damaged as a result of his reliance upon the misrepresentation. *See State Farm Mut. Auto. Ins. Co. v. Remley*, 270 Va. 209, 220, 618 S.E.2d 316, 321 (2005).

3D has not validly pled constructive fraud because, as noted above, 3D completely fails to allege the material fact that MVM allegedly falsely represented. (*See* Am. Compl. ¶¶ 41-45.) In addition, and similar to its pleading deficiencies for actual fraud, 3D has not alleged with particularity any of the circumstances that Rule 9(b) or its interpretive case law requires. *See Zandford*, 19 F. Supp.2d at 9. There are no allusions to the time, place, or content of the allegedly "false statements," material facts allegedly misrepresented, or what MVM procured as a result of the fraud. (*See* Am. Compl. ¶¶ 41-45.) These deficiencies also invalidate 3D's constructive fraud claim in Count Four.

### D.  Virginia Does Not Recognize a Cause of Action for Concealment or Non-Disclosure.

Count Five of 3D's Amended Complaint alleges a cause of action for "Concealment or Non-Disclosure." (Compl. ¶¶ 46-51.) MVM could find no Virginia authority that recognizes "concealment or non-disclosure." To the extent that Count Five is an attempt to allege a type of

fraud, it not only duplicates Counts Three and Four, but it also contains the same substantive deficiencies that similarly mandate this Count's dismissal. Notably, 3D recognized, but did not oppose, MVM's initial challenge to this count in its Opposition. (*See* 3D's Opposition at 8 n.4.). Since 3D appears to concede to MVM's challenge to this count, it should be dismissed.

    E.    **Virginia Law Does Not Recognize Negligent Interference with a Business Advantage, and 3D Fails to Identify any Contract or Business Expectancy**

Count Six is entitled "Negligent or Intentional Interference with Business Advantage." (Compl. ¶¶ 52-56.)

No cause of action for negligent interference with a business advantage exists in Virginia. *See McDonough v. Kellogg*, 295 F. Supp. 594, 598 (W.D. Va. 1969) ("It is generally recognized that negligent interference with performance of a contract does not create tort liability"). Accordingly, 3D's allegations of negligent interference do not state a claim under Virginia law.

Virginia, however, does recognize a cause of action for intentional tortious interference. The elements this claim are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *See Chaves v. Johnson*, 230 Va. 112, 120 (1985).

In its Amended Complaint, 3D fails to allege element (1). Specifically, 3D does not identify a specific business relationship or prospective business relationship that is the target of the alleged interference. (*See* Am. Compl. ¶¶ 52-56.) Instead, 3D merely alleges a general "business expectation to sell, transfer or assign administrative packages for TCNs." (Am. Compl. ¶ 53.)

In its Opposition, 3D did not demonstrate how the Complaint (and since it remains

11

unchanged, the Amended Complaint) complied with the Virginia law requirement that it specifically allege the contract or business expectancy that is the target of the impermissible interference. *See Chaves v. Johnson*, 230 Va. 112, 120 (1985).

Instead, 3D explained, citing Dodd's July 19, 2006 affidavit as support, that MVM interfered with a "relationship between the TCN's [*sic*] and 3D" by selling the administrative packages to a third party. (3D's Opposition at 8-9.) This conclusory allegation of interference with over 230 relationships is insufficient. Each individual relationship must be specifically identified as well as the corresponding acts of interference. *See Chaves*, 230 Va. at 120. The failure to do so mandates dismissal of these claims in Count Six.

There is another independent basis to dismiss this count. Though 3D claims an employment relationship with these TCNs, the October 12, 2005 contract expressly provides that "[t]he TCNs supplied by 3D will, at MVM's option, be Independent Contractors ("ICs") or direct employees to MVM." (*See* Am. Compl. Ex. 1, ¶ A.) These allegations cannot bolster the deficiencies in Count Six since the factual allegations in the Amended Complaint contradict 3D's own exhibits.

Federal case law in this District provides that this Court need not accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). The unambiguous language of the October 12, 2005 contract shows that the employment relationships of the TCNs are with MVM, and not 3D. This directly contradicts 3D's convenient factual allegation that a contract or business relationship between it and the TCNs exist. (*See* 3D's Opposition at 8-9.) Because the October 12, 2005 contract, which is attached to 3D's Amended Complaint, states that MVM – and not 3D – holds the employment relationship (if any) with the TCNs, 3D still has yet not identified a

valid contract or business expectancy with which MVM has allegedly interfered. Consequently, 3D fails to state a claim for tortious interference in Count Six, and this Court should dismiss this claim with prejudice.

