UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC. )<br>)<br>)<br>     Plaintiff )<br>v. )<br>)<br>MVM, INC. )<br>)<br>     Defendant )<br>_____) | Civil Action No. 1:06-cv-722(GK) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT MVM'S SECOND MOTION TO DISMISS**

**BACKGROUND**

Plaintiff 3D Global Solutions, Inc. (hereinafter "3D") executed an agreement with MVM, Inc, (hereinafter "MVM") whereby 3D would recruit third country nationals (hereinafter "TCN's") from Lima, Peru for deployment to Kabul Afghanistan. Initially, 3D and MVM executed an agreement on September 26, 2005. 3D provided 230 TCN's from Lima Peru who performed services in Kabul Afghanistan in support of MVM's prime contract with the U.S. Department of State. To this date, MVM has failed to compensate 3D for its services and has otherwise converted tangible proprietary information-administrative packages-that were located in the District of Columbia for an unlawful gain to 3D's competitors.

**STANDARD OF REVIEW**

In ruling on a motion to dismiss, courts must accept as true all material allegations

of the complaint and construe the complaint in favor of the complaining party. *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 109 (1979); *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Conley v. Gibson*, 355 U.S. 41, 48 (1957); *Atchinson v. District of Columbia*, 73 F.3d 418, 422 (D.C. Cir. 1996); *United States v. BCCI Holdings (Luxemberg), S.A.*, 3 F. Supp. 2d 31, 35 (D.D.C. 1998). The allegations of the complaint should be construed broadly and liberally in the plaintiffs' favor. Wright & Miller, Federal Practice & Procedure §1350, p. 551; *see also Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). It is well-established that a complaint should not be dismissed for failure to state a claim unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 46 (1957).

The Federal Rules of Civil Procedure require that if, on a motion to dismiss for failure to state a claim, the movant submits matters outside the pleadings which are not excluded by the court, the motion must be treated as one for summary judgment and disposed of in accordance with Rule 56. Fed. R. Civ. P. 12(b). Defendant's motion requires consideration of matters outside the pleadings and should be treated as a motion for summary judgment.

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). A fact is "material" if it might affect the outcome of the action under the governing law. *Anderson v. Liberty Lobby, Inc.*

2

477 U.S. 242 (1986) . The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)

In determining whether the movant has met this burden, a court must consider all factual inferences in the light most favorable to the non—moving party. *McKinney v. Dole*, 765 F.2d 1129, 1135 (D.C. Cir. 1985); see also *Anderson*, 477 U.S. at 255. Once the moving party makes its initial showing, however, the nonmoving party must demonstrate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *McKinney*, 765 F.2d at 1135. Accordingly, the nonmoving party must provide evidence that would permit a reasonable jury to find in his or her favor. *Liberty Lobby*, 477 U.S. at 255—56. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." See *Anderson*, 477 U.S. at 249—50 (citations omitted)


**ARGUMENT**

CHOICE OF LAW GOVERNMENTAL INTEREST ANALYSIS FAVORS APPLYING THE LAWS OF THE DISTRICT OF COLUMBIA.

Defendant correctly states the standard for the choice of law- government interest analysis in the District of Columbia. However, MVM's analysis of the standard is riddled with inaccuracies. Defendant's motion assumes that Virginia law applies and seeks a dismissal for failing to state causes of action under Virginia law. Defendant's reliance that Virginia law applies is misplaced and fails to recognize the District of Columbia is central to the parties relationship. As such, this court should deny MVM's motion to

dismiss in its entirety.

In diversity cases, the court looks "to the District of Columbia for the applicable choice of law principles." *Gray v. American Express Co.*, 743 F.2d 10, 16 (D.C. Cir. 1984); *Godbey v. FrankE. Basil Inc.*, 603 F. Supp. 775, 776-77 (D.D.C. 1985) Under District of Columbia conflicts law, a court must apply the law of the state that has the "most significant relationship" to the parties and the transaction. *See Nationwide Mut. Ins. Co. v. Richardson*, 270 F.3d 948, 953 (D.C. Cir. 200 1); *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985). The aim of the analysis is to determine which jurisdiction's policies would be furthered by resolving the underlying dispute pursuant to its law. See *Hercules & Co., 566 A.2d at 41 n.18.*

Regarding interpretation of a contract, the District of Columbia determines the state with the "most significant relationship" to the dispute using the analysis outlined in § 188 of the Restatement (Second) of Conflict of Laws. *See Clayman v. Goodman Properties, Inc.*, 518 F.2d 1026, 1030 n.22 (D.C. Cir. 1973); *see also Century International Arms, Ltd v. Federal State Unitary Enterprise State Corporation*, 172 F. Supp. 2d 79, 89 (D.D.C. 2001); *Koro Co. v. Bristol-Myers Co.*, 568 F. Supp. 280, 286 (D.D.C. 1983); *Legg, Mason & Co. v. Mackall & Coe, Inc.*, 351 F. Supp. 1367, 1370 n.2 (D.D.C. 1972); *Eli Lilly & Co.*, 764 F.2d at 882; *Owen v. Owen*, 427 A.2d 933, 937 (D.C. 1981).

