IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MVM, INC., ) <br> 1593 Spring Hill Road ) <br> Suite 700 ) <br> Vienna, Virginia 22182 ) <br> ) <br> Defendant. ) <br> ) | Case No. 1:06cv00722 (GK) |

**AFFIDAVIT OF ROBERT RUBIN IN SUPPORT OF DEFENDANT'S
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

I, Robert Rubin, state and declare as follows:

1.  I, Robert Rubin, am employed by MVM, Inc., ("MVM") as a Senior Vice President for Business Development. I have personal knowledge of the matters about the matters that I herein testify. I make this affidavit in support of MVM's Motion for Partial Summary Judgment in this litigation.

2.  On July 7, 2005, the U.S. Department of State ("State Department") notified MVM that it had awarded MVM a contract for the provision of security guards (*i.e.*, "third country nationals," or "TCNs") to the U.S. embassy in Kabul, Afghanistan ("Afghanistan Contract"). On September 26, 2005, MVM contracted with 3D Global Solutions, Inc. ("3D") to help MVM meet its guard staffing obligations under the Afghanistan Contract. Under the September 26, 2005 contract ("September 26, 2005 Contract"), 3D promised to supply MVM with "security personnel in support of an MVM contract with the US Department of State," and, in particular, "the DOS Embassy Security Force [in] Kabul, Afghanistan." The September 26,

1

2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time."

3.  MVM issued a total of two (2) task orders to 3D under the September 26, 2005 Contract. Those task orders, dated September 26, 2005 (for 65 TCN Guards) and October 4, 2005 (for 145 TCN Guards and 20 TCN Senior Guards), are attached to the Complaint in Exhibit 2.

4.  On October 1, 2005, MVM entered into a separate and distinct contract with a completely different federal agency: the Joint Contracting Command in Iraq. Under that contract ("Iraq Contract"), which did not cover the same services as the Afghanistan Contract, MVM agreed to provide security guard services at Ar Rustamayiah Military Academy in Iraq. To help MVM fulfill its obligations under the Iraq Contract, MVM entered into another contract with 3D on October 12, 2005. Under the October 12, 2005 contract ("October 12, 2005 Contract," attached to the Complaint as Ex. 1), 3D promised to provide TCNs to help MVM meet its guard staffing obligations as determined by task orders placed by MVM with 3D. MVM placed only one such task order – for Iraq. The October 12, 2005 Contract, does not apply to nor govern the Afghanistan project – the September 26, 2005 Contract remained in place to cover those obligations. Like the September 26, 2005 Contract, the October 12, 2005 Contract also provided that "MVM shall request 3D to recruit such TCNs, on an ongoing basis, in the number and for the duration specified by MVM in Task Orders issued to 3D from time to time."

5.  MVM issued a total of one (1) task order to 3D under the October 12, 2005 Contract. That task order, dated October 12, 2005 (for 8 Senior Guard II and 74 Guards), is attached to the Complaint as the third task order in Exhibit 2. Thus, MVM ordered from 3D a

2

total of 82 TCNs for use in performing the Iraq Contract. 3D delivered the 82 TCNs to Iraq, and MVM paid 3D in full for those 82 TCNs. Thus, MVM has paid 3D for the TCNs provided in Iraq pursuant to the October 12, 2005 Contract.

6. On December 2, 2005, the State Department notified MVM that the TCNs that 3D sent to Kabul did not meet an important requirement of the Afghanistan Contract for the TCNs to speak English with contractually-set levels of proficiency. Less than three weeks later, on December 21, 2005, DOS terminated the Afghanistan Contract because of that deficiency. As a result, MVM lost the Afghanistan Contract and no less than $2 million in out-of-pocket damages.

7. The October 12, 2005 Contract is for the provision of TCNs to Iraq and other locations, but it does not apply to the provision of TCNs to Afghanistan.

Further Affiant Sayeth Not.

Executed this 19th day of June, 2006.

_____
Robert Rubin
Senior Vice President
MVM, Inc.

State of Virginia
County of Fairfax, to wit:

I, *Margie Cebrian*, Notary Public for the county aforesaid, do certify that Robert Rubin this day made oath before me in my county aforesaid.

Given under my hand this the 19th day of June, 2006.

_____
Notary Public