IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| 3D GLOBAL SOLUTIONS, INC.,<br><br>        *Plaintiff*,<br><br>    v.<br><br>MVM, INC.,<br><br>        *Defendant*. | Case No. 1:06cv00722 (GK) |

**REPLY OF DEFENDANT MVM INC.'S TO PLAINTIFF 3D GLOBAL SOLUTION'S OPPOSITION TO SECOND MOTION TO DISMISS**

Defendant MVM, Inc. ("MVM"), by counsel and pursuant to Local Rule 7, files this Reply ("Reply") in response to Plaintiff's Opposition to Defendant's Second Motion to Dismiss ("3D's Second Opposition").

**ARGUMENT**

I. **VIRGINIA LAW GOVERNS THIS CASE.**

3D does not dispute the choice of law framework the Court must employ to determine whether the laws of Virginia govern 3D's tort claims.[1] (*See* 3D's Second Opposition at 3.) 3D, however, wrongly suggests that the outcome of the choice of law analysis leads to the application of the laws of the District of Columbia. (*Id.*)

Notably, 3D does not address the many facts *in its own Complaint and Amended Complaint* that support MVM's argument that Virginia law applies in this case. (*See* 3D's Second Opposition at 2-5.) Specifically, 3D fails to discuss why the District of Columbia has the

---

[1] Much of 3D's choice of law discussion focuses on contract claims. (*See* 3D's Second Opposition at 4-5.) MVM, however, only directs its Rule 12(b)(6) challenge towards the tort claims contained in 3D's Amended Complaint (Counts II through VIII). 3D's discussion of choice of contract law is therefore irrelevant for the purposes of this choice of law analysis.

1

"most significant relationship" to this litigation, despite the fact that it alleges that (1) 3D is an Indiana corporation with no office in the District (Am. Compl. ¶ 1); (2) MVM is based in Vienna, Virginia (Am. Compl. ¶ 2); (3) that MVM's point of contact for the deliverables under the 3D-MVM contract is in Virginia (Am. Compl. Ex. 1 at ¶ B6); (4) that all notices be sent to MVM in Virginia (*Id.* at ¶ I); (5) that Virginia law governs the 3D-MVM contract (*Id.* at ¶ J), (6) that MVM received and delivered correspondence and invoices regarding the contract at its Virginia office (Am. Compl. Exs. 2, 4, and 5); and (7) that the non-disclosure agreement attached to the Complaint is also governed by Virginia law (Am. Compl. Ex. 6 at ¶ 9). 3D's failure to controvert any of these facts is an implicit concession that Virginia law applies, especially since this Court granted 3D leave to amend its original Complaint to cure such deficiencies.

Instead of directly discussing the many facts supporting MVM's argument that Virginia law applies, 3D presents two factual arguments to support its claim that D.C. law applies. First, 3D alleges that "[t]he prime contract that forms the subject matter of the contract between the parties . . . is centralized in the District of Columbia." (3D's Second Opposition at 5.) Second, 3D asserts that "[t]he wrongful acts of Defendant MVM occurred in the District of Columbia," but then immediately limits that sweeping statement to the simple allegation that MVM only converted (and benefited from the conversion of) 3D's administrative packages in the District of Columbia. (3D's Second Opposition at 5-6.)

Neither of these factual arguments support 3D's conclusion that D.C. law applies. First, and as noted above, MVM operates in Virginia. (*See* Am. Compl. ¶ 1; Ex. 1.) MVM's conduct, therefore, originates in Virginia and any benefit is gained in Virginia. Virginia is the focal point of MVM's conduct at issue in this case. 3D's argument that MVM's conduct *resulted from* the U.S. Government's conduct which may have occurred in the District of Columbia (see 3D's

Second Opposition at 5-6) is irrelevant because 3D attempts to state a claim for MVM's conduct, not the conduct of the U.S. Government. Second, the contract between MVM and the U.S. Government is simply not at issue in this lawsuit. The allegations in the Complaint are based upon a contract between 3D and MVM (*see* Am. Compl. ¶¶ 6-7), and other alleged tortious conduct, none of which 3D alleges occurred in the District of Columbia.

In short, 3D hopes to induce this Court to apply D.C. law to the issues of this case between 3D and MVM because the conduct *of the U.S. Government*, a non-party to this case, may have impacted MVM's alleged conduct at issue. In advancing this argument, 3D only highlights its failure to allege any facts in its Amended Complaint that support the application of D.C. law, and thus it also fails to rebut MVM's detailed showing that Virginia law applies. The Court should apply Virginia law in this case.

