**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| 3D GLOBAL SOLUTIONS, INC. * | |
| * | |
| Plaintiff * | |
| * | |
| vs. * | Case No. 1:06cv00722(GK) |
| * | |
| MVM, INC. * | |
| * | |
| Defendant * | |
| * | |

**I. DEFENDANT'S DESIGNATION OF**
**MATERIAL FACTS THAT ARE NOT IN DISPUTE**

1. In July 2005, MVM entered into a contract with the United States Department of State to provide security guards for the U.S. Embassy in Kabul, Afghanistan (hereinafter "the Afghanistan Contract").

2. In September 2005, MVM, INC. and 3D GLOBAL SOLUTIONS, INC., (hereinafter "3D"), entered into a contract, (hereinafter "the 3D Contract"), pursuant to which 3D agreed to provide third party national (TCNs) to work as security guards at the United States Embassy in Kabul, Afghanistan.

3. The aforesaid 3D Contract included provisions that 3D provide TCNs with the English proficiency level specified in the 3D Contract in order for the TCNs to perform as security guards at the U.S. Embassy in Kabul. The 3D Contract required that 3D certify to MVM, INC. that each TCN provided by 3D met the required level of English proficiency.

4. If a TCN did not meet the required level of English proficiency, then he would not be able to function as a security guard at the U.S. Embassy in Kabul.

5. On December 2, 2005, the United States Government notified MVM, INC. that MVM had failed to provide security guards for the U.S. Embassy in Kabul, Afghanistan that met the minimum requirements outlined in the Afghanistan Contract. This was a deficiency or cure Notice under the Afghanistan Contract.

6. On December 21, 2005, the United States Government notified MVM, INC. that the Afghanistan Contract was terminated for default.

## II.   DEFENDANT'S DESIGNATION OF MATERIAL FACTS THAT ARE IN DISPUTE

7. The vast majority of the TCNs, supplied by 3D to provide security at the U.S. Embassy in Kabul, Afghanistan, did not have the required minimum level of English proficiency required in the 3D Contract. (See Exhibit 2, Report of Testing and See Exhibit 3, Affidavit of Dario Marquez, Jr.)

8. Based upon the representations and certifications made by 3D that the TCNs met the 3D Contract's required minimum English proficiency levels, MVM, INC. employed all of the TCNs. The English proficiency level requirement for the TCNs under the Afghanistan Contract and the 3D Contract are the same.

9. MVM, INC. deployed all of the TCNs based upon 3D's representations and certifications that each TCN met the 3D Contract's required minimum English proficiency levels.

10. As of December 21, 2005, the invoices sent by 3D to MVM, INC. were not due because of 3D's breach of its representations and certifications with respect to the English proficiency level of the TCNs it recruited as security guards for the U.S. Embassy in Kabul.

11. The United States Government terminated the Afghanistan Contract for default on December 21, 2005 because of the failure of the TCNs to speak English at the proficiency level required by the Afghanistan Contract, which in turn caused MVM, INC. to fail to complete the transition and commence full performance of the Afghanistan Contract by December 22, 2005. (See Exhibit 4)

12. Once the Afghanistan Contract was terminated [either for cause or convenience], MVM had the right to terminate the 3D Contract.

13. MVM, INC. terminated the 3D Contract by Notice sent on December 23, 2005. (See Exhibit 5)

14. At the time of the termination of both contracts [the Afghanistan Contract and the 3D Contract], 3D was in material breach and default by failing to provide English language qualified TCNs to MVM, INC. (See Exhibits 1, 2, 3, 4, 5 and 8)

15. MVM, INC. expended substantially more on the Afghanistan Contract than it received under its Settlement Agreement with the U.S. Government. MVM, INC. sustained out-of-pocket and direct losses of approximately Three Million Dollars ($3,000,000.00), over and above the amount MVM received under the Settlement Agreement. (See Exhibit 3, Affidavit of Dario Marquez, Jr.)

16. JAYSEN TURNER, an employee of MVM, INC., had no significant verbal exchanges with prospective TCNs. JAYSEN TURNER was sent to Peru to help coordinate the collection of the TCNs' applications, which all occurred in a hotel miles away from where TCNs were being interviewed and processed. JAYSEN TURNER also acted as courier for the completed applications to the United States. (See Exhibit 6, Jaysen Turner Deposition)

17. JAYSEN TURNER had no independent knowledge of the level of English speaking proficiency of any of the TCNs provided by 3D under the 3D Contract. (See Exhibit 6, Jaysen Turner Deposition, Pages 35-39)

18. JAYSEN TURNER had no authority to accept any TCN on behalf of MVM, INC., based upon the TCNs' English language proficiency or any other criteria, nor did JAYSEN TURNER have any authority to waive or modify any provisions of the 3D Contract.

19. English proficiency testing was performed by ALTA Language Services, Inc., which results indicated that the TCNs' level of English proficiency was non-existent or very minimal for the vast majority of TCNs supplied by 3D. (See Exhibit 2)

The Material facts herein rely upon the following documents:

Exhibit 1 – Deficiency letter dated December 2, 2005, to MVM, Inc., from the DOS.
Exhibit 2 – ALTA Testing Report/Synopsis
Exhibit 3 – Affidavit of Dario Marquez, Jr.
Exhibit 4 – Default letter dated December 21, 2005, to MVM, Inc., from the DOS.
Exhibit 5 – Termination letter dated December 23, 2005, to 3D/Dodd from MVM, Inc.
Exhibit 6 – Jaysen Turner Deposition
Exhibit 7 – Michael Dodd Deposition pages: 31, 35, 82-83
Exhibit 8 – Letter dated December 14, 2005, to Michael Dodd of 3D to MVM, Inc.

    MVM, INC.
    a California Corporation

    By: /s/ Herbert S. Rosenblum, Esquire

HERBERT S. ROSENBLUM, ESQUIRE
D.C. Bar No. 093351
Counsel for Defendant
526 King Street, Suite 211
P.O. Box 58
Alexandria, Virginia 22313-0058
Telephone: 703/684-0060
Facsimile: 703/684-0072