**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
―――――――――――――――――――――      )
                           )
3D GLOBAL SOLUTIONS, INC., )
                           )
        Plaintiff,         )
                           )
    v.                     )      Civil Action No. 06-722 (GK)
                           )
MVM, INC.,                 )
                           )
        Defendant.         )
―――――――――――――――――――――      )
```

## <u>MEMORANDUM OPINION</u>

Plaintiff 3D Global Solutions, Inc. ("3D") brings this action against Defendant MVM, Inc. ("MVM") for breach of contract (Count I), promissory estoppel (Count II), intentional misrepresentation (Count III), constructive fraud (Count IV), concealment (Count V), interference with business advantage (Count VI), unjust enrichment (Count VII), and conversion (Count VIII) arising from a commercial dispute between the parties.

This matter is before the Court on MVM's Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 56 [**Dkt. No. 6**]; MVM's Motion to Dismiss Counts II through VIII of the First Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) [**Dkt. No. 28**]; and 3D's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 [**Dkt. No. 50**]. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, MVM's Motion for Partial Summary

Judgment [**Dkt. No. 6**] as to Count I is **denied**; MVM's Motion to Dismiss [**Dkt. No. 28**] is **granted** as to Counts II through V and VII through VIII and **denied** as to Count VI; and 3D's Motion for Summary Judgment [**Dkt. No. 50**] is **denied**.

I.    **BACKGROUND**[1]

In 2005, MVM obtained a contract from the United States Government to provide private security guards for deployment in Afghanistan.  MVM turned to 3D to provide third country nationals to fulfill MVM's obligations under its government contract.  A written contract memorializing the agreement between MVM and 3D was signed on September 26, 2005.

3D and MVM signed a new contract on October 12, 2005.  3D alleges that the October 12 contract incorporated the terms of the September 26 contract and permitted MVM the flexibility to assign additional task orders to 3D that would incorporate all the terms and conditions of the pre-existing September 26 contract.  MVM responds that the October 12 contract involved the provision of security guards for service in Iraq and is separate and distinct from the September 26 contract, which involved the provision of security guards for service in Afghanistan, not Iraq.  MVM argues

---

[1] Unless otherwise noted, the facts set forth herein are undisputed and drawn from the First Amended Complaint and the parties' Statements of Undisputed Material Fact submitted pursuant to Local Civil Rule 7(h).

that the parties have fully performed the October 12 contract and it therefore has no relevance to this case.

Pursuant to its agreement with MVM, 3D provided 292 third country national security guards for service in Afghanistan. Of this group, 230 security guards actually deployed to Afghanistan.

3D alleges that it expended thousands of hours of effort to collect confidential and proprietary data regarding the third country national security guards. This proprietary information, which included background checks and medical records for each security guard, was collected and provided to MVM as an "administrative package." MVM then interviewed each security guard before he was deployed to Afghanistan. 3D alleges that MVM wrongfully converted the confidential and proprietary information contained in the administrative packages and then sold the data to a third party.

3D also contends that MVM failed to provide it with compensation for the third country national security guards that were provided. MVM responds that the U.S. Government notified it on December 2, 2005 that the security guards 3D had provided were not adequately proficient in English and therefore terminated the contract between MVM and the Government, resulting in $2 million in out-of-pocket damages to MVM. MVM claims that it engaged the services of ALTA Language Services, Inc., to test the English language proficiency of the third country national security guards.

According to MVM, the testing demonstrated that the vast majority of the guards had only minimal English language skills.

3D seeks $316,000 in compensatory damages and $2 million in punitive damages from MVM.  MVM has brought a counterclaim, seeking $2 million in damages for breach of contract.

## II.   STANDARD OF REVIEW

### A.   Rule 56

Summary judgment may be granted "only if" the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c), as amended December 1, 2007; Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006).  In other words, the moving party must satisfy two requirements: first, demonstrate that there is no "genuine" factual dispute and, second, that if there is it is "material" to the case.  "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" Arrington, (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  A fact is "material" if it might affect the outcome of the case under the substantive governing law.  Liberty Lobby, 477 U.S. at 248.

In its most recent discussion of summary judgment, in Scott v. Harris, __ U.S. __, 127 S. Ct. 1769, 1776 (2007), the Supreme Court said,

[a]s we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 . . . (1986) (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Liberty Lobby, 477 U.S. at 247-48.