### F. 3D Cannot Maintain a Claim For Unjust Enrichment Because an Express Contract Governs the Obligations At Issue

Count Seven is an unjust enrichment claim. (Am. Compl. ¶¶ 50-53 [*sic*].) In Virginia, a party cannot obtain unjust enrichment or *quantum meruit* relief from another if it entered into a contract that expressly delineates the obligations the two parties will have on the subject in question. *See, e.g., Ellis & Myers Lumber Co. v. Hubbard,* 123 Va. 481, 96 S.E. 754, 760 (1918) ("It is only in the absence of an express or of an enforceable contract between parties that the law ... will, from circumstances, imply a contract between them"); *Vollmar v. CSX Transportation, Inc.,* 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("'There can be no recovery in *quantum meruit* where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms'") (*quoting In re Stevenson Assoc.,* 777 F.2d 415, 421-22 (8th Cir.1985)), *aff'd,* 898 F.2d 413 (4th Cir. 1990). *See also Acorn Structures, Inc. v. Swantz,* 846 F.2d 923, 926 (4th Cir. 1988).

In its Amended Complaint, 3D alleges and attaches a written contract that it claims expressly governs all rights and obligations between it and MVM with regard to the supply of TCNs. (Am. Compl. ¶ 6.; Ex. 1.) Virginia law bars 3D from simultaneously alleging a claim for unjust enrichment/*quantum meruit* when an express written contract governs all rights and obligations of the parties. *Vollmar,* 705 F. Supp. at 1176. That substantive bar dictates a dismissal of 3D's Count Seven.

### G. Virginia Law Does Not Recognize a Claim for Conversion of Intangible Property.

In Count Eight of the Amended Complaint, 3D alleges a cause of action for conversion. (Am. Compl. ¶¶ 54-57 [*sic*].) 3D's claim for conversion fails because it is premised upon the alleged conversion of <u>the information</u> contained in the administrative packages, and not the packages themselves. (*See* Am. Compl. ¶¶ 10 ("Global provided the proprietary information..."), 17 ("MVM, through its agents, wrongfully and intentionally converted the confidential and proprietary information...")).

In Virginia, a cause of action for conversion applies only to tangible property; no claims are recognized for conversion of intangible property. *United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299, 305-306, 440 S.E.2d 902, 906 (1994). Because the information contained in the administrative packages is not tangible property, a cause of action for conversion cannot arise. *See id.* Significantly, District of Columbia law also does not recognize a claim for conversion of intangible property. *See Equity Group, Ltd. V. PaineWebber, Inc.*, 48 F.3d 1285, 1286 (D.C. Cir. 1995) (declining to extend tort of conversion to encompass intangible information "customarily merged in, or identified with some document"). Thus, 3D fails to state a claim under Virginia or D.C. law.

14

## CONCLUSION

For the foregoing reasons, this Court should dismiss with prejudice Counts Two, Three, Four, Five, Six, Seven, and Eight of 3D's Amended Complaint.

**ORAL ARGUMENT REQUESTED**

Dated: December 21, 2006                    Respectfully Submitted,

                                            **MVM, INC.**

                                            By Counsel

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA 22101-3892
Tel: (703) 712-5000
Fax: (703) 712-5050

By: _/s/ Sean F. Murphy_
Sean F. Murphy, Esq. (D.C. Bar No. 457599)
Anand V. Ramana, Esq. (D.C. Bar No. 489478)

15

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December, 2006, I served a true and correct copy of the foregoing document via first-class U.S. mail and electronic mail on:

>Athan T. Tsimpedes, Esq.
>Law Offices of Athan T. Tsimpedes
>7th Floor
>1420 New York Avenue, N.W.
>Washington, D.C. 20005
>*Counsel for Plaintiff*
>
>Douglas B. McFadden, Esq.
>McFadden & Shoreman, LLC
>1420 New York Avenue, N.W.
>Suite 700
>Washington, DC  20005
>*Counsel for Plaintiff*

_____
Anand V. Ramana