Five factors influence the determination: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance of the contract, (4) the location of the subject matter of the contract and (5) the place of incorporation and the place of business of the parties. See *Koro Co., 568 F. Supp. at 286; Restatement (Second)*

4

*of Conflict of Laws § 188(2)(1971); see also In re Parkwood Inc., 461 F.2d 158, 172 n.28 (D.C. Cir. 1971).*

With respect to claims of tort or injury, the District applies the analysis outlined in § 145 of the Restatement. *See Bryson v. Gere, 268 F. Supp. 2d 46, 55 (D.D.C. 2003).* Considerations include: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of business of the parties; and (4) the place where the relationship is centered. *Id.; Restatement (Second) of Conflict of Laws § 145.*

The prime contract that forms the subject matter of the contract between the parties, MVM's defense that the State Department terminated the prime contract and basis of the counterclaim filed by Defendant is centralized in the District of Columbia. The State Department is located in the District of Columbia. The subject matter of the parties contract was performed primarily in Lima Peru. (See attached as Ex. 1- Am. Compl. Par. 11, 16-25; attached as Ex. 2-Aff. Michael Dodd; attached as Ex. 3 -Sept 26, 2005 contract Par. A). The TCN's performed security in Kabul Afghanistan and not in Virginia. Therefore, at the very least the District of Columbia having the substantial relationship among the parties, should apply its law in this matter.

The wrongful acts of Defendant MVM occurred in the District of Columbia. (See Am. Compl. Par. 11, 16-25; Aff- Michael Dodd). Defendant MVM wrongfully converted 3D's property- administrative packages located in the District of Columbia for financial gain. (Id). The contract between 3D and MVM was based on the prime contract between MVM and the Federal Government[1] located in the District of Columbia. (Id.; Also See

---

[1] In this motion Federal Government refers to Defendant's references the U.S. Department of State and a Federal agency Joint Strike Command (See attached as Ex. 4- Robert Rubin Affid)

5

Affid. Robert Rubin, par. 2, 4 and 6).  Defendant's argument that the Federal Government terminated its agreement based on 3D's alleged failure to provide adequate TCN's occurred in the District of Columbia.  (Id.)  Defendant MVM wrongfully benefited by converting 3D's work product- administrative packages for the TCN's that were located in the District of Columbia. (Compl. Par 11, 16-25; Affid. Michael Dodd).  MVM's defense that the Federal Government terminated its agreement resulting in losses of two million dollars occurred in the District of Columbia where the Federal Government is located. (Id.; Affid.- Robert Rubin ). Defendant's alleged damages and counterclaim originate from losses from the Federal Government located in the District of Columbia.(Affid of Robert Rubin).

     Based on the above, MVM's argument that the choice of law analysis favors Virginia law is mistaken.  There is no doubt the factors favor the District of Columbia.  The Federal Government is the nexus between MVM and 3D and all work (including contract awards, payments and defenses) between the parties flows from the Federal Government.  The Federal Government is located in the District of Columbia.  The center of the relationship between MVM and 3D is the District of Columbia.  Therefore, this court should apply the laws of the District of Columbia to all counts of Plaintiffs complaint.  In the event this court determines that the parties contract relationship is centered in Virginia, Plaintiff requests that the remaining counts, in tort, should apply the laws of the District of Columbia

## UNJUST ENRICHMENT IS ACTIONABLE BECAUSE IT IS BASED ON EVENTS OUTSIDE OF THE CONTRACT

MVM is correct in asserting that Virginia law generally does not recognize a claim for unjust enrichment when a written contract is present that governs all rights and obligations of the parties. However, in this case, the written contract of October 12, 2005 or September 26, 2005 does not govern the rights and obligations of the parties when MVM wrongfully sold the tangible property (administrative packages) of 3D located in the District of Columbia for profit. The rights and obligations of the contract do not reference converting 3D's administrative packages or their ownership. MVM's profit taking or unjust gains from the conduct of converting 3D's property is distinct from the contract.