## II.   COUNTS TWO THROUGH EIGHT OF THE COMPLAINT FAIL TO STATE A CLAIM UNDER BOTH VIRGINIA AND DISTRICT OF COLUMBIA LAW.

### A.   Count Eight of the Complaint Should Be Dismissed Because Virginia and D.C. Law Do Not Recognize a Claim for Conversion of Intangible Property.

In its Second Opposition, like in its First Opposition, 3D claims that MVM "argues that Virginia law does not recognize a cause of action for conversion." (3D's Second Opposition at 8.) This characterization misstates MVM's position.

The problem with 3D's conversion claim is that 3D alleges conversion of *information* in these packages, rather than conversion of tangible property. (*See* 3D's Second Opposition at 8; MVM's Motion to Dismiss at 14.) Specifically, 3D alleges the conversion of information "that included physician physicals, verifying qualifications, background, security/military background, [and] criminal background." (Am. Compl. ¶ 10.) In Virginia, however, only tangible property is capable of wrongful conversion. *See United Leasing Corp. v. Thrift Ins. Corp.*, 247 Va. 299,

3

305-306 (1994). Moreover, District of Columbia law also does not recognize a claim for conversion of intangible property. *See Equity Group, Ltd. v. PaineWebber Inc.*, 48 F.3d 1285, 1286 (D.C. Cir. 1995) (declining to extend tort of conversion to encompass intangible information "customarily merged in, or identified with some document").

3D does not rebut MVM's argument that 3D alleges conversion of information. (*See* 3D's Second Opposition at 8.) Indeed, 3D offers this Court *Virginia* law that is consistent with MVM's argument that only tangible property may be converted under the law. Specifically, 3D cites *Bader v. Central Fidelity Bank*, 245 Va. 286 (1993), for the proposition that "conversion [is] the wrongful exercise or assumption of authority . . . over another's *goods*." (Emphasis added.) For these reasons, this Court should dismiss with prejudice 3D's claim that MVM converted "proprietary information."

### B.   This Court Should Dismiss the Tortious Interference Claim Because the October 12, 2005 Contract Directly Contradicts 3D's Allegations of a Relationship Between It and the TCNs.

As noted in MVM's Second Motion to Dismiss, 3D does not allege in its Amended Complaint a specific contract or business relationship with which MVM allegedly interfered. (*See* Am. Compl. ¶¶ 52-56.) In its Second Opposition, 3D does not demonstrate how the Amended Complaint complies with the Virginia law requirement that it specifically allege the contract or business expectancy that is the target of the impermissible interference. *See Chaves v. Johnson*, 230 Va. 112, 120 (1985).

Instead, 3D explains that MVM interfered with a "relationship between the TCN's [*sic*] and 3D" by selling the administrative packages to a third party. (3D's Second Opposition at 11.) This conclusory allegation of interference with over 230 MVM employment relationships is insufficient. Each individual relationship must be specifically identified as well as the

4

corresponding acts of interference. *See Chaves*, 230 Va. at 120. The continued failure to do so mandates dismissal of these claims in Count Six.

There is another independent basis to dismiss this count. Though 3D claims an employment relationship with these TCNs, the October 12, 2005 contract expressly provides that "[t]he TCNs supplied by 3D will, at MVM's option, be Independent Contractors ("ICs") or direct employees to MVM." (*See* Am. Compl. Ex. 1, ¶ A.) These allegations cannot bolster the deficiencies in Count Six since 3D's factual allegations contradict the exhibits to its own Amended Complaint.

The D.C. Circuit has stated that this Court need not accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint. *See Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004). The unambiguous language of the October 12, 2005 contract shows that to the extent they existed, the employment relationships of the TCNs were with MVM and not 3D. This directly contradicts 3D's allegation that a business expectation between 3D and the TCNs exist. (*See* Am. Compl. ¶ 53.) Because the October 12, 2005 contract, which is attached to 3D's Complaint, states that MVM – and not 3D – holds the employment relationship (if any) with the TCNs, 3D still has yet not identified a valid contract or business expectancy with which MVM has allegedly interfered.

If 3D is arguing that it maintained a business expectancy with some unnamed company to which 3D hoped to sell the administrative packages, its Amended Complaint also fails to state a claim because it does not specify the source of the business expectancy. *See Chaves*, 230 Va. at 120. Consequently, 3D fails to state a claim for tortious interference in Count Six, and this Court should dismiss this claim with prejudice.