However, the Supreme Court has also consistently emphasized that "at the summary judgment stage, the judge's function is not...to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." Liberty Lobby, 477 U.S. at 248, 249. In both Liberty Lobby and Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150 (2000), the Supreme Court cautioned that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, are jury functions, not those of a judge" deciding a motion for summary judgment. Liberty Lobby, 477 U.S. at 255. In assessing a motion for summary judgment and reviewing the evidence the parties claim they will present, "the Court must draw all reasonable inferences in favor of the non-moving party." Reeves, 530 U.S. at 150. "To survive a motion for summary judgment, the party bearing the burden of proof at trial...must provide evidence showing that there is a triable issue as to an element essential to that party's claim. See Celotex

<u>Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)." <u>Arrington</u>, 473 F.3d at 335.[2]

### B.    Rule 12(b)(6)

"A motion to dismiss for failure to state a claim upon which relief can be granted is generally viewed with disfavor and rarely granted." <u>Doe v. United States Dep't of Justice</u>, 753 F.2d 1092, 1102 (D.C. Cir. 1985). The factual allegations of the complaint must be presumed true and liberally construed in favor of the plaintiff. <u>Shear v. Nat'l Rifle Ass'n of Am.</u>, 606 F.2d 1251, 1253 (D.C. Cir. 1979).

## III. ANALYSIS

### A.    MVM's Motion for Partial Summary Judgment as to Count I

MVM moves for partial summary judgment on 3D's breach of contract claim in Count I of the First Amended Complaint. MVM argues that it is entitled to partial summary judgment on this count because 3D "is suing on the wrong contract." Def.'s Mem. in Support of Mot. for Partial Summ. J. at 6.

The First Amended Complaint alleges that MVM breached the October 12, 2005 contract to provide security personnel, which 3D argues is the controlling agreement in this case. MVM, by contrast, contends that the provision of security guards for

---

[2] It should be noted that a non-movant's affidavit may suffice to defeat a summary judgment motion if the parties' sworn statements are materially different. <u>Greene v. Dalton</u>, 164 F.3d 671, 674-75 (D.C. Cir. 1999); <u>Arrington</u>, 473 F.3d at 337.

Afghanistan was covered by the September 26 contract, not the October 12 contract.

Both contracts contain choice of law provisions that state that the agreements will be construed under Virginia law. <u>See Milanovich v. Costa Crociere, S.p.A.</u>, 954 F.2d 763, 767 (D.C. Cir. 1992) ("Under American law, contractual choice-of-law provisions are usually honored"). Under Virginia's parol evidence rule, a court should "construe a document according to its plain terms if it is clear and unambiguous on its face." <u>Ott v. L & J Holdings, LLC</u>, 654 S.E.2d 902, 905 (Va. 2008). "When a document is ambiguous, however, the court will look to parol evidence in order to determine the intent of the parties." <u>Id.</u> "The language of an instrument is ambiguous 'if it may be understood in more than one way or when it refers to two or more things at the same time.'" <u>Id.</u> (quoting <u>Video Zone, Inc. v. KF & F Props.</u>, 594 S.E.2d 921, 925 (2004)).

The September 26 contract clearly states that it is for the provision of security guards for service in Afghanistan. The October 12 contract says nothing about the geographic locations where third country national security guards would serve. Therefore, the October 12 contract is ambiguous regarding the scope of services to be provided under it, and thus, sheds no light on whether the October 12 contract amends the pre-existing September 26 contract. Accordingly, the Court must look to parol evidence to

determine the intent of the parties. However, neither party has offered such evidence. Summary judgment is therefore premature on Plaintiff's breach of contract claim (Count I).

MVM's Motion for Partial Summary Judgment on Count I is accordingly **denied.**

**B.  MVM's Motion to Dismiss Counts II Through VIII**

MVM also moves to dismiss Counts II through VIII of the First Amended Complaint. The parties disagree over which jurisdiction's substantive laws should govern this case. MVM argues that Virginia law should apply. 3D believes that District of Columbia law should control.

District of Columbia choice of law principles apply to this diversity case. Mastro v. Potomac Elec. Power Co., 447 F.3d 843, 857 (D.C. Cir. 2006). The District of Columbia applies a modified governmental interest analysis in resolving choice of law questions. Id. Under this approach, a court must "'evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by the application of its law.'" Williams v. First Gov't Mortgage & Investors Corp., 176 F.3d 497, 499 (D.C. Cir. 1999) (quoting District of Columbia v. Coleman, 667 A.2d 811, 816 (D.C. 1995)).