Defendant concealed the unauthorized taking of 3D's property consisting of administrative packets containing proprietary information. (Am. Compl. Par. 11, 16-25). 3D's property was wrongfully taken by MVM at a time when MVM represented to 3D it was attempting to negotiate a settlement and at a time when a confidential relationship existed between the parties.(Id; Affid. Michael Dodd). 3D intentionally concealed the wrongful taking of 3D's property and sold them to a third party for financial gain and profit all to the harm of 3D. (Id.).

The "unjust enrichment" or "gains" targeted for disgorgement need not be limited to "profits"; they may also include all illegal payments received. *SEC v. Blavin*, 760 F.2d 706, 713 (6th Cir. 1985) (finding that unjust enrichment includes the value of benefits a wrongdoer receives through the scheme, not merely the profits after the fraud); *see also Great Lakes Equities Co.*, 775 F. Supp. 211, 214 (E.D. Mich. 1991). MVM would be liable for not only the fraud but for the additional benefits it acquired by converting the tangible administrative packages located in the State Department, Washington, DC. Such

conduct by MVM is not covered by the contract between the parties and cannot be considered to do so.

Therefore, as a matter of fact or law, MVM's motion to dismiss on this issue should be denied.

## CONVERSION IS PROPERLY ALLEGED IN PLAINTIFF'S COMPLAINT

Defendant argues that Virginia law does not recognize a cause of action for conversion. Assuming the court rules that Virginia law applies and not the law of the District of Columbia, the Defendant is still mistaken for his belief. Virginia recognizes conversion as the wrongful exercise or assumption of authority personally or by procurement over another's goods. See *Bader v. Central Fidelity Bank*, 245 VA. 286 (1993). Therefore, as a matter of fact or law, Defendant's motion to dismiss on this issue should be denied.

Defendant concealed the unauthorized taking of 3D's tangible property consisting of administrative packets containing proprietary information. (Am. Compl. Par. 11, 16-25). 3D's property was wrongfully taken by MVM at a time when MVM represented to 3D it was attempting to negotiate a settlement and at a time when a confidential relationship existed between the parties.(Id; Affid. Michael Dodd). 3D intentionally concealed the wrongful taking of 3D's property and sold them to a third party for financial gain and profit all to the harm of 3D in excess of $300,000.00. (Compl. Par. 11, 16-25).

Therefore, as a matter of fact or law, MVM's motion to dismiss should be dismissed on this issue.

## FRAUD WAS PROPERLY ALLEGED IN THE COMPLAINT.

8

MVM argues that 3D had failed to allege or identify the material fact that MVM falsely represented. (Def. Second Mot to Dism. p. 8-9). Also, MVM argues 3D failed to allege that MVM knowingly or intentionally made the false statement (Id). MVM further distorts the facts in 3D's complaint by suggesting 3D did not plead "intent" (Id).

During the time of the allege breach by 3D of MVM's contract with the Federal Government, MVM intentionally represented it would seek to resolve its differences with 3D, while at the same time it concealed the fact it had wrongfully taken 3D's "administrative packages" for its own use and sold them to a third party for profit and to the harm of 3D. (See Am. Complaint Par.11, 16-25; also Aff- Michael Dodd). The representations by MVM that it would keep the proprietary property-administrative packages of 3D confidential was intentional and false. (Id.). As a result of the intentionally false statement and conduct, MVM realized a financial gain by selling 3D's property to a third party for profit and to the harm of 3D. (Id.)

FACTS INTENTIONALLY MISREPRESENTED OR CONCEALED BY MVM FOR COUNTS THREE, FOUR AND FIVE.

MVM's basis for dismissal on Counts Three, Four and Five of 3D's complaint is based on 3D's failure to identify or allege "a material fact" that MVM falsely represented.(MVM's Second. Mot. To Dism. p. 8-9). Secondly, MVM argues that 3D failed to allege MVM knowingly or intentionally made false statements. (Id. at 9) Since MVM adopts the same argument for each count above mentioned, this response serves to respond in the aggregate as well.

Plaintiff has properly alleged that Defendant made "false representations" that 3D was in default of its agreement, that 3D sent TCN's that did not meet the level of English

9

proficiency and that the U.S. Government terminated its contract when in fact MVM received compensation. To date, MVM has not provided any document from the U.S. Government stating 3D's breach. MVM also concealed that it received Three Million Dollars from the US Government for its contract with MVM in which 230 TCN's in Kabul Afghanistan were provided by 3D. MVM also concealed the fact it had sold the administrative packages of the TCN's claimed to be useless to a third party competitor of 3D, Triple Canopy. (Am. Compl. Par. 16,17, 20- 25). As a result of the intentionally concealed facts, 3D suffered damages.