5

### C. The Unjust Enrichment Claim Should Be Dismissed Because There Is an Express Contract That Governs the Rights That 3D Is Trying to Invoke.

In its Second Opposition, 3D fails to refute MVM's claim that 3D's unjust enrichment claim should be dismissed with prejudice as it relates to any "rights and obligations between [3D] and MVM with regards to the supply of TCNs" because such a claim cannot arise when an express contract exists. (MVM's Second Motion to Dismiss at 13.) As in its First Complaint, 3D hopes to persuade this Court the rights and obligations associated with the disclosure of information in the administrative packages are distinct from those of the contents and use of the administrative packages governed by the contract between MVM and 3D. (3D's Second Opposition at 6-8.) This false distinction remains without merit.

The October 12, 2005 contract, even assuming that it is the applicable contract in this case, specifically covers the required contents and use of the administrative packages in Paragraphs B(6) and C(1). (*See* Am. Compl. Ex. 1 at 2, 3.) Furthermore, the October 12, 2005 contract sets forth specific guidelines for the use of "confidential business information." (*See* Am. Compl. Ex. 1, ¶ H.) Contrary to 3D's allegations, however, that contract only prohibits *3D* from disclosing *MVM's* "confidential business information." (*Id.*) By contrast, the October 12, 2005 contract does not characterize any of 3D's information as proprietary or confidential – including any information in the administrative packages. (*Id.*) Neither does the non-disclosure agreement attached to the Complaint. (*See* Am. Compl. Ex. 6.) The October 12, 2005 contract clearly addresses the disclosure of the information contained in the administrative packages, and therefore the contract governs such disclosures.

On the face of the amended pleadings, the October 12, 2005 contract covers the rights and obligations that 3D says supports its unjust enrichment claim it is now trying to plead. Accordingly, 3D fails to state a claim for unjust enrichment under Virginia and District of

6

Columbia law. *See Ellis & Myers Lumber Co. v. Hubbard*, 123 Va. 481 (1918); *Jordan Keyes & Jessamy LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). This Court should dismiss Count Seven of the Amended Complaint with prejudice.

### D.   3D Still Fails to Allege Actual Fraud With the Required Specificity.

In response to MVM's challenge to 3D's fraud count in Count Three, 3D states only that "MVM . . . represented it would seek to resolve its differences with 3D, while at the same time it concealed the fact it had wrongfully taken 3D's 'administrative packages' for its own use and sold them to a third party," and that "MVM . . . would keep the proprietary property-administrative packages of 3D confidential." (3D's Second Opposition at 9.) 3D's only allegation of damages in its Second Opposition is that "MVM realized a financial gain by selling 3D's property to a third party for profit and to the harm of 3D." (*See* 3D's Second Opposition at 9.) These conclusory allegations do not plead fraud with the specificity that Federal Rule of Civil Procedure 9(b) requires.

In pleading fraud, a plaintiff must specifically allege "the time, place, and content" of the misrepresentations, "the misrepresented fact, and what the opponent retained or the claimant lost as a consequence of the alleged fraud." *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005). Nowhere in the Amended Complaint does 3D specifically allege when or where (or who at MVM) made the alleged representation and/or concealment, nor does 3D specifically identify what exactly 3D lost as a consequence of the alleged fraud. (*See* Am. Compl. ¶¶ 35-40.) In fact, 3D only states in the Amended Complaint that "MVM made false statements to Plaintiff regarding material facts," and that "[a]s a result of Defendant's conduct, Plaintiff incurred damages." (Am. Compl. ¶¶ 30, 34.) That deficiency results in dismissal of this claim. *See U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251 (D.C. Cir. 2004).

7

Instead of properly re-pleading fraud in its Amended Complaint, 3D attempts to cure this insufficiency by impermissibly asserting new facts not found in the Amended Complaint, *e.g.*, that MVM "concealed" the fact that it sold the administrative packages to a third party. (*See* 3D's Second Opposition at 9.) The Court cannot consider facts not alleged in the Complaint, nor found elsewhere in the record in deciding a motion to dismiss. *See Zhu v. Gonzales*, 2006 WL 1274767 at *4 (D.D.C. 2006) ("In deciding a Rule 12(b)(6) motion, the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice.")

In short, 3D fails to allege in the Complaint the specifics of the fraud the Federal Rules of Civil Procedure and its interpretive case law require. *See* Fed. R. Civ. P. 9(b). The fraud claim in Count Three should be dismissed because of this deficiency.