The court must "conduct the choice of law analysis for each distinct issue being adjudicated." Long v. Sears Roebuck & Co., 877 F. Supp. 8, 11 (D.D.C. 1995). Before conducting this analysis,

8

however, the court must determine whether there is a genuine conflict between the laws of the two jurisdictions or whether the case presents a "false conflict." Id. A false conflict exists when, inter alia, "the laws of the interested states are the same" or "when those laws, though different, produce the same result when applied to the facts at issue." Id. For the reasons set forth below, application of either District of Columbia or Virginia law would lead to the same result in considering MVM's Motion to Dismiss. Accordingly, this case presents a false conflict between District of Columbia and Virginia law.

> **1.    3D Fails to State a Claim for Promissory Estoppel in Count II Under Either District of Columbia or Virginia Law**

3D advances a promissory estoppel claim in Count II of the First Amended Complaint. Virginia does not recognize a cause of action for promissory estoppel. W.J. Schafer Assocs., Inc. v. Cordant, Inc., 493 S.E.2d 512, 516 (Va. 1997). District of Columbia law does recognize a cause of action for promissory estoppel, although it does so only in the absence of an express, enforceable contract. Bldg. Servs. Co. v. Nat'l R.R. Passenger Corp., 305 F. Supp. 2d 85, 95-96 (D.D.C. 2004). The parties do not dispute that an express contract exists in this case. Consequently, 3D's promissory estoppel claim would fail under both District of Columbia and Virginia law. Count II of the First Amended Complaint is therefore **dismissed with prejudice**.

### 2.    3D Fails to Plead Fraud with Particularity in Count III

Count III of the First Amended Complaint raises a claim of intentional misrepresentation. Fed. R. Civ. P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." A "pleader must state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." Kowal v. MCI Communications Corp., 16 F.3d 1271, 1278.

The First Amended Complaint alleges only that "MVM made false assertions or statements to Plaintiff regarding material facts." First Am. Compl. ¶ 36. The Complaint does not identify the time, place, or content of these false assertions, the fact or facts misrepresented, nor what was given up as a consequence of the alleged fraud. Plaintiff's extremely conclusory allegations do not adequately plead fraud with the particularity necessary to satisfy Rule 9(b), and therefore Count III must be dismissed. 3D attempts to remedy these deficiencies by attempting to further explain its fraud claim in its Opposition to MVM's Motion to Dismiss. It is axiomatic, however, that "a plaintiff may not amend his complaint through his opposition papers." Bigwood v. United States Agency for Int'l Dev., 484 F. Supp. 2d 68, 71 (D.D.C. 2007).[3]

---

[3] Plaintiff attempts to do precisely that in its Opposition by (continued...)

The First Amended Complaint also fails to state a claim for fraud or intentional misrepresentation under both District of Columbia and Virginia law.  Virginia law requires a plaintiff to prove the following elements by clear and convincing evidence to prevail in a claim for fraud: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) relied upon by the plaintiff, (6) and resulting in damages.  Davis v. Marshall Homes, Inc., 576 S.E.2d 504, 506 (Va. 2003).  District of Columbia law is very similar.  A plaintiff must prove "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation."  Hercules & Co. v. Shama Restaurant Corp., 613 A.2d 916, 923 (1992).  In an arm's length commercial relationship, there is the further requirement that the plaintiff's reliance must be reasonable.  Id.  Thus, 3D's skeletal allegations in the First Amended Complaint fail to state a claim for fraud under either District of Columbia or Virginia law.

3D also fails to adequately allege the materiality of MVM's alleged misrepresentation, as well as that MVM's actions were

---

[3](...continued)
arguing that "MVM intentionally misrepresented it would seek to resolve its differences with 3D" and that "[t]he representations by MVM that it would keep the proprietary property-administrative packages of 3D confidential was [sic] intentional and false." Opp'n at 9.  These alleged misrepresentations were not plead in the First Amended Complaint.

knowing and intentional.  For this additional reason, Count III is **dismissed without prejudice.**

### 3. 3D Fails to Plead Constructive Fraud with Particularity in Count IV

Count IV alleges that MVM engaged in constructive fraud.  For the same reasons set forth above in the discussion of Count III, 3D fails to plead constructive fraud with the particularity required by Fed. R. Civ. P. 9(b).  The First Amended Complaint does not specify the time, place, or content of the alleged misrepresentations, nor the facts allegedly misrepresented.  Count IV must therefore be dismissed.

Count IV also fails under the substantive law of both the District of Columbia and Virginia.  To prove constructive fraud under District of Columbia law, a plaintiff must prove that he or she had a "confidential relationship" with the defendant. Witherspoon v. Philip Morris Inc., 964 F. Supp. 455, 461 (D.D.C. 1997).  A confidential relationship is one "in which one party has gained the trust and confidence of the other, enabling the first party to exercise extraordinary influence over the other." Id. (internal quotation marks omitted).  3D does not allege that it had any such confidential relationship with MVM.  Its claim for constructive fraud therefore fails under District of Columbia law.