In response to the second argument of MVM, Plaintiff has alleged that MVM's conduct was intentional and as a pretext "falsely represented that 3D was in default of the contract   (See Am. Compl. par. 15, 16, 17, 20 and 25). 3D has properly stated that "at all times relevant, MVM had knowledge" that 3D's administrative packages were proprietary, had value and a business expectancy with other security detail oriented companies existed (Id. at 22).

To the extent this court deems the allegations made by 3D insufficient according to Rule 9 of the Federal Rules of Procedure, 3D respectfully requests 10 days to Amend its complaint in order to satisfy the heightened requirement.

Therefore, as a matter of fact or law, MVM's motion to dismiss should be denied on this issue[2].

---

[2] MVM alleges that the Fraud Counts; Three, Four and Five are similar and thus requiring one response.

TORTIOUS INTERFERENCE

MVM argues in it s motion to dismiss that 3D does not identify or allege the following (1) contract, business relationship or prospective business relationship interfered with and (2) MVM's knowledge of such contract or relationship (Def's Second Mot. to Dism. p. 11-12).

MVM fails to acknowledge 3D recruited the TCN's in Lima, Peru and provided them work, developed proprietary property- administrative packages that have value and were sold by MVM for profit. (Am. Compl. Par.9-11, 16-25 ; see also aff- Michael Dodd) . MVM knew the relationship between the TCN's and 3D along with 3D's administrative packages that were valuable property that were wrongfully taken and sold by MVM for profit. (Id.).   MVM transferred the TCN's and sold the administrative packages-located in the District of Columbia- provided by 3D to a competitor -third party, without the knowledge of 3D, while at the same time alleged that 3D caused the termination and losses from a contract between MVM and the Federal Government.(Id; See also Affid. Robert Rubin).   It is obvious, MVM's predatory conduct and attitude as alleged provide a legal remedy as stated in Plaintiff's complaint for tortious interference.

THE ADMINISTRATIVE PACKAGES ARE SEPARATE AND APART FROM THE TCN'S EMPLOYMENT STATUS WITH MVM.

3D argues that the TCN's employment status as employees or independent contractors is at MVM's discretion.  MVM basically argues that the TCN's provided by 3D and the administrative packages created for them are owned or controlled by MVM because of the employment relationship with no rights to 3D. (Def.'s Sec. Mot. To Dism., p. 12). Ironically, MVM's unrealistic argument seems to defy its own legal team who

11

drafted the contract for MVM that failed to include such important language for this issue in the contract. MVM argues there can not be an intentional interference with a business relationship as alleged by 3D because of the employment status of the TCN's with MVM (Id). This again, is an argument made outside of the pleadings, and more appropriate for Summary Judgment.

Regardless, MVM does not want to distinguish fact from reality. The reality is that the administrative packages are separate and distinct from an employment position with MVM and not included in the contract drafted by MVM. The facts have been properly pled by Plaintiff for this Count. The fact that MVM now admits that the TCN's were employed by MVM add further weight and credibility to 3D's complaint. MVM's admission that the TCN's became employees while in Kabul Afghanistan only strengthens the argument that 3D fully performed its services under the agreement for which MVM fails to compensate.

Based on the above, as a matter of fact or law, MVM's motion to dismiss on this issue should be denied.

PROMISSORY ESTOPPEL OR DETRIMENTAL RELIANCE IS RECOGNIZED IN THE DISTRICT OF COLUMBIA.

Defendant argues solely that Virginia does not recognize promissory estoppel or detrimental reliance as a cause of action. As stated herein, the laws of the District of Columbia apply on this and all issues argued. If the laws of the District of Columbia apply, Defendant's motion to dismiss on this issue must be denied.

CONCLUSION

For the foregoing reasons, this Court should deny MVM's Second motion to

dismiss in its entirety.

Dated:   January 22, 2007                                Respectfully submitted,


      /s/
Athan T. Tsimpedes
DC Bar no. 452341
1420 New York Avenue, NW
7th Floor
Washington, DC 20005
202-638-2100
202-449-3499 (fax)


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2007 a copy of the foregoing Plaintiff's Opposition and accompanying Memorandum to Defendant's Motion to Dismiss, was served by first class mail, postage prepaid upon:

Sean Murphy
Anand V. Ramana
McGuire Woods
1750 Tysons Blvd.
Suite 1800
McLean, VA 22102
Attorney for Defendant


      /s/
Athan T. Tsimpedes