### E.   3D's Fails to Overcome MVM's Other Challenges to Pleading Deficiencies in Counts Three, Four, and Five.

Unlike in its First Opposition, 3D attempts to refute MVM's challenge to Counts Three, Four, and Five of the Amended Complaint that (1) 3D failed to identify a material fact that MVM falsely represented and (2) 3D failed to allege that MVM knowingly or intentionally made false statements. (*See* 3D's Second Opposition at 9-10.) Nevertheless, 3D's attempted refutation falls short of success.

3D specifically responds to MVM's claim that it failed to identify a material fact by asserting that MVM falsely represented that 3D defaulted under the contract by sending TCNs to Afghanistan that did not meet the requisite levels of English. (3D's Second Opposition at 9-10.) This *post hoc* argument fails because the material fact that 3D was in default cannot be one upon which 3D relied. For fraud to arise, the false representation must be one upon which the plaintiff relied. *See Davis v. Marshall Homes*, 265 Va. 159 (2003); *Atraqchi v. GUMC Unified Billing*

8

*Services*, 788 A.2d 559, 563 (D.C. 2002). Therefore, the material fact that 3D now asserts cannot form the basis of a fraud action. Counts Three, Four, and Five must be dismissed accordingly.

3D responds to MVM's argument that it failed to allege the requisite scienter of misrepresenting the material fact (*i.e.*, the fact that 3D defaulted under the contract) by informing this Court that it alleged that "at all times relevant, MVM had knowledge that 3D's administrative packages were proprietary, had value, and a business expectancy with other [*sic*] security detail oriented companies existed." (3D's Second Opposition at 10.) This argument fails because both Virginia and D.C. law require 3D to allege that MVM made a false representation of material fact knowingly and intentionally. *See Davis*, 265 Va. 159; *Atraqchi*, 788 A.2d 559. Nowhere in its Amended Complaint does 3D allege that MVM knowingly and intentionally made a false representation that 3D defaulted under the contract because it sent non-English speaking TCNs to Afghanistan. Counts Three, Four, and Five fail to state a claim for this reason alone.

**F.    The Detrimental Reliance/Promissory Estoppel Claim Fails Under Virginia and D.C. Law Because the Existence of A Legally Sufficient Contract Bars Such Claims.**

3D's sole assertion that it may allege promissory estoppel or detrimental reliance claims in Count Two, claims that Virginia does not permit, is that "the laws of the District of Columbia apply" and therefore "Defendant's motion to dismiss on this issue must be denied." (3D's Second Opposition at 9.) 3D, however, fails to provide any authority that a cause of action for detrimental reliance or promissory estoppel exists under District of Columbia law. (*See id.*)

Even assuming *arguendo* that District of Columbia law applies, a plaintiff cannot bring a cause of action for promissory estoppel in the District when a legally sufficient contract exists.

9

*See Building Services v. Nat'l R.R. Passenger Corp.*, 305 F. Supp. 2d 85, 95-96 (D.D.C. 2004). Neither party here disputes the existence of a legally sufficient contract exists in this case; the only possible dispute is which of two contracts apply. (*See* 3D's Second Opposition to MVM's Motion for Partial Summary Judgment at 2, ¶¶ 1-2.) Since both 3D and MVM acknowledge that a legally sufficient contract exists, this claim is barred regardless of whether the laws of Virginia or the District apply. For this reason, the Court should dismiss this count with prejudice.

## CONCLUSION

For the reasons specifically stated above and in MVM's Second Motion to Dismiss, this Court should dismiss Counts Two through Eight.

Dated: February 13, 2007              Respectfully Submitted,

**MVM, INC.**

*By Counsel*

**MCGUIREWOODS LLP**
1750 Tysons Boulevard, Suite 1800
McLean, VA 22101-3892
Tel: (703) 712-5000
Fax: (703) 712-5050

_____
Sean F. Murphy (D.C. Bar No. 457599)
Anand V. Ramana (D.C. Bar No. 489478)

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of February, 2007, I served a true and correct copy of the foregoing pleading via first-class U.S. mail and electronic mail on:

>Athan T. Tsimpedes, Esq.
>Law Offices of Athan T. Tsimpedes
>7th Floor
>1420 New York Avenue, N.W.
>Washington, D.C. 20005
>atsimpedes@comcast.net
>*Counsel for 3D Global Solutions, Inc.*
>
>Douglas B. McFadden, Esq.
>McFadden & Shoreman, LLC
>1420 New York Avenue, N.W.
>Suite 700
>Washington, DC 20005
>*Counsel for 3D Global Solutions, Inc.*

_____
Anand V. Ramana

\4426355.2