Virginia law requires different elements for proving constructive fraud.  A plaintiff must show, by clear and convincing evidence, that (1) a false representation (2) of material fact, (3)

12

made innocently or negligently, (4) resulted in damages to the plaintiff as a result of his or her reliance upon the misrepresentation. <u>Blair Constr., Inc. v. Weatherford</u>, 485 S.E.2d 137, 138 (Va. 1997). Constructive fraud differs from actual fraud in that constructive fraud need not be intentional. <u>Id.</u> at 139. As with 3D's fraud claim, the First Amended Complaint fails to allege with specificity MVM's alleged misrepresentations, as well as their materiality. Therefore, 3D cannot state a claim for constructive fraud under Virginia law.

Thus, even though the laws of the District of Columbia and Virginia are different, they would "produce the same result when applied to the facts at issue." <u>Long</u>, 877 F. Supp. at 11.

For these additional reasons, Count IV is also **dismissed without prejudice**.

### 4.    **3D Does Not Contest MVM's Argument that Count V's Concealment Claim Should Be Dismissed**

MVM argues that 3D fails to state a claim for "concealment" in Count V. 3D does not specifically respond to this argument in its papers and cites no authority for the existence of a cause of action for "concealment" under either District of Columbia or Virginia law. "When a plaintiff files a response to a motion to dismiss but fails to address certain arguments made by the defendant, the court may treat those arguments as conceded." <u>Tnaib v. Document Techs., LLC</u>, 450 F. Supp. 2d 87, 91 (D.D.C. 2006). MVM's arguments regarding Count V will therefore be treated as

conceded.  Moreover, to the extent 3D attempts to plead a claim for fraud, such a claim must be dismissed for the reasons discussed above.  Count V is **dismissed with prejudice**.

> **5.    3D States a Claim for Interference with a Business Advantage in Count VI Under Either District of Columbia or Virginia Law**

Count VI alleges that MVM interfered with a business advantage belonging to 3D.  MVM argues that this claim must be dismissed because 3D does not allege a specific contractual relationship or business expectancy with which MVM allegedly interfered.  The Court disagrees.

Under District of Columbia law, a plaintiff must show an intentional interference with a business advantage that resulted in damages in order to state a claim.  Brown v. Carr, 503 A.2d 1241, 1247 (D.C. 1986).  Virginia law requires proof of "(1) the existence of a business relationship or expectancy, with a probability of future economic benefit to plaintiff; (2) defendant's knowledge of the relationship or expectancy; (3) a reasonable certainty that absent defendant's intentional misconduct, plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to plaintiff" to establish interference with a prospective business advantage.  Glass v. Glass, 321 S.E.2d 69, 76-77 (Va. 1984).  Thus, the requirements of the two jurisdictions for this tort are, for all practical purposes, virtually identical.

The First Amended Complaint alleges that 3D had a business expectation to sell, transfer, or assign the administrative packages containing proprietary data concerning the third country national security guards.  3D alleged that MVM was aware of this expectation, but nevertheless engaged in intentional conduct that caused 3D to lose its prospective business advantage, resulting in it suffering damages.  This expectation of future gain from the ability to sell the administrative packages, presumed to be true and liberally construed in favor of the plaintiff at this early stage of the proceedings, is sufficient to state a claim for intentional interference with a business advantage under either District of Columbia or Virginia law.

MVM argues that 3D was required to plead specific facts showing interference with each of the 230 relationships with third country national security guards who were deployed to Afghanistan. Under the liberal pleading requirements of the Federal Rules of Civil Procedure, however, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  3D's pleadings adequately met this standard.

MVM argues that Count VI fails for the additional reason that the third country national security guards had employment or independent contractor relationships with MVM, and not 3D, under the October 12, 2005 contract.  Count VI alleges interference with

the right to sell the proprietary data contained in the administrative packages, and not with an employment or independent contractor relationship between 3D and the security guards. Thus, the absence of employment or independent contractor relationships between 3D and the security guards does not affect 3D's claim for interference with the prospective business advantage of selling the administrative packages.

MVM's Motion to Dismiss Count VI is **denied**.

### 6.   3D Fails to State a Claim for Unjust Enrichment in Count VII Under Either District of Columbia or Virginia Law

In Count VII, 3D advances a claim for unjust enrichment. Under District of Columbia law, a party to a valid contract cannot bring a claim for unjust enrichment related to the subject matter of an express contract between the parties. Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co., 870 A.2d 58, 64 (2005). The same is true under Virginia law. S. Biscuit Co. v. Lloyd, 6 S.E.2d 601, 606 (Va. 1940) ("an express contract defining the rights of the parties necessarily precludes the existence of an implied contract of a different nature containing the same subject matter.").

The parties do not dispute the existence of a valid contract in this case. 3D argues, however, that its unjust enrichment claim is unrelated to the subject matter of the contract between the parties. Instead, 3D argues that MVM was unjustly enriched when it

converted the administrative packages for the third country national security guards. 3D's argument is unpersuasive. The October 12, 2005 contract between the parties expressly governs the use and contents of the administrative packages. See First Am. Compl. Ex. 1 (October 12, 2005 contract) ¶ B.6.

Accordingly, Count VII fails under both District of Columbia and Virginia law and is **dismissed with prejudice**.

>           7.    **3D Fails to State a Claim for Conversion in Count
>                  VIII Under Either District of Columbia or Virginia
>                  Law**

In Count VIII, 3D alleges that MVM converted the proprietary and confidential data within the administrative packages. First Am. Compl. ¶¶ 17, 19. Neither District of Columbia nor Virginia law recognizes a cause of action for conversion of intangible property. Equity Group, Ltd. v. PaineWebber Inc., 839 F. Supp. 930, 933 (D.D.C. 1993); United Leasing Corp. v. Thrift Ins. Corp., 440 S.E.2d 902, 906 (Va. 1994). It is apparent from the Complaint that the administrative packages had value only because they contained this proprietary data. Because such data constitutes intangible property, 3D fails to state a claim for conversion under either District of Columbia or Virginia law. Therefore, Count VIII is **dismissed with prejudice**.

>     C.    **3D's Motion for Summary Judgment**

3D also moves for summary judgment, arguing that it has fully met its obligations under the contract, and is therefore entitled

to payment from MVM.  3D also contends that because the Government unilaterally terminated its contract with MVM for convenience, <u>see</u> 48 C.F.R. § 52.249-6(a), and MVM has agreed that the United States has not breached its contract in bad faith and has accepted a $ 3.5 million settlement which includes payment of subcontractors, that MVM should be estopped from arguing that 3D breached its contract with MVM.  Finally, 3D argues that it is entitled to summary judgment on MVM's counterclaim because MVM has already received payment when the Government terminated its contract with MVM for convenience.  None of these arguments have merit.

First, summary judgment in 3D's favor is not appropriate, as there remains a genuine dispute of material fact concerning whether 3D fully complied with its obligations under the contract.  By presenting evidence that the third country national security guards were not adequately proficient in English, as required by the contract, MVM has established that there is a genuine issue of material fact that must be resolved at trial.

Second, the Government's termination for convenience of its contract with MVM has little, if any, bearing on the separate agreement between 3D and MVM that is in dispute here.  Although the Government may terminate a contract for its convenience, and thus limit the contractor's recovery to "costs incurred, profit on work done and the costs of preparing the termination settlement proposal," <u>see</u> <u>Maxima Corp. v. United States</u>, 847 F.2d 1549, 1552

(Fed. Cir. 1988) (internal quotation marks omitted), 3D has failed to explain how the Government's termination for convenience of its contract with MVM would impact the separate contract between 3D and MVM or limit MVM's right to recover lost profits from 3D. The Government's termination of its contract with MVM only limits the damages MVM may obtain from the Government, not from 3D. See id.

Accordingly, 3D's Motion for Summary Judgment is **denied.**

## IV. CONCLUSION

For the foregoing reasons, MVM's Motion for Partial Summary Judgment [**Dkt. No. 6**] on Count I is **denied.** MVM's Motion to Dismiss [**Dkt. No. 28**] is **granted** with regard to Counts II through V and VII through VIII. The Motion is **denied** with regard to Count VI. Counts II, V, VII and VIII are **dismissed with prejudice.** Counts III and IV are **dismissed without prejudice.** 3D's Motion for Summary Judgment [**Dkt. No. 50**] is also **denied.** Thus, only Counts I and VI now remain.

3D shall have **ten** days from the date of entry of the accompanying order to file a Second Amended Complaint pleading fraud and constructive fraud (Counts III and IV) with the particularity required by Fed. R. Civ. P. 9(b).

An Order shall accompany this Memorandum Opinion.

May 12, 2008

/s/ _____
Gladys Kessler
United States District Judge

**Copies to: Attorneys of record via ECF